**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JIAN F. HE, LAI LEE, YONG D. LIN, LIN H. WEI,

                Plaintiffs,

      -against-

HOME ON 8th CORP. (d/b/a Home on 8th), HENRY
LI, JOHN DOE (A/K/A MANAGER LI),

                Defendants.

**Case No. 09-CV-5630 (GBD)**

## PLAINTIFFS' POST-TRIAL MEMORANDUM OF LAW

Gillian Costello (GC 0151)
SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, NY 10019
Tel:  (212) 765-2100
Fax:  (212) 541-5429

*Attorneys for Plaintiffs*

October 31, 2013

## TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ........................................................................................1

FACTS ........................................................................................................................2

   1. Home on 8th.............................................................................................................2

   2. Defendant Henry Li .................................................................................................3

   3. Plaintiffs and Their Assigned Duties .......................................................................3

   4. Plaintiffs' Employment Dates ..................................................................................4

   5. Until September 21, 2009, Plaintiffs Worked Between
      65.5 and 67.5 Hours A Week ..................................................................................5

   6. Until September 21, 2009, Plaintiffs Were Not Relieved of
      Their Duties During Meal .......................................................................................5

   7. Until September 21, 2009, Defendant Did Not Make Contemporaneous
      Records of Plaintiffs' Hours and Wages..................................................................6

   8. Until September 21, 2009, Defendant Did Not Take a Tip Credit .......................7

   9. Plaintiffs Are "Tipped Employees" ........................................................................8

  10. Defendant Was Familiar With the Minimum Wage and Overtime Laws ...........8

  11. Defendant Did Not Post A Notice Concerning the Minimum
      Wage or the Tip Credit Until After July 24, 2009 ...............................................9

  12. Defendant Did Not Inform Plaintiffs of His Intent to
      Take the Tip Credit or Give Them a Statement of Allowances Taken.............11

  13. The Monthly Wage Defendant Paid to Plaintiffs Was Below
      The Minimum *Tipped* Wage ...............................................................................11

  14. The Hourly Wage and Overtime Rates Defendant Paid
      After September 21, 2009 Were Below the Minimum *Tipped* Wage Rates.....................12

  15. Defendant Did Not Reimburse Plaintiffs for Their Bicycle Expenses ..............13

i

**ARGUMENT** ....................................................................................................................13

**I.   DEFENDANT IS LIABLE FOR UNPAID WAGES AND OVERTIME** ........................13

    A.   Defendant Is Liable For Every Hour That Plaintiffs Were on Duty ...........................13

    B.   Defendant Is Not Entitled to A Retroactive Tip Credit or Tip Allowance. ...............15

        1.   Tipped Employees May Not be Paid Less Than the
            Minimum *Tipped* Wage Rate ..............................................................................15

        2.   Defendant Did Not Satisfy the Notice Requirement................................................16

        3.   Defendant Did Not Give Plaintiffs A Statement of Wages ....................................18

    C.   Defendant Is Not Entitled to A Tip Credit For All of the
       Hours That Plaintiffs Worked .........................................................................................19

    D.   Defendant Is Liable for Spread-of-Hours Compensation ............................................20

    E.   Defendant Is Liable for the Purchase and Maintenance of Bicycles...........................20

**II.   DEFENDANT IS LIABLE FOR THREE YEARS OF FLSA WAGES
      AND FOR NYLL LIQUIDATED DAMAGES BECAUSE HIS
      VIOLATIONS WERE WILLFUL** ....................................................................................21

    A.   The Statute of Limitations Is Three Years Under the
       FLSA For Willful Violations and Six Years Under the NYLL ..................................21

    B.   Liquidated Damages Are Available Under the NYLL For Willful Violations...........21

    C.   Defendant's FLSA and NYLL Violations Were Willful .............................................22

**III.   DEFENDANT IS LIABLE FOR FLSA LIQUIDATED DAMAGES** ...........................23

**IV.   DEFENDANT IS LIABLE FOR PREJUDGMENT
       INTEREST AND ATTORNEYS' FEES** ......................................................................24

**V.   DEFENDANT IS INDIVIDUALLY LIABLE**.................................................................24

**CONCLUSION** ...............................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                               **Pages**

<u>Anderson v. Mt. Clemens Pottery,</u>
    328 U.S. 680 (1946)................................................................................................13, 19

<u>Ansournana v. Gristede's Operating Corp.,</u>
    255 F. Supp.2d 184 (S.D.N.Y. 2003).............................................................24 n.19

<u>Armour & Co. v. Wantock,</u>
    323 U.S. 126 (1944)...............................................................................................14

<u>Breen v. Concrete by Wagner, Inc.,</u>
    No. 98 C 3611, 1999 WL 1016267 (N.D. Ill. Nov. 3, 1999)...........................22-23

<u>Brock v. Wilamowsky,</u>
    833 F.2d 11 (2d Cir. 1987)....................................................................................23

<u>Cao v. Wu Liang Ye Rest. Inc.,</u>
    2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010).....................................11 n.6, 22, 24

<u>Chan vs. Sung Yue Tung Corp.,</u>
    No. 03-CV-6048, 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007)...............................17

<u>Chao v. Gotham Registry, Inc.,</u>
    514 F.3d 280 (2d Cir. 2008)...................................................................................14

<u>Copantitla v. Fiskardo Estiatorio Inc. D/B/A Thalassa Rest.,</u>
    788 F. Supp.2d 253 (S.D.N.Y. 2011)..................................................12 n.11, 17, 18

<u>Chung v. New Silver Palace Rest.,</u>
    246 F. Supp.2d 220 (S.D.N.Y. 2002).....................................................................16

<u>Do Yea Kim v. 167 Nail Plaza,</u>
    No. 05 CV 8560, 2008 WL 2676598 (S.D.N.Y. July 7, 2008)...............................22

<u>Doo Nam Yang v. ACBL,</u>
    427 F. Supp.2d at 327 n.15 ...................................................................22, 24 & n.19

<u>Fast v. Applebee's Intl., Inc.,</u>
    638 F.3d 872 (8th Cir. 2011),
    <u>cert. denied,</u> 132 S. Ct. 1094 (Jan. 12, 2012)..........................................................19

Goldberg v. Whitaker House Coop.,
    366 U.S. 23 (1961)...........................................................................................24-25

Herman v. RSR Sec. Servs., Ltd.,
    172 F.3d 132 (2d Cir. 1999)....................................................... 22, 23, 24, 24 & n.19

Jiao v. Chen,
    No. 03 Civ. 0165, 2007 WL 4944767 (S.D.N.Y. Mar. 30, 2007) ...................................24 n.19

Kilgore v. Outback Steakhouse,
    160 F.3d 294 (6th Cir. 1998) ...................................................................................17

Lu v. Jing Fong Rest. Inc.,
    503 F. Supp.2d 706 (S.D.N.Y. 2007)........................................................................18

Maliza v. 2001 Mar-OS Fashion, Inc.,
    No. 07 Cv. 463, 2010 WL 502955 (E.D.N.Y. Feb. 10, 2010) ...................................22

Martin v. Tango's Rest., Inc.,
    969 F.2d 1319 (1st Cir. 1992)..................................................................................17

McLaughlin v. Richland Shoe Co.,
    486 U.S. 128, 108 S. Ct. 1677 (1988).......................................................................21

Moon v. Kwon,
    248 F. Supp.2d 201 (S.D.N.Y. 2002)...........................................................14, 22, 24

Padilla v. Manlapaz,
    643 F. Supp.2d 302 (E.D.N.Y. 2009) ......................................................................13

Reich v. Chez Robert, Inc.,
    28 F.3d 401 (3d Cir. 1994)................................................................................. 16-17

Reilly v. Natwest Mkts. Group Inc.,
    181 F.3d 253 (2d Cir. 1999)....................................................................................24

Reich v. S. New Eng. Telecommc'ns Corp.,
    121 F.3d 58 (2d Cir. 1997).................................................................................14, 23

Solis v. Yang,
    345 Fed. Appx. 35 (6th Cir. 2009)...........................................................................17

Ting Yao Lin v. Hayashi Ya II, Inc.,
    2009 WL 289653 (S.D.N.Y. Jan. 30, 2009),
    Report and Recommendation *Adopted By*,
    2009 WL 513371 (S.D.N.Y. Feb. 27, 2009)...............................................................21

Tlacoapa v. Carregal,
    386 F. Supp.2d 362 (S.D.N.Y. 2005)............................................................23

Yu G. Ke v. Saigon Grill, Inc.,
    595 F. Supp.2d 240 (S.D.N.Y. 2008)....................... 13-14, 15, 17, 20, 21, 22, 23, 24

Zheng v. Liberty Apparel Co.,
    355 F.3d 61 (2d Cir. 2003)............................................................................25

**Regulations**

29 C.F.R. § 516.5 ........................................................................................13

29 C.F.R. § 516.28 ......................................................................................19

29 C.F.R. § 531.3(d)(2)................................................................................21

29 C.F.R. § 531.32(c)..................................................................................21

29 C.F.R. § 531.35 ......................................................................................21

29 C.F.R. § 531.51 ......................................................................................19

29 C.F.R. § 531.56(e)..................................................................................19

29 C.F.R. § 531.59 ......................................................................................19

29 C.F.R. § 531.60 ................................................................................12 n. 11

29 C.F.R. § 785.11 ......................................................................................14

29 C.F.R. § 785.13 ......................................................................................14

29 C.F.R. § 785.15 ......................................................................................14

29 C.F.R. § 785.16 ......................................................................................14

12 N.Y.C.R.R. § 137-1.2 .......................................................................11 n.6, 13

12 N.Y.C.R.R. § 137-1.3 .......................................................................12 n.11, 13

12 N.Y.C.R.R. § 137-1.4 ...........................................................................12 n.7

12 N.Y.C.R.R. § 137-1.7 ...............................................................................20

12 N.Y.C.R.R. § 137-2.2 .................................................................................................18

12 N.Y.C.R.R. § 137-2-5(b) ..........................................................................................21

12 N.Y.C.R.R. § 137-3.3 ........................................................................................20 n. 17

12 N.Y.C.R.R. § 137-3.3(c) ....................................................................................20 n. 17

12 N.Y.C.R.R. § 137-3.4 ......................................................................................15 & n. 15

## Statutes

29 U.S.C. § 201 ...............................................................................................................1

29 U.S.C. § 203 .............................................................................................................15

29 U.S.C. § 203(d) .........................................................................................................24

29 U.S.C. § 203(g) .........................................................................................................14

29 U.S.C. § 203(m)......................................................... 12 n.7, 15 & n.14, 16, 17, 18

29 U.S.C. § 203(t) ....................................................................................................8 n.5

29 U.S.C. § 206 .............................................................................................................13

29 U.S.C. § 206(A)(1)..............................................................................................11 n.6

29 U.S.C. § 207 .............................................................................................................13

29 U.S.C. § 211(c) .........................................................................................................13

29 U.S.C. § 216(b) .....................................................................................................23, 24

29 U.S.C. § 218(a) ...............................................................................................11 n.6, 12 n.7

29 U.S.C. § 255(a) .........................................................................................................21

29 U.S.C. § 260 .............................................................................................................23

N.Y. C.P.L.R. § 5001......................................................................................................24

N.Y. C.P.L.R. § 5004......................................................................................................24

N.Y. Lab. Law § 193 ...................................................................................................................21

N.Y. Lab. Law § 195(4) ..............................................................................................................13

N.Y. Lab. Law § 196-d ...............................................................................................................18

N.Y. Lab. Law § 198-b ...............................................................................................................21

N.Y. Lab. Law § 198(1) ..............................................................................................................24

N.Y. Lab. Law § 198(1-a) ......................................................................................................21, 24

N.Y. Lab. Law § 198(3) ..............................................................................................................21

N.Y. Lab. Law § 652(1) .....................................................................................................11 n.6, 13

N.Y. Lab. Law § 661 ...................................................................................................................13

N.Y. Lab. Law § 663(1) .....................................................................................................22 & n.18, 24

N.Y. Lab. Law § 663(3) ..............................................................................................................21

## <u>PRELIMINARY STATEMENT</u>

This case involves a straightforward application of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et</u> <u>seq</u>., and New York Labor Laws ("NYLL").  Plaintiffs, four non-English speaking immigrants, were employed by Defendant Henry Li ("Defendant") as delivery workers at different times between March, 2007 and December, 2009.  The parties agree more or less about the dates and hours that Plaintiffs worked, about the monthly wages Plaintiffs received, and about the fact that Plaintiffs were "tipped employees"—meaning they earned at least $30 per month in tips.  The parties also agree that the threshold question to be resolved by the Court is whether Defendant satisfied the notice requirement of the tip credit provisions, permitting Defendant to pay Plaintiffs a reduced minimum wage (herein referred to as the "*tipped* wage rate").  If yes, the Court will have to resolve the question whether Defendant forfeited his right to pay the *tipped* wage rate by assigning Plaintiffs to perform non-tipped work on weekdays before noon and between the hours of 3:30 p.m. and 6:00 p.m.  Next, the Court must determine the extent to which Defendant failed to pay wages, overtime, and spread of hours compensation, or to reimburse Plaintiffs for bicycle expenses.  Finally, the Court must determine whether such failure was willful.

Both parties in this case have asked the Court to do some math before reaching the threshold question.  Counsel for Defendant claimed on the first day of trial that Defendant paid above the minimum wage.  He reaches this conclusion by adding Plaintiffs' tips to their monthly wages and dividing the sum by the hours Plaintiffs worked, a calculation never performed by Defendant, that involves a misapplication of the tip credit and is not permitted by law.  Plaintiffs assert that even if Defendant would have been entitled to the tip credit, he did not take the tip credit or otherwise calculate his wage obligation when Plaintiffs were employed.  Proper

calculations reveal that Defendant paid Plaintiffs below the minimum *tipped* wage rate. These undeniable facts preclude a finding that Defendant satisfied the notice requirement or that he acted in good faith.

## **FACTS**

Plaintiffs brought this action on June 19, 2009 against Defendants Home on 8th Corp., a restaurant, and owners Henry and Stephen Li. (<u>See</u> Stipulations of Fact ("Stips.") ¶ 1.) Henry and Stephen Li filed for bankruptcy on the eve of trial. Plaintiffs then obtained a Default Judgment against Defendant Home on 8th (Stips. ¶ 2), however, and an inquest on damages was postponed due to the unresolved joint liability of Defendant Henry Li. The bankruptcy stay was lifted as to Henry Li, who then obtained *pro bono* counsel.[1] A trial was held on August 15, 16 and 17, 2012.[2] On the first day of trial, Defendant submitted a Memorandum of Law arguing that Defendant paid Plaintiffs above the minimum wage.

1.   <u>Home on 8th</u>

Defendant Home on 8th, Corp. was a Chinese-food restaurant located at 391 8th Avenue, New York, New York, between 29th and 30th Streets. (Stips. ¶ 5.)[3] Business hours at Home on 8th were Monday through Friday 11:00 a.m. to 10:00 p.m., and Saturday and Sunday 12:00 noon

---

[1] Defendant Stephen Li obtained a bankruptcy discharge by an Order entered on September 22, 2011. (Stips. ¶ 6.)

[2] Citations to the trial transcript are designated herein by "Tr.," followed by the applicable page and line numbers. Citations to the transcript of the deposition of Henry Li, excerpts of which were introduced at trial, are designated herein as "Li Depo. Tr.," followed by the applicable page and line numbers. At trial, Plaintiffs testified on direct by declaration, with the exception of Lai Li, who did not testify. Citations to Plaintiffs' declarations are designated herein by "[Plaintiff's name] Decl."

[3] Defendants filed a motion to dismiss, asserting that the restaurant did not gross $500,000 annually. Defendants stipulated when they withdrew their motion to dismiss, that Home on 8th had an annual gross volume of business of not less than $500,000, which qualifies it as an "enterprise engaged in commerce" for purposes of liability under the FLSA.

to 10:00 p.m., except on certain holidays, including Christmas, Thanksgiving and July 4.  (Stips. ¶¶ 10, 11.)

2.   <u>Defendant Henry Li</u>

Defendant Henry Li is a 50% shareholder and the Chief Executive Officer of Home on 8th, Corp.  (Stips. ¶¶ 7, 13.)  Defendant and his brother were the only managers at the restaurant (Stips. ¶ 15), and Defendant personally supervised employees (Stips. ¶ 18); he distributed Plaintiffs' pay (Stips. ¶¶ 38, 43, 50, 55); and, he collected the restaurant's receipts (Tr. 409:12-19).  Defendant speaks fluent English and Cantonese.  (Stips. ¶ 20.)

3.   <u>Plaintiffs and Their Assigned Duties</u>

Plaintiffs are non-English speaking Chinese immigrants.  Plaintiff Lin H. Wei speaks fluent Mandarin and a few words and phrases in English.  (Stips. ¶ 21.)  Plaintiffs Lin, He and Li are native Fuzhounese speakers.  They speak some Mandarin and a few English phrases.  (Stips. ¶ 22.)

Plaintiffs' duties included making deliveries, distributing menus to buildings in the neighborhood and doing "side work," which consisted of preparing packages of utensils that were put in the bags of delivery and take-out orders.  (Stips. ¶ 24.)  The majority of the restaurant's deliveries were made during the "busy" lunch and dinner hours, from 12:00 p.m. to 3:00 and 6:00 to 9:00 p.m.  (Tr. 96:7-16.)  Plaintiffs earned tips when they made deliveries.

One of the restaurant's three delivery workers was referred to as the delivery head. (Stips. ¶ 16.)  On weekdays, from 10:30 a.m. to 12:00 p.m. (1.5 hours) and from 3:30 to 6:00 p.m. (2.5 hours)—the delivery head and one other delivery worker were assigned to distribute menus in the neighborhood, while a third remained at the restaurant packaging utensils, making occasional deliveries.  (Wei Decl. ¶ 6, Lin Decl. ¶ 6, He Decl. ¶ 6; Tr. 92:14-93:1, 145:8-21.)

3

The workers who were assigned to distribute menus did not also make deliveries.  (Stips. ¶ 24.)

Therefore, they did not earn tips during those 4 hours.  The worker assigned to package utensils

made few deliveries during those hours, for which he earned a few tips.  (<u>See</u> Tr. 402:3-6

(Defendant estimated at most five deliveries between 3:30 and 6:00).)  While the parties disagree

about how much time Plaintiffs spent preparing utensil packages (<u>compare, e.g.</u>, Tr. 183:6-9 <u>with</u>

Tr. 291:17-292:8), for the reasons explained below, the Court will not have to decide that issue.

4.     <u>Plaintiffs' Employment Dates</u>

Plaintiffs' employment dates are not genuinely disputed.  Plaintiff Lin H. Wei testified

that he was employed as a delivery worker from about March 1, 2007 until March 20, 2008.

(Wei Decl. ¶ 2.)  Plaintiff Yong D. Lin testified that he was employed as a delivery worker from

about March 1 to October 22, 2007, and as delivery head from November 25, 2007 until

February 16, 2009.  (Lin Decl. ¶ 2.)  Lin took a leave of absence from about October 22, 2007 to

November 25, 2007.  (<u>Id.</u>)  Plaintiff Jian F. He testified that he was employed as a delivery

worker from about February 6, 2008 to December 30, 2009, except in the month of April,

2009—when he was given the responsibilities of delivery head—distributing menus weekly

instead of every other week.  (He Decl. ¶¶ 2, 6.)  He took a leave of absence from September 1 to

November 16, 2008, during which period he was replaced by Plaintiff Lai Li.  (He Decl. ¶¶ 2, 9.)

Defendant testified as follows:

Q      Do you have a specific recollection of the precise dates that Plaintiffs
       Yong Lin, Jian He and Lin Wei started working at Home on 8th?
A.     Certainly not.
Q.     Do you have a written record reflecting the precise dates they started at
       Home on 8th?
A.     Unfortunately not.
Q.     Do you know the approximate time [the Plaintiffs] started working at
       Home on 8th?

A.    From hearing the testimony, I would agree to the date time frame that they're stating.  So I would probably agree to the time frame that they're stating.

(Tr. 298:6-17.)

5.    <u>Until September 21, 2009, Plaintiffs Worked Between 65.5 and 67.5 Hours A Week</u>

The hours that Plaintiffs worked are not genuinely disputed.  According to Plaintiffs, before September 21, 2009, the delivery head worked five 11.5-hour weekdays plus one 10-hour weekend day, and the two delivery workers alternated between five 11.5-hour weekdays plus one 10-hour weekend day or two 4-hour weekend days.  (Wei Decl. ¶ 7; Lin Decl. ¶ 7; He Decl. ¶ 7.) Thus, the delivery head worked 67.5 hours per week ((5 x 11.5) + 10 = 67.5) and the delivery workers alternated between 67.5 hours and 65.5 hours per week ((5 x 11.5 hours) + 8 = 65.5).

Plaintiffs testified that on weekdays they reported to work at 10:30 a.m., thirty minutes before the restaurant opened for business.  (Wei Decl. ¶¶ 6-7; Lin Decl. ¶¶ 6-7; He Decl. ¶¶ 6-7.) Defendant, who arrived at or before 10:30 a.m. (Stips. ¶18), does not genuinely dispute that Plaintiffs reported at 10:30 a.m. (Tr. 293:2-13).  On weekends, the delivery head and one delivery worker reported at 12:00 p.m. (Wei Decl. ¶ 7; Lin Decl. ¶ 7; He Decl. ¶ 7), and the third delivery worker reported at 6:00 p.m. (<u>id.</u>).  On weekdays and weekends, Plaintiffs worked until 10:00 p.m.  (<u>Id.</u>)

On September 21, 2009, three months after the Complaint was filed, Defendant began scheduling Plaintiff He to work variable hours.  (<u>See</u> Stips. ¶ 66 & Exh. 6.)

6.    <u>Until September 21, 2009, Plaintiffs Were Not Relieved of Their Duties During Meals</u>

Home on 8th provided Plaintiffs with two meals a day when they worked full days and one meal a day when they worked half-days.  (Stips. ¶ 33.)  During meals, provided at about 3:00 p.m. and between 8:00 and 9:00 p.m., Plaintiffs were expected to be available for deliveries, if

needed.  (Stips. ¶ 32; Wei Decl. ¶ 10; Lin Decl. ¶ 10; He Decl. ¶ 10.)  Plaintiffs generally took

about 15 minutes to eat.  (See Wei Decl. ¶ 10; Lin Decl. ¶ 10; He Decl. ¶ 10; Tr. 281:15-16.)  On

September 21, 2009, Plaintiff He began signing out for lunch.  (See Stips. Exh. 6.)

7.   Until September 21, 2009, Defendant Did Not Make Contemporaneous Records of
     Plaintiffs' Hours and Wages

In 2007, 2008 and the beginning of 2009, Defendant paid Plaintiffs a flat monthly wage

irrespective of the hours that they worked.  (Stips. ¶¶ 37, 42, 47, 48, 54.)  Defendant paid

Plaintiffs in cash (Stips. ¶¶ 37, 38, 42, 43, 46, 47, 54, 55), and he made no contemporaneous

record of Plaintiffs' hours or wages.  (Stips. ¶¶ 36, 41, 53, 56, 62.)  At his deposition, Defendant

admitted that he did not keep track of the delivery workers' hours at any time in 2007 or 2008,

and he did not remember if he did so prior to September 2009.  (Li Depo. Tr. 78:6-22.)  Nor did

he recall having any records of cash payments made to any of the employees in 2007, 2008, or

2009.  (Li Depo. Tr. 172:19-25.)  In addition, Defendant testified:

> Q     And were you aware of Home on 8th's obligation to record employees'
>       hours and wages?
> A     Maybe the accountant might have mentioned it to me.

(Li Depo. Tr. 185:21-25.)

> Q     What, if anything, did you do to try to find out what your obligations
>       were?
> MR. MARKS:  Obligations to keep records of wages and hours?
> Q     To keep records of wages and hours?
> A     What did I make an effort to do?
> Q     If anything?
> A     I don't believe I made any effort, because if I did, maybe I would have had
>       more information for you.

(Li Depo. Tr. 186:18-187:4.)

Defendant terminated Plaintiff Lin on February 16, 2009.  (Stips. ¶ 39.)  Soon after, Lin

and others picketed the restaurant.  (Tr. 142:18-21.)  In March 2009, Defendant told his

accountant that he was involved in a labor dispute, and he asked for assistance in calculating

withholdings.  (Stips. ¶ 56.)  By that time, only Plaintiff He was still employed.  (See above at 4.)

In May 2009, Defendant began paying some of Plaintiff He's wages by personal check.  (Stips. ¶ 48 & Exh. 4 thereto.)  He continued to pay part of Plaintiff He's wages in cash and he continued to not record Plaintiff He's daily hours.  (Stips. ¶¶ 48, 63, 66).  On September 21, 2009, Defendant began recording Plaintiffs' hours and paying Plaintiffs by check only.  (Stips. Exhs. 4, 6.)

This Complaint was filed in June 2009.  (Stips. ¶ 1.)

8.   Until September 21, 2009, Defendant Did Not Take a Tip Credit

Until September 21, 2009, Defendant paid Plaintiffs a monthly wage irrespective of the hours that they worked.  (Stips. ¶¶ 37, 42, 47, 48, 54.)[4]  Defendant paid Plaintiff Wei, a delivery worker, $700 a month in cash throughout his employment.  (Stips. ¶ 54; Wei Decl. ¶ 8.)  Defendant paid Plaintiff Lin $700 a month in cash when he worked as a delivery worker and $1,200 a month in cash when he worked as a delivery head (Stips. ¶ 37).

Defendant initially paid Plaintiff He $700 a month cash as a delivery worker, for the months of February and March 2008.  (Stips. ¶ 46; He Decl. ¶ 8.)  Starting April 1, 2008, through March 2009, Defendant paid Plaintiff He $750 a month in cash.  (Id.)  Plaintiff Li was He's replacement for about two months when He was earning $750.00.  (He Decl. ¶¶ 2, 9.)

Defendant gave Plaintiff He delivery head duties for the month April 2009 and paid him $1,200 cash.  (Stips. ¶ 46; He Decl. ¶ 8.)  Starting May 1, 2009, he reduced Plaintiff He's wage to $1,000 a month and began paying him partly by check and partly in cash.  (Stips. ¶ 48.)  Irrespective of the hours and dollar amounts reflected on the checks, Plaintiff He testified that he

---

[4] There is no evidence that Defendant reduced Plaintiffs' wages in months that included holidays.  In other words, he gave them a few paid holidays.

continued to work a 67.5-hour schedule and his monthly wage remained at $1,000 through September 20, 2009.  (He Decl. ¶ 7; see also Stips. ¶ 48.)

Beginning September 21, 2009, Defendant made his first attempt to calculate the tip credit and he began paying Plaintiff He at an hourly wage of $4.65 and spread of hours pay at $7.25 per hour.  (See Stips. Exhs. 4, 6; see also Stips ¶ 66.)  The hours Plaintiff He worked during his last three months of employment are set forth in Stipulations ¶ 44.  The wages he received are set forth in Stipulations Exhibits 4 and 6.

9.      Plaintiffs Are "Tipped Employees"

Plaintiffs received in excess of $30 per month in tips.  (Stips. ¶ 27).[5]

10.     Defendant Was Familiar With the Minimum Wage and Overtime Laws

Defendant expressly acknowledged his familiarity with the minimum wage laws.  (Tr. 305:25-306:13; see also Li Depo. Tr. 187:5-12.)  He further acknowledged that, prior to March 31, 2009, he did not "know if there is any methods" he used to address minimum wage and overtime laws, because "we thought that everything that we were doing was fine since there were no complaints."  (Li Depo. Tr. 203:18-204:2.)  At his deposition, Defendant testified:

> Q      Did you advise employees about the minimum wage and overtime laws?
> A      I never told them the minimum wage is this, nor have I ever told them anything.
>        I mean, I didn't know I had to tell them.  I don't what information I wasn't instructed to tell them, because most of this information was never, it didn't seem like I was told, okay this is information that all employees must know before you hire them.  Like they never asked me if we had worker's comp.  We do have worker's comp.

(Li Depo. Tr. 204:4-16.)

---

[5] 29 U.S.C. § 203(t) defines "tipped employees" as employees who customarily and regularly receive at least $30 per month in tips.

11.   <u>Defendant Did Not Post A Notice Concerning the Minimum Wage or the Tip Credit Until After July 24, 2009</u>

At trial, Defendant claimed that the federal minimum wage notice was posted at the restaurant throughout Plaintiffs' employment.  (Tr. 265:11-19.)  However, Plaintiffs testified that they were not aware of any minimum wage notices posted.  (<u>See</u> Wei Decl. ¶ 4; Lin Decl. ¶ 4; He Decl. ¶ 4.)  They did observe some English-language only notices on a wall at the top of the stairs going to the basement.  (Tr. 164:4-21, 201:16-22.)  Plaintiff He testified that Defendant posted more notices on a wall after the Complaint was filed.  (Tr. 198:4-5, 208:4-15.)

In discovery, Plaintiffs requested Defendant's proof that a minimum wage notice was conspicuously posted at the restaurant.  (Stips. Exh. 8 ¶ 33.)  Defendant produced Defendant's Trial Exhibit 1—four blurry photographs, taken after the Complaint was filed, of notices posted on the wall going to the basement and on the wall in the dining room.  (Tr. 259:12-260:20.)  Plaintiffs requested legible copies of the notices and Defendant responded by e-mailing a pdf copy of a New York State minimum wage notice dated <u>July 2009</u>, with the subject heading "Home on 8th More Legible Copy of Workplace Posting on Minimum Wage."  (Tr. 261:17-23.)  Defendant testified that the photo on page 1 of Exhibit 1 depicted "the federal wage posting . . . should be the one on the lower right with the circle" (Tr. 265:20-25), and that he was "very certain this posting, this notice had been there since day one" (Tr. 266:8-9).  However, a simple turn of the page reveals that such notice is not a federal minimum wage notice; it is a New York unemployment insurance notice.  (Def.'s Trial Exh. 1 at 2.)  Defendant offered no other proof that Home on 8th posted minimum wage notices at the restaurant.

The Court then asked Defendant:

THE COURT:        No, you told me there were a bunch of notices on the wall.
THE WITNESS:     Yes.

9

THE COURT:        Can you show me one of them?

THE WITNESS:       I'll try to dig up --

THE COURT:        Well, do you have them?  Have you shown it to anyone?
                  Do you have a copy – did you produce a copy of the notice
                  that you believe was on the wall prior to that notice, to
                  anybody in this case?

THE WITNESS:      I'm very sorry, your Honor, do I have the actual --

THE COURT:        Yes. I want to see the actual notice.  You said the notice
                  was on the wall.  It's not very complicated.  You said the
                  notice was on the wall.  Where is it?  Let me see.  You
                  don't have it?

THE WITNESS:      I don't have it with me right now.

THE COURT:        When is the last time you saw it?

THE WITNESS:      We packed -- I packed up a lot of stuff –

THE COURT:        You didn't think it was important for you to have that
                  notice for you to prove that you did post such a notice?

THE WITNESS:      I probably thought that I provided all the information to the
                  attorneys.

(Tr. 389:18-390:16.)

THE COURT:        When you took the picture, you knew it was important to
                  keep the notice because you knew that's what you were
                  going getting sued about, right?  That's why you took the
                  picture, because you wanted to show the notice?

THE WITNESS:      Yeah.

THE COURT:        I assume you took the whole notice off the wall but you
                  threw it in the garbage?

THE WITNESS:      I'm not sure if I did.

THE COURT:        You knew it was important, right?

THE WITNESS:      Yes.

THE COURT:        It's more important than the 2009 one because that prior
                  notice proves that you had such a notice on the wall, didn't
                  it?

THE WITNESS:      Yes.  Because they kept disputing that I never had it up
                  there but if I take it –

THE COURT:        You could have ended that dispute by showing them the
                  notice, right?  And you could end that dispute today by
                  showing me the notice, but you don't have it, right?

THE WITNESS:      Yes.

(Tr. 391:2-20.)

12.     Defendant Did Not Inform Plaintiffs of His Intent to Take the Tip Credit or Give Them a Statement of Allowances Taken

Defendant never informed Plaintiffs of the minimum wage and overtime laws or of Home on 8th's intent to take a tip credit.  (See Wei Decl. ¶ 4, Lin Decl. ¶ 4, He Decl. ¶ 4.)  On this critical question, Defendant testified at his deposition:

Q      Did you communicate with delivery workers when you hired them, did you tell them how much you were going to pay them?
A      Most likely, yes.
       The reason why I say most likely yes is because if I didn't tell them, the other delivery guy would tell them, if it was referred to by the person who was working there or someone else, so I don't remember.
Q      Do you have any specific recollection of telling Mr. Wei how much you were going to pay him when you hired him?
A      I don't have any specific recollection.
Q      Do you have any specific recollection of how much you told Mr. Lin you were going to pay him when you hired him?
A      No.
Q      Do you have any recollection of telling them anything with regard to wages?
A      I think the only time there were discussions is when I gave them a raise, if there was, but just not much conversation involved.

(Li Depo. Tr. 138:21-139:20.)

Defendant did not provide Plaintiffs with a statement of allowances taken with each payment of wages.  (Stips. ¶ 62; Wei Decl. ¶ 5; Lin Decl. ¶ 5; He Decl. ¶ 5.)

13.     The Monthly Wage Defendant Paid to Plaintiffs Was Below The Minimum *Tipped* Wage

Under New York state law, the minimum hourly wage was $7.15 per hour on and after January 1, 2007, and $7.25 per hour on or after July 24, 2009.[6]  The minimum *tipped* wage was **$4.85** per hour ($7.15 minus the tip credit of $2.30 for "service employees") until July 23, 2009

---

[6] N.Y. Lab. Law § 652(1); 12 N.Y.C.R.R. § 137-1.2.  Until July 23, 2009, the federal minimum wage was lower than the state minimum wage.  See 29 U.S.C. 206(A)(1).  However, the FLSA requires employers to pay employees at the greater of the federal or state minimum wage.  29 U.S.C. § 218(a); Cao v. Wu Liang Ye Rest. Inc., 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010) ("The Federal minimum wage was intended to be a floor, not a ceiling").

and **$4.90** per hour ($7.25 minus the tip credit of $2.35) thereafter.[7]

Until September 21, 2009, Defendant paid his delivery workers a flat monthly rate of $700 or $750 a month for 66.5 weekly hours (the average of 65.5 and 67.5 alternate weekly hours).  The regular hourly wage Defendant paid delivery workers, therefore, was $2.43 or $2.60 per hour.[8]  Defendant paid the delivery head $1,000 to $1,200 a month for 67.5 hours of work, or $3.42 to $4.10 per hour.[9]  These hourly wages are below the minimum tipped wage.[10]  Defendant did not pay overtime or spread of hours compensation.

14.    The Hourly Wage and Overtime Rates Defendant Paid After September 21, 2009 Were Below the Minimum *Tipped* Wage Rates

Beginning September 21, 2009, Defendant paid Plaintiff He $4.65 per straight-time hour (see Stips. Exh. 6), not $4.90, as required.  Defendant also paid overtime at $8.23 or $8.27 per hour, not $8.53 as required.[11]

Notwithstanding Defendant's attempt to comply with the minimum wage laws, he paid wage rates that were below the minimum *tipped* wage.

---

[7] 12 N.Y.C.R.R. § 137-1.4.  At all relevant times, the minimum *tipped* wage under the FLSA was only $2.13 per hour.  See 29 U.S.C. § 203(m).  However, as noted above, New York employers must pay the greater state minimum.  See 29 U.S.C. § 218(a).

[8] $700 divided by 288 hours (66.5 hours per week * 52 weeks / 12 months) = $2.43.
  $750 divided by 288 = $2.60.

[9] $1,000 divided by 292.5 hours (67.5 hour per week * 52 weeks / 12 months) = $3.42
  $1,200 divided by 292.5 = $4.10.

[10] Defendant improperly includes the tips in some of his calculations.  The hourly wage calculated by Defendant without tips is lower than Plaintiffs' because Defendant deducts time he claims Plaintiffs did not work—when they reported at 10:30 a.m. and when they ate meals.  His calculations also include retroactive deductions for holidays.

[11] The *tipped* overtime rate is calculated using the full minimum wage times one and a half minus the tip credit (($7.25 x 1.5) - $2.35) = **$8.53** per hour.  Copantitla v. Fiskardo Estiatorio Inc. D/B/A Thalassa Rest., 788 F. Supp.2d 253, 291 (S.D.N.Y. 2011) (citing 29 C.F.R. § 531.60 and 12 N.Y.C.R.R. § 137-1.3), not $8.23 or $8.27 per hour, as paid by Defendant (see Stips. Exh. 6).

15.     Defendant Did Not Reimburse Plaintiffs for Their Bicycle Expenses

Defendant expected Plaintiffs to use their own bicycles to make deliveries.  (Stips. ¶ 29.) Plaintiffs fulfilled that expectation (Stips. ¶ 28).[12]  Plaintiffs made deliveries between 14th Street and 42nd Street on the North/South axis, and between Broadway and Twelfth Avenue on the East/West axis.  Occasionally, they made deliveries outside of this radius.  (Stips. ¶ 12.)

At no time did Defendants reimburse or offer to reimburse Plaintiffs for any expenses they incurred in obtaining, replacing or maintaining their bicycles or accessories.  (Stips. ¶ 30.) Plaintiffs testified that they spent anywhere from $100 to $900 to purchase bicycles (He Decl. ¶ 11; Lin Decl. ¶ 11; Wei Decl. ¶ 11); from $10 bi-monthly to $40-$50 monthly in bicycle repairs (He Decl. ¶ 11; Lin Decl. ¶ 11; Wei Decl. ¶ 11); and, from $20 to $75 to purchase locks, chains and protective gear (He Decl. ¶ 11; Lin Decl. ¶ 11; Wei Decl. ¶ 11).

## ARGUMENT

## I.     DEFENDANT IS LIABLE FOR UNPAID WAGES AND OVERTIME

### A.     Defendant Is Liable For Every Hour That Plaintiffs Were On Duty.

Defendant does not dispute that he was required to pay Plaintiffs the minimum wage and overtime.  See 29 U.S.C. § 206 (minimum wage), 29 U.S.C. § 207 (overtime pay), N.Y. Lab. Law § 652 (minimum wage), 12 N.Y.C.R.R. § 137-1.2 (minimum wage), 12. N.Y.C.R.R. § 137-1.3 (overtime).  Nor does he dispute that he was required to maintain detailed records of Plaintiffs hours and wages.  See 29 U.S.C. § 211(c), 29 C.F.R. § 516.5, N.Y. Lab. Law §§ 195(4), 661.

Because Defendant did not make contemporaneous records of Plaintiffs' hours and wages until September 21, 2009, Plaintiffs' testimony is sufficient to establish Defendant's liability. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946); see also Padilla v.

---

[12] Plaintiffs are not proceeding on the bicycle cause of action as to Plaintiff Lee.  (Tr. 229:14-15.)

Manlapaz, 643 F. Supp.2d 302, 307 (E.D.N.Y. 2009) (relying on Plaintiffs' recollection); Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp.2d 240, 254-55 (S.D.N.Y. 2008) (same).  Plaintiffs' testimony establishes that they worked from 10:30 a.m. to 10:00 p.m. on weekdays, and from 12 p.m. or 6:00 p.m. to 10:00 p.m. on weekends.

Defendant claims that Plaintiffs should not be paid every day that they reported before 11:00 a.m., if they were not assigned to distribute menus, or during their meal breaks.  Defendant is liable for such time, however, because he permitted Plaintiffs to work.

The FLSA and NYLL both require employers to compensate employees for work "suffered or permitted."  See Moon v. Kwon, 248 F. Supp.2d 201, 228 (S.D.N.Y. 2002) (citing 29 U.S.C. § 203(g); N.Y. Lab. Law § 2(7)).  "[W]ork not requested but suffered or permitted is work time."  29 C.F.R. § 785.11; see also Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944) ("Readiness to serve may be hired, quite as much as service itself ...").  Thus, where an employer has knowledge that work is being performed, he must pay for such work at the appropriate hourly rate.  Chao v. Gotham Registry, Inc., 514 F.3d 280, 288 (2d Cir. 2008) ("An employer who has knowledge [either actual or constructive] that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance ... even where the employer does not desire the employee to work.").  See also Moon, 248 F. Supp.2d at 228 (quoting 29 C.F.R. § 785.13).

The time Plaintiffs stopped working to eat cannot be deducted as non-work time because Plaintiffs' meals lasted for only 15 minutes and they remained available to make deliveries.  See 29 C.F.R. § 785.16 (non-work time is time when the employee is completely relieved from duty long enough for him to use the time effectively for his own purposes); 29 C.F.R. § 785.15 (waiting during periods of inactivity is work time); Reich v. S. New Eng. Telecommc'ns Corp.,

121 F.3d 58, 65-66 (2d Cir. 1997) (workers were on duty during lunch breaks because they were required to stay on site to perform passive security duties); <u>Saigon Grill</u>, 595 F. Supp.2d. at 255-56.

Plaintiffs are thus entitled to compensation for every hour they worked.

**B.     Defendant Is Not Entitled to A Retroactive Tip Credit or Tip Allowance.**

1.     <u>Tipped Employees May Not Be Paid Less Than the Minimum *Tipped* Wage Rate.</u>

Under the FLSA, an employer is permitted to pay "tipped employees" a reduced minimum wage—sometimes referred to as taking the tip credit—provided that certain conditions have been met.  29 U.S.C. § 203(m).[13]  The value of the tip credit permitted is defined in the statute.[14]  Under New York law, the tip credit is known as a "tip allowance," and the value of the allowance permitted depends on whether the employee is a "food service worker" or a "service employee."  12 N.Y.C.R.R. § 137-3.4.[15]  When the permissible tip credit is applied to the minimum wage the result is what we refer to herein as the minimum *tipped* wage.

Both the federal and state tip provisions allow an employer to rely on tips to satisfy a portion of his wage obligation—but only the portion permitted.  The employer is liable for the

---

[13]  There is no dispute that Plaintiffs are "tipped employees."  (<u>See</u> *Facts* Section 9 at 8.)

[14]  The statute provides:
> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206 (a)(1) of this title.

29 U.S.C. 203(m).

[15]  Plaintiffs were not "food service workers."  <u>See</u> 12 N.Y.C.R.R. § 137-3.4; N.Y. State Dep't of Labor Opinion Letter RO-07-0104 (Oct. 26, 2007).  And, as explained below, they were not "service employees" in the weeks they were assigned to perform non-tipped duties.  (<u>See</u> footnote 17.)

other portion, regardless of the amount an employee earns in tips.  In New York, employers are obligated to pay "service employees" a minimum *tipped* wage of not less than **$4.85** per hour before July 24, 2009 and not less than **$4.90** on or after July 24, 2009.  (See footnote 7.)

Defendant paid Plaintiffs a monthly wage.  He made no attempt to calculate or pay an hourly wage until three months after the Complaint was filed.  As a result, Defendant paid Plaintiffs an hourly wage that was below the minimum *tipped* wage.  (See *Facts* Section 13 at 11-12.)  These undeniable facts are incompatible with Defendant's claim that he gave Plaintiffs notice of his intent to take the tip credit.   Defendant did not intend to and he did not take the tip credit.  His request for retroactive application of the tip credit is inconsistent with the statute and the case law.

### 2.        Defendant Did Not Satisfy the Notice Requirement.

Under the FLSA, an employer can take a tip credit only if he fulfills two conditions: (1) he allows employees to retain their tips; and (2) he informs employees of the provisions of FLSA § 203(m).  29 U.S.C. § 203(m).  The statute and the case law make clear that these conditions must be met *before* the tip credit is to be taken.  "When the employer has not notified employees that their wages are being reduced pursuant to the Act's tip-credit provision, the district court may not equitably reduce liability for back wages to account for tips actually received." Reich v. Chez Robert, Inc., 28 F.3d 401, 404 (3d Cir. 1994).[16]  Furthermore, "[t]he two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage."  Chung v.

---

[16] See also U.S. Dep't of Labor, Fact Sheet #2: Restaurants and Fast Food Establishments Under the Fair Labor Standards Act (FLSA) (July 2009) ("Employees must be informed in advance if the employer elects to use the tip credit, [and of] the amount of tip credit to be claimed . . ."); U.S. Dep't of Labor Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (July 2009) ("Where an employer does not strictly observe the tip credit provisions of the Act, no tip credit may be claimed and the employees are entitled to receive the full cash minimum wage, in addition to retaining tips they may/should have received.").

New Silver Palace Rest., 246 F. Supp.2d 220, 229 (S.D.N.Y. 2002) (citing Chez Robert, Inc., 28

F.3d at 404); see also Saigon Grill, 595 F. Supp.2d at 255; Martin v. Tango's Rest., Inc., 969

F.2d 1319, 1323 (1st Cir. 1992).

An employer bears the burden of showing that he has satisfied the notice requirement of

the tip credit provision by, "for example, providing employees with a copy of § 203(m) and

informing them that their tips will be used as a credit against the minimum wage as permitted by

law." Chan v. Sung Yue Tung Corp., 2007 WL 313483, at *18 (S.D.N.Y. Feb. 1, 2007). Proper

notice includes posting the notice in a language the plaintiffs can read, and posting the notice in a

conspicuous area. See id. at *8, *19 (English-language posting was insufficient to inform

Chinese-speaking employees of the minimum wage laws or the tip credit). In other words,

employers are required to affirmatively inform employees of their right to be paid the minimum

wage and "of the employer's intention to treat tips as satisfying part of the employer's minimum

wage obligations." Tango's Rest., 969 F.2d at 1322; see also Kilgore v. Outback Steakhouse,

160 F.3d 294, 298 (6th Cir. 1998).

Defendant claims he satisfied the notice requirement indirectly, by posting a minimum

wage notice and by telling Plaintiffs that they would earn tips. Even if true, such facts would be

insufficient to establish notice as a matter of law. See Copantitla, 788 F. Supp.2d at 288

(rejecting defendants' claim and evidence that they satisfied the notice requirement by informing

employees that they would receive an hourly rate plus tips and by posting notices about the

minimum wage laws); see also Solis v. Yang, 345 Fed. Appx. 35, 38 (6th Cir. 2009) ("Although

in this case Tasty Buffet informed its employees that their pay would consist almost exclusively

of tips, it did not discuss its minimum-wage obligation or explain that it was applying a tip credit

against that obligation. As a result, Tasty Buffet failed to meet the statutory notice requirement

17

for receiving tip credit, and the district court did not err in disallowing an offset on this basis.").

Furthermore, the notice Defendant claims to have posted post-dates this lawsuit.  (See Def.'s Trial Exh. 3.)  And, while it concerns the minimum wage, it does not inform anyone of Defendant's intent to take a tip credit.  See Copantitla, 788 F. Supp.2d at 289 (stating "[a] generic government poster could inform employees that a minimum wage obligation exists, but could not possibly inform employees that their employers intend to take the tip credit").  Even if Defendant had separately informed Plaintiffs that they would earn tips—which he did not—that would not have put Plaintiffs on notice that Defendant intended to treat such tips as satisfying part of his minimum wage obligation.

More importantly, the assertion that an employer has informed employees of the provisions of § 203(m) presupposes that the employer has informed himself of such provisions and has formed an intent to take the tip credit.  Here, the evidence establishes that after Defendant allegedly informed Plaintiffs of his rights and obligations with respect to tipped employees, he proceeded to pay below the minimum *tipped* wage rate.  (See *Facts* Section 13 at 11-12.)  Such evidence precludes a finding that Defendant satisfied the notice requirement.

3.    Defendant Did Not Give Plaintiffs a Statement of Wages.

The NYLL regulations require that employees be given a statement of allowances claimed with every payment of wages. 12 N.Y.C.R.R. § 137-2.2.  Such requirement has been read together with New York Labor Law § 196-d to preclude a tip allowance absent compliance. See Copantitla, 788 F. Supp.2d at 290; Lu v. Jing Fong Rest. Inc., 503 F. Supp.2d 706 (S.D.N.Y. 2007).

Because Defendant did not satisfy the notice requirement of § 203(m) and did not provide Plaintiffs with a statement of allowances, he is liable to Plaintiffs for the full minimum wage of

18

$7.15 per hour before July 24, 2009, and $7.25 thereafter.  (See footnote 6.)  Further, it is

undisputed in this case that Plaintiffs worked over forty hours each week, and Plaintiffs are

entitled to overtime pay for those hours at a rate of 1.5 times their regular rate of pay.

> **C.     Defendant Is Not Entitled to A Tip Credit For All of the Hours That Plaintiffs Worked.**

In the unlikely event that the Court awards Defendant a retroactive tip credit, he would

still be liable for the full minimum wage for the hours Plaintiffs spent performing non-tipped

duties:  Each week, delivery heads were assigned to distribute menus 4 hours a day, 5 days a

week (20 hours); alternate weeks, delivery workers spent the same hours distributing menus or

packaging utensils.  (See *Facts* Section 3 at 3-4.)

The regulations promulgated under the FLSA provide that the tip credit may only be

taken for hours worked by the employee in a tipped occupation.  29 C.F.R. §§ 531.51, 531.59.

Where, as here, tipped employees have performed non-tipped work, the tip credit may not be

taken for time spent performing such work unless 1) the duties assigned are incidental to the

regular duties of the tipped occupation, and 2) the time spent performing such duties does not

exceed 20% of the employee's time.  29 C.F.R. § 531.56(e); U.S. Dep't of Labor, Field

Operations Handbook, Chapter 30, ¶ 30d00(e) (Dec. 9, 1988).  An employee who is dually

employed in tipped and non-tipped occupations must be paid the full minimum wage for all time

spent performing non-tipped work.  29 C.F.R. § 531.56(e).  The burden is on the employer to

maintain daily records of the hours spent by employees in tipped and non-tipped occupations.  29

C.F.R. § 516.28; see also Fast v. Applebee's Intl., Inc., 638 F.3d 872, 882 (8th Cir. 2011) (citing

Anderson v. Mt. Clemens Pottery, 328 U.S. at 687), cert. denied, 132 S. Ct. 1094 (Jan. 12, 2012).

Defendant is not entitled to a tip credit for the 4 hours of each weekday that Plaintiffs

distributed menus because such duty is not incidental to the regular duties of a delivery worker as

contemplated by the regulations.  Defendant is not entitled to a tip credit for the 4 hours of each weekday that Plaintiffs packaged utensils because, even though such duty is incidental, Plaintiffs spent more than 20% of their time (4 divided by 11.5, or 35%) doing it. Accordingly, Plaintiffs are entitled to the full minimum wage for the time they spent distributing menus and packaging napkins and utensils.[17]

### D.    Defendant Is Liable for Spread-of-Hours Compensation.

Plaintiffs are entitled to spread-of-hours compensation under regulations promulgated pursuant to NYLL, which provide that any restaurant employee whose workday is longer than ten hours "shall receive one hour's pay at the basic minimum hourly wage rate before allowances, in addition to the minimum wages otherwise required."  See 12 N.Y.C.R.R. § 137-1.7.

Plaintiffs' workdays regularly exceeded ten hours (Wei Decl. ¶¶ 7, 9; Lin Decl. ¶¶ 7, 9; He Decl. ¶¶ 7, 9), and until September 21, 2009, Defendant did not pay spread-of-hours compensation.  (Tr. 325:3-23.)  Defendant is therefore liable for spread-of-hours compensation for each workday that exceeded ten hours.

### E.    Defendant Is Liable for the Purchase and Maintenance of Bicycles.

Plaintiffs are entitled to reimbursement for costs related to the purchase and maintenance of bicycles under the FLSA and NYLL.  Bicycle transportation was a necessary component of

---

[17] Pursuant to the NY regulations, the tip credit only applies to "service employees."  12 N.Y.C.R.R. § 137-3.3 defines a "service employee" as an employee who customarily receive tips at specified rates, and states in subsection (c) that "[c]lassification as a service employee or as a nonservice employee shall be on a weekly basis except that an employee may not be classified as a service employee on any day in such week in which he has been assigned to work in an occupation in which tips are not customarily received." 12 N.Y.C.R.R. § 137-3.3(c).  Plaintiffs did not receive tips during the 20 hours per week that they were assigned to distribute menus and most of the 20 hours they were in the basement packaging utensils. Defendant's failure to produce any records of sales and deliveries, which would establish the frequency with which such basement Plaintiffs earned tips during those 20 hours, requires a finding that Plaintiffs were not "service employees."

Plaintiffs' jobs.  Plaintiffs were required to promptly deliver hot food to customers over a wide

geographic area, and were required to have bicycles to carry out their delivery duties assigned by

Defendant.  (See *Facts* Section 15 at 12.)  "Since the employee is entitled to a credit for expenses

for facilities that are primarily for the benefit or convenience of the employer, [P]laintiffs'

bicycles . . . and the expense of their acquisition and repair while [P]laintiffs were employed are

covered."  See Saigon Grill, 595 F. Supp.2d at 258 (internal quotation marks and citations

omitted); see also 29 C.F.R. §§ 531.3(d)(2), 531.32(c), 29 C.F.R. § 531.35; N.Y. Lab. Law §§

193, 198-b; 12 N.Y.C.R.R. § 137.2-5(b); Ting Yao Lin v. Hayashi Ya II, Inc., 2009 WL 289653,

at *3 (S.D.N.Y. Jan. 30, 2009) (Report & Recommendation *adopted by* 2009 WL 513371

(S.D.N.Y. Feb. 27, 2009).

## II.   DEFENDANT IS LIABLE FOR THREE YEARS OF FLSA WAGES AND FOR NYLL LIQUIDATED DAMAGES BECAUSE HIS VIOLATIONS WERE WILLFUL.

### A.   The Statute of Limitations Is Three Years Under the FLSA For Willful Violations and Six Years Under the NYLL.

The statute of limitations under the FLSA is two years, but may be extended to three if

the cause of action arises out of a willful violation of the Act.  29 U.S.C. § 255(a).  A willful

violation is one where "the employer either knew or showed reckless disregard for the matter of

whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S.

128, 133, 108 S.Ct. 1677, 1681 (1988).  The statute of limitations for wage payment violations

under New York law is six years, with no showing of willfulness required.  N.Y. Lab. Law §§

198(3), 663(3).

### B.   Liquidated Damages Are Available Under the NYLL For Willful Violations.

The NYLL provides for 25 percent liquidated damages where the employer's violation

was willful.  N.Y. Lab. Law §§ 198(1-a), 663(1).[18]  "[T]he standard for willfulness for purposes of the FLSA statute of limitations does not appreciably differ from the standard applicable under New York law when determining whether to award liquidated damages ...".  Moon, 248 F. Supp. 2d at 235.  "A failure to pay is willful when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages."  Doo Nam Yang v. ACBL, 427 F. Supp 327, 340 (S.D.N.Y. 2005) (citations and internal quotation marks omitted).  "Proof that the defendants acted maliciously or in bad faith is not necessary."  Id.

Because the purposes of liquidated damages differ under the FLSA and New York law, Plaintiffs may recover liquidated damages under both federal and New York law.  See Saigon Grill, 595 F. Supp.2d at 262; Do Yea Kim v. 167 Nail Plaza, No. 05 CV 8560, 2008 WL 2676598, at *3 (S.D.N.Y. July 7, 2008); see also Cao, 2010 WL 4159391, at *5; Maliza v. 2001 Mar-OS Fashion, Inc., No. 07 CV. 463, 2010 WL 502955, at *1 n.4 (E.D.N.Y. Feb. 10, 2010).

## C.    Defendant's FLSA and NYLL Violations Were Willful.

Defendant's conduct here plainly reflects willfulness.  Defendant has acknowledged he was well aware of the minimum wage and overtime laws.  Defendant did not prove, however, that he posted a minimum wage notice, kept accurate payroll records, paid the minimum wage, or overtime, or spread of hours, until after this lawsuit was filed.  (See *Facts* Sections 7, 11, 13, 14 at 6-12.)  Defendant did nothing to determine his legal obligations and such inaction demonstrates "reckless disregard" tantamount to willfulness.  See Herman v. RSR Sec. Servs., Ltd., 172 F.3d 132, 141-42 (2d Cir. 1999); Saigon Grill, 595 F. Supp. at 258-59; Breen v.

---

[18] As of November 2009, these provisions were changed to provide for 25% liquidated damages, "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law §§ 198(1-a), 663(1).  As to the period before September 21, 2009, Defendant did not so prove.

Concrete by Wagner, Inc., No. 98 C 3611, 1999 WL 1016267, at *13 (N.D. Ill. Nov. 3, 1999) (defendants "never investigated" . . . the "basic content and requirements of the FLSA").

Because Defendant's conduct was willful, he is liable for three years of wages under the FLSA and liquidated damages under NYLL.

## III.    DEFENDANT IS LIABLE FOR FLSA LIQUIDATED DAMAGES.

Liquidated damages of an amount equal amount to unpaid wages under the FLSA are not a penalty, they are compensation for the delay in receiving wages.  29 U.S.C. § 216(b); Saigon Grill, 595 F. Supp.2d at 261.  Defendant could have avoided liquidated damages if he had demonstrated good faith and reasonable grounds for believing that his conduct did not violate the FLSA.  29 U.S.C. § 260.  "The burden, under 29 U.S.C. § 260, is a difficult one to meet . . . and double damages are the norm, single damages the exception."  S. New Eng. Telecommc'ns Corp., 121 F.3d at 71 (citations and internal quotation marks omitted); see also Brock v. Wilamowsky, 833 F.2d 11, 20 (2d Cir. 1987) ("The Act does not authorize the court to decline to award liquidated damages, in whole or in part, unless the employer has established its good-faith, reasonable-basis defense.").

"To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them."  RSR Sec. Servs., 172 F.3d at 142 (emphasis added); see also Wilamowsky, 833 F.2d at 19; Cao 2010 WL 4159391, at *5.  "Ignorance of FLSA requirements is insufficient to establish good faith."  Tlacoapa v. Carregal, 386 F. Supp.2d 362, 368 (S.D.N.Y. 2005); see also RSR Sec. Servs., 172 F.2d at 142 (good faith defense not satisfied "where the employer has knowledge of his pay practices but is ignorant of the requirements of the FLSA"); Saigon Grill, 595 F. Supp.2d at 261.

Here, Defendant presented no evidence that he made any effort to ascertain the requirements of the FLSA until after the lawsuit was filed.  Since Defendant's actions and inactions are inconsistent with a finding of good faith, Plaintiffs are entitled to liquidated damages.

## IV.   DEFENDANT IS LIABLE FOR PREJUDGMENT INTEREST AND ATTORNEYS' FEES.

On any award of damages under NYLL, Defendant is liable for prejudgment interest at a statutory rate of 9 percent.  See N.Y. C.P.L.R. §§ 5001, 5004; see also Cao, 2010 WL 4159391, at *6; ACBL Corp., 427 F. Supp.2d at 342.  This prejudgment interest may be awarded in addition to any liquidated damages.  See Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 265 (2d Cir. 1999); Saigon Grill, 595 F. Supp.2d at 262.

Defendant is also liable under the FLSA and NYLL for reasonable attorneys' fees.  29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1), 663(1).

## V.   DEFENDANT IS INDIVIDUALLY LIABLE.

Under the FLSA, an individual can be held liable as an "employer" if he acted "directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The NYLL similarly allows for individual liability.[19]  See Saigon Grill, 595 F.Supp.2d at 264; Moon, 248 F. Supp.2d at 237.  "[T]he overarching concern is whether the alleged employer possessed the power to control the workers in ... question, with any eye to the 'economic reality' presented by the facts of each case."  RSR Sec. Servs., 172 F.3d at 139 (quoting Goldberg v. Whitaker

---

[19] The definition of "employer" under the FLSA and NYLL is broadly construed. See RSR Sec. Servs., 172 F.3d at 139.  See also Ansournana v. Gristede's Operating Corp., 255 F. Supp.2d 184, 192 (S.D.N.Y. 2003); Jiao v. Chen, No. 03 Civ. 0165, 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007) ("[C]ourts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA.").  See also ACBL, 427 F. Supp.2d at 342 n.25 (economic reality test determines whether an individual defendant is jointly liable as an employer under both federal and state law).

House Coop., 366 U.S. 23, 33 (1961) (internal citation omitted)); Zheng v. Liberty Apparel Co., 355 F.3d 61, 71-72 (2d Cir. 2003) (listing relevant factors).

      In this case Defendant owned a 50% share of Home on 8th and worked at the restaurant full-time.  He oversaw operations, collected receipts, and distributed wages.

## **CONCLUSION**

      The authorities cited above in conjunction with the evidence offered at trial demonstrate that Plaintiffs are entitled to judgment on Counts 1 through 7 of the Complaint and to such other relief as the Court deems just and proper.  Plaintiffs will move for reasonable attorneys' fees and costs at the appropriate time.  Plaintiffs respectfully ask the Court to schedule a joint inquest on damages for Defendants Home on 8th and Henry Li.  In connection with the inquest on damages previously ordered with respect to Home on 8th, Plaintiffs have already submitted detailed damage calculations which Plaintiffs are willing to revise if necessary.

Dated: New York, NY
      October 31, 2013

                          Respectfully submitted,
                          _____/s/_____
                          Gillian Costello (GC 0151)
                          SPIVAK LIPTON LLP
                          1700 Broadway, 21st Floor
                          New York, NY 10019
                          Tel:  (212) 765-2100
                          Fax:  (212) 765-8954
                          *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2013, I caused to be served a true copy via the Court's ECF filing system of Plaintiffs' Post-Trial Memorandum of Law to the following:

> Gregg H. Kanter, Esq.
> Gregg H. Kanter Law Office LLC
> 2222 Pine Street
> Philadelphia, PA 19103
> (917) 494-5317
> greggkanter@yahoo.com

Dated: October 31, 2013
     New York, NY            _____/s/_____
                                      Gillian Costello