UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
JIAN F. HE *et al.*,                          :
                                              :
                        Plaintiffs,           :          09 CIV 5630 (GBD)
                                              :
            v.                                :
                                              :
HOME ON 8TH, *et al.*,                        :
                                              :
                        Defendants.           :
-----------------------------------------------------x

## DEFENDANT HENRY LI'S POSTTRIAL MEMORANDUM

Gregg H. Kanter
Gregg H. Kanter Law Office LLC
2222 Pine Street
Philadelphia, PA 19103
(917) 494-5317
greggkanter@yahoo.com
Attorney for defendant Henry Li

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 2

The Tip Credit .................................................................................................. 2

    Oral Notice ................................................................................................ 2

    Posted Notices ........................................................................................... 2

    "Non-Tipped" Duties ................................................................................ 3

Plaintiffs' Wages ............................................................................................. 4

Plaintiffs' Hours .............................................................................................. 4

    Start Time on Weekdays when Not Distributing Menus ......................... 4

    Meal Breaks ............................................................................................. 5

    He's Weekday Hours once Menu Distribution Ceased ........................... 6

    He's Hours After September 20, 2009 ..................................................... 6

The Days Plaintiffs Did Not Work .................................................................. 7

Calculation of Plaintiffs' Hourly Wage .......................................................... 8

Plaintiffs' Bicycle Expenses ........................................................................... 9

Plaintiff Lai Li's Claims ................................................................................. 9

Plaintiffs' Credibility ...................................................................................... 10

Henry Li's Good Faith ..................................................................................... 11

ARGUMENT .................................................................................................... 11

I.       Home on 8th Is Entitled to a Tip Credit .......................................... 11

    A.      The FLSA's Tip Credit ................................................................ 12

    B.      New York's Tip Allowance ......................................................... 15

II.     Violation of the Minimum Wage Law ............................................. 15

    A.      Plaintiffs' Hours and Wages ....................................................... 15

    B.      The FLSA's Minimum Wage ...................................................... 16

    C.      New York's Minimum Wage ....................................................... 17

III.    The Minimum Wage Law Violation Was Not Willful ...................... 19

IV.    Li Acted in Good Faith and Should Not Pay Liquidated Damages ..... 20

V.     Failure To Pay Spread of Hours ....................................................... 21

VI.    Plaintiff Li's Claims Should Be Dismissed ..................................... 21

CONCLUSION ................................................................................................. 22

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Almeida v. Aguinaga*,
    500 F. Supp. 2d 366 (S.D.N.Y. 2007) ........................................................................ 21

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946)..................................................................................... 15, 21

*Auer v. Robbins*,
    519 U.S. 452 (1997) ........................................................................................ 15

*Barfield v. New York City Health & Hosps. Corp.*,
    537 F.3d 132 (2d Cir. 2008) ............................................................................ 20

*Cao v. Wu Liang Ye Lexington Rest.*,
    08 Civ. 3725, 2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010) .................................... 16

*Chan v. Triple 8 Palace, Inc.*,
    03 Civ. 6048, 2006 WL 851749 (S.D.N.Y. Mar. 30, 2006) ...................... 12, 15, 21

*Chan v. Sung Yue Tung Corp.*,
    03 Civ. 6048, 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007) ........................................ 14

*Curtis v. Phillips, L.M.S.W.*,
    05-CV-0698, 2009 WL 36856 (W.D.N.Y. Jan. 6, 2009) .......................................... 21

*Davis v. B & S, Inc.*,
    38 F. Supp. 2d 707 (N.D. Ind. 1998) .......................................................... 13

*Dominguez v. Quigley's Irish Pub, Inc.*,
    790 F. Supp. 2d 803 (N.D. Ill. 2011) .......................................................... 13

*Dong v. CCW Fashion Inc.*,
    06 Civ. 4973, slip op.(S.D.N.Y. Feb. 19, 2009) ....................................... 21

*Dorsey v. TGT Consulting, LLC*,
    888 F. Supp. 2d 670 (D. Md. 2012) .............................................................. 12

*Fast v. Applebee's Int'l, Inc.*,
    638 F.3d 872 (7th Cir. 2011),
    *cert. denied*, 132 S. Ct. 1094 (2012) ........................................................ 15, 16

*Flores v. Anjost Corp.*,
    284 F.R.D. 112 (S.D.N.Y. 2012) .............................................................. 21

*Garcia v. Palomino, Inc.*,
    738 F. Supp. 2d 1171 (D. Kan. 2010) ........................................................ 12, 13

*Hardwick v. Complete Skycap Serv., Inc.*,
    04-cv-88, slip op. (D. Ariz. June 17, 2005),
    *aff'd*, 247 F. App'x 42 (9th Cir. 2007) ...................................................... 12

*Herman v. RSR Sec. Servs. Ltd.*,
    172 F.3d 132 (2d Cir. 1999) ..................................................................... 19, 20

## TABLE OF AUTHORITIES CONTINUED

*Ke v. Saigon Grill, Inc.*,
   595 F. Supp. 2d 240 (S.D.N.Y. 2008) ......................................................... 15, 19

*Kilgore v. Outback Steakhouse*,
   160 F.3d 294 (6th Cir. 1998) ..................................................................... 12

*Lanzetta v. Florio's Enters, Inc.*,
   763 F. Supp. 2d 625 (S.D.N.Y. 2011) ...................................................... 16, 22

*Lin v. Benihana Nat'l Corp.*,
   275 F.R.D. 165 (S.D.N.Y. 2011) .............................................................. 11

*Lin v. Benihana Nat'l Corp.*,
   755 F. Supp. 2d 504 (S.D.N.Y. 2010) ...................................................... 16, 18

*Lu v. Jing Fong Rest., Inc.*,
   503 F. Supp. 2d 706 (S.D.N.Y. 2007) ...................................................... 14

*Maldonado v. La Nueva Rampa, Inc.*,
   10 Civ. 8195, 2012 WL 1669341 (S.D.N.Y. May 14, 2012) ...................... 16

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988) ................................................................................. 19

*Mendez v. Radec Corp.*,
   232 F.R.D. 78 (W.D.N.Y. 2005) .............................................................. 16

*Pellon v. Business Representation Int'l, Inc.*,
   528 F. Supp. 2d 1306 (S.D. Fla. 2007),
   *aff'd*, 291 F. App'x 310 (11th Cir. 2008) ................................................. 13, 15

*Pereira v. J. Sisters Hair Care Prods., Inc.*,
   08 Civ. 4537, 2010 WL 2194807 (S.D.N.Y. June 1, 2010) ...................... 16

*Raber v. Merck, Sharp & Dohme Corp.*,
   11-cv-4783, 2013 WL 2321417 (S.D.N.Y. May 29, 2013) ........................ 21

*Reich v. Southern New England Telecomms. Corp.*,
   121 F.3d 58 (2d Cir. 1997) ...................................................................... 15, 16, 20

*Reshetnikov v. Republic Nat'l Bank of N.Y.*,
   233 F.R.D. 644 (S.D.N.Y. 2005) ............................................................. 21

*Rudy v. Consolidated Rest. Cos.*,
   08-CV-0904, 2010 WL 3565418 (N.D. Tex. Aug. 18, 2010) .................... 12

*Thomas v. J.R. Eight, Inc.*,
   01-1067-CV, slip. op. (S.D. Fla. Aug. 30, 2002) ..................................... 12, 13

*Torres v. Cache Cache, Ltd.*,
   12-cv-00150, 2013 WL 1685784 (D. Colo. Apr. 18, 2013) ...................... 13

*Vancamper v. Rental World, Inc.*,
   10-cv-209, 2011 WL 1230805 (M.D. Fla. Mar. 31, 2011) ........................ 12

## TABLE OF AUTHORITIES CONTINUED

*Vasquez v. Ranieri Cheese Corp.*,
   07-CV-464, 2010 WL 1223606 (E.D.N.Y. Mar. 26, 2010) ...................................... 15

*Yang v. ACBL Corp.*,
   427 F. Supp. 2d 327 (S.D.N.Y. 2005) ....................................................... 15, 19

**Statutes and Regulations**

29 U.S.C. § 203(m) ........................................................... 11, 12, 16, 19

29 U.S.C. § 206(a)(1) ...................................................................... 16

29 U.S.C. § 255(a) ......................................................................... 19

29 C.F.R. § 531.35 (2010) ................................................................. 16

29 C.F.R. § 531.38 (2010) ................................................................. 16

29 C.F.R. § 531.56(e) (2010) .............................................................. 15

29 C.F.R. § 531.59 (2010) ................................................................. 12

29 C.F.R. § 531.59 (2011) ................................................................. 12

29 C.F.R. § 531.60 (2010) ................................................................. 16

29 C.F.R. § 785.19 (2013) ................................................................. 16

12 NYCRR § 137-1.3 (2009) ................................................................. 18

12 NYCRR § 137.1-5 (2009) .............................................................. 15, 18

12 NYCRR § 137-1.7 (2009) ................................................................. 21

12 NYCRR § 137-2.5 (2009) ................................................................. 16

12 NYCRR § 137-3.4 (2009) ................................................................. 18

12 NYCRR § 137-3.5 (2009) ................................................................. 18

N.Y. LABOR LAW § 198 ...................................................................... 19

N.Y. LABOR LAW § 651 (2009) .......................................................... 11, 15, 18

N.Y. LABOR LAW § 652 (2009) .......................................................... 11, 15, 18

N.Y. LABOR LAW § 681 ...................................................................... 19

## PRELIMINARY STATEMENT

Home on 8th is entitled to the tip credit.  The evidence shows Plaintiffs were informed that tips were being treated as part of their wages.  They admit being told when hired that the monthly wage was tips and payments from Home on 8th:  $2,100 in tips and $700 in payments.  The evidence also shows minimum wages notices were posted at all times.  Li testified notices were posted and identified their locations.  Plaintiffs confirmed that papers were posted at the locations identified by Li.  This was enough to "inform" Plaintiffs of the tip credit.

The evidence shows Plaintiffs received substantially more than the minimum wage plus overtime under both the FLSA and New York law.  The minimum payment for tipped employees required by the FLSA, however, was not paid for certain periods:  He was underpaid $37.50 and, depending on the statute of limitations, Wei was underpaid $581.42 or $732.63, and Lin was underpaid $127.00 or $193.27.  The minimum cash wage required by New York law was not paid for most periods:  Wei, Lin, and He were underpaid, respectively, $9,423.70, $8,027.87, and $7,795.76.  Plaintiffs did not receive spread of hours pay, with Wei, Lin, and He underpaid, respectively, $1,930.46, $3,346.43, and $1,516.69.

The foregoing damage calculations are based on facts established by Plaintiffs' testimony on cross-examination and their stipulations, which refute their direct testimony's exaggerated claims about their hours.  As we show below, Plaintiffs' direct testimony often was incredible and is insufficient to support their inflated damage claims.

Home on 8th's violation of the FLSA was not willful.  Henry Li took affirmative steps to calculate that Plaintiffs were earning more than the minimum wage.  Li's calculations were reasonable, and Plaintiffs always received in excess of the minimum wage plus overtime.  Home on 8th's violation of the FLSA was modest -- less than $1,000 for all Plaintiffs over 34 months -- and arise from a calculation that is obscure within the statute itself.

Plaintiff Li's claims should be dismissed for failure to prosecute.  Li decided that showing up for trial was not worth his time because "his claims are not substantial."

## STATEMENT OF FACTS

### The Tip Credit

#### Oral Notice

Plaintiffs were told when hired their monthly wage would be $700 from Home on 8th and a minimum of $2,100 in tips, for a total of $2,800.[1]  Lin and He confirmed this.[2]  Lin and He were also told, when promoted to delivery head, that their monthly wage would be $1,200 from Home on 8th and a minimum of $2,100 in tips, for a total of $3,300.  *See* Tr. at 302:14-303:22.  Thus, Plaintiffs were informed that tips were being treated as part of their wage.

#### Posted Notices

Home on 8th posted federal and New York state minimum wage notices on the wall leading down to the basement from 2003 until this lawsuit, when the notices were moved to the kitchen entrance wall.[3]  Home on 8th posted updated notices, including Def. Exh. 3 (minimum wage notice) shortly before July 24, 2009.  *See* Tr. at 262:25-263:11; 267:14-268:7.

Lin and He confirmed that, before this lawsuit, papers were posted on the wall leading down to the basement.  Lin "saw a lot of paper posted here," "papers on the wall," "a lot of paper posted up," and "cigarette signs," and He admitted papers were affixed to this wall.[4]  Lin, He, and Li all identified the same wall by (1) marking the same area of Def. Exh. 2; and (2) stating this wall is shown in the first three photos of Def. Exh. 1.[5]

---

[1]    *See* Tr. at 308:16-309:2; 299:21-23; 301:12-302:10.  This is consistent with Home on 8th's practice of confirming wages before employees start to prevent later misunderstandings.  *See* Tr. at 299:24-301:8.

[2]    Lin admits (1) being told he would make $2,700 to $2,800 per month in base pay plus tips; (2) Li told him his wages would be $700 from Home on 8th and tips, with take home pay of at least $2,800; and (3) understanding his wages were tips and base pay.  *See* Tr. at 117:22-118:4; 114:20-24; 115:24-116:2; 117:6-15; 119:6-11.  Lin never complained about his tips because he received $2,100.  *See* Tr. at 118:5-119:5 (Lin); 304:1-16.  Plaintiff He admits (1) being told "what the salary was, what the minimum wage was" and that he would earn $700 per month plus tips; and (2) speaking with Li on his first day.  Tr. at 190:19-25; *see also* 190:3-8; 191:8-10; 192:5-25.

[3]    *See* Tr. at 234:6-235:16; 264:22-266:14; 267:1-13; 235:6-236:3 (Li marks Def. Exh. 2 with black "X" colored green for location of minimum wage notice after lawsuit); 237:1-6 (fourth photo of Def. Exh. 1 depicts location on Def. Exh. 2 marked with black "X" and highlighted green); 263:10-264:6 (Def. Exh. 3 was posted after this lawsuit on wall depicted by fourth photo of Def. Exh. 1).

[4]    Tr. at 164:13; 157:23; 167:6-7; 163:24; *see also* 160:2-12 (Lin); 200:13-18; 201:20-22 (He).

[5]    *See* Tr. at 160:2-12 (Lin makes red mark on Def. Exh. 2 for location of posted papers); 163:22-165:1 (Lin makes blue mark on Def. Exh. 2 for location of cigarette sign in same place as his red mark); 200:18-201:22 (He makes yellow mark on Def. Exh. 2 for location of posted papers before lawsuit in same area as Lin's red and blue marks); 193:8-194:4; 197:23-198:7 (He: first three photos of Def. Exh. 1 depict wall with posted papers before lawsuit); 234:18-24; 236:10-25 (minimum wage notices were posted before lawsuit in area on Def. Exh. 2 with blue mark, highlighted mark, and red mark, and on wall depicted in first three photos of Def. Exh. 1).

2

He confirmed that, after this lawsuit, papers were affixed to the kitchen entrance wall,[6] and conceded being aware of the minimum wage laws and Home on 8th's intention to take a tip credit by June 19, 2009 when the Complaint was filed.[7]

Plaintiffs' collective testimony about not "observ[ing]" minimum wage notices has no evidentiary value because Plaintiffs cannot read English and, therefore, are not competent to testify about the content of the papers they concede were posted.  *See* Pls. Decls. ¶¶ 1, 4.[8]

Plaintiffs never told Home on 8th they were unable to read the posted notices, nor did they ever ask for a translation of the notices.  *See* Tr. at 167:15-25; 201:23-202:1; Pls. Decl. ¶ 1.

### "Non-Tipped" Duties

Plaintiffs' argument that more than 20% of their hours were for the "non-tipped" duties of distributing menus and making utensil packages, *see* Tr. at 18:18-19:21; 348:6-9; is contrary to the evidence that (1) Plaintiffs earned tips while doing these duties since tips received by others were shared with Plaintiffs;[9] (2) these duties were related to, necessary for, and promoted their tipped duty;[10] and (3) the hours on these duties did not exceed 20% every week:  Plaintiffs did not distribute menus many weeks, *see* Pls. Decls. ¶ 6; Tr. at 145:11-13; and Plaintiffs spent only 12 minutes a day preparing utensil packages given (a) 215 packages were used per day;[11] (b) it took only "a few seconds" to prepare one package;[12] (c) one person can prepare 215 packages in 36 minutes if each takes 10 seconds; and (d) three workers shared this duty.

---

Plaintiffs passed the wall leading to the basement daily.  *See* Tr. at 160:22-25 (Lin).

[6]      *See* Tr. at 198:4-7; 207:17-208:15 (He).

[7]      *See* Tr. at 347:6-348:9.  He also conceded notice that Home on 8th was taking a tip credit by September, 2009.  *See* Tr. at 334:17-24.

[8]      "Pls. Decls." refers to the three Declarations by Lin, Wei, and He.

[9]      *See* Tr. at 93:2-7; 95:14-20 (Wei); 146:10-20 (Lin).

[10]     *See* Tr. at 89:22-90:2 (Wei); 146:21-147:13 (Lin); 277:11-15; 287:8-14.

[11]     *See* Tr. at 291:24-292:1 (215 packages used daily); *cf.* 393:16-20 (65 take-out and 75 delivery orders per day); 121:1-5 (Lin: 75 delivery orders per day); 394:24-395:1; 290:22-24 (65 take-out orders per day); 121:1-5; 290:3-8 (Lin: $20 average delivery order); 395:21-396:1 ($8 to $10 average take-out order); Stip. Exh. 1 (entrees averaged $10); 186:1-4; 287:17-288:14; 290:3-8; 290:25-291:3 (one package per entree).

[12]     Tr. at 156:2 (Lin); *see also* 185:4-6 (He: "[a]bout ten seconds"); 292:6-8 (Li).

**Plaintiffs' Wages**

Plaintiffs' wages were tips, payments from Home on 8th, and paid withholdings.

Plaintiffs' testimony shows their tips averaged $81 to $90 a day. Tips of $90 is established by the $1,500 and $1,600 average daily volume of Home on 8th's delivery business,[13] and the 15% to 20% average tip percentage,[14] which yields $271 in tips ($1,550 x 17.5%) split three ways.[15] Lin also admitted earning $2,100 per month in tips, which equates to $81 per day.[16] Plaintiffs retained all their tips. *See* Stip. Fact ¶ 26.

The uncontroverted evidence shows that Home on 8th paid withholdings in the amounts specified by Lin's and He's W-2s, *i.e.*, $21.13 per week in 2008 and $36.84 per week in 2009 for Lin and $16.58 per week in 2008 and $54.11 per week in 2009 for He.[17]

The parties stipulated as to all other wage payments, except for a trivial dispute about whether He began receiving $1,200 per month on March 16, 2009 or April 1, 2009.[18]

**Plaintiffs' Hours**

There are four disputes about Plaintiffs' hours: (1) the start time on weekdays when not distributing menus; (2) whether the meals breaks are compensable; (3) He's weekday hours once menu distribution ceased; and (4) the accuracy of He's reported hours on Stip. Exh. 6.

### Start Time on Weekdays when Not Distributing Menus

The parties agree that on weekdays before February 16, 2009, two delivery workers started at 10:30 a.m. to distribute menus. *See* Tr. at 276:17-19. The parties dispute when the

---

[13]    *See* Tr. at 121:1-5 (Lin: 75 delivery orders per day with $20 average order); 84:10-13 (Wei: delivery business averaged $1,600 per day); 305:2-12; 394:19-20; 396:23-25 (Li: delivery business averaged $1,500 to $1,600 per day).

[14]    *See* Tr. at 304:18-25 (Li: average tip was 15 to 20% of order); 81:16-22; 82:13-19; 83:5-11 (Wei: $1 tip on a $20 order is "bad," a $2 tip is "[o]n the low end," and $3 or $4 tip is "average").

[15]    The delivery workers split their tips evenly. *See* Stip. Fact ¶ 26; Tr. at 146:14-16.

[16]    81 is 2,100 divided by 26.07, which is sixth sevenths of the days in a month (365 / 12 x (6/7)).

[17]    *See* Stip. Exh. 3; Tr. at 231:24-232:22. Lin's withholdings of $1,098.62 in 2008 and $247.34 in 2009 are $21.13 per week (1098.62 / 52) and $36.84 per week (247.34 / (47 days / 7)). He's withholdings of $596.94 in 2008 and $2,813.81 in 2009 are $16.58 per week (596.94 / (252 days / 7)) and $54.11 per week (2813.81 / 52).

[18]    *See* Stip. Fact ¶¶ 37, 46, 48-49, 54. He claims receiving $1,200 starting April 1, 2009, *see* He Decl. ¶ 8; whereas Li testified this happened within a month of Lin's firing on February 16, 2009. *See* Tr. at 404:22-405:16.

third worker started:  Plaintiffs say it was 10:30 a.m., *see* Pls. Decls. ¶ 6; and Li says the third worker was "scheduled to work at 11:00 because there's nothing to do until 11:00 o'clock."[19]

Li's account is more credible and supported by Plaintiffs' testimony.  Wei corroborated that Home on 8th never instructed the third worker to arrive before 11:00 a.m.,[20] and Lin corroborated that the third worker was not needed for deliveries before orders were cooked at 11:00 a.m.[21]  Plaintiffs' claim that the third worker prepared utensil packages from 10:30 a.m. to 11:00 is incredible given Plaintiffs' testimony of ample time during the day to prepare packages,[22] and the evidence that one person could prepare a day's supply in 36 minutes.

**Meal Breaks**

The parties agree Plaintiffs had lunch and dinner breaks, *see* Stip. Fact ¶¶ 32-33; but dispute whether they are compensable.  Plaintiffs claim they were available to make deliveries during breaks, and a break was sometimes interrupted because they "had to make a delivery." *See* Pls. Decls. ¶ 10; Tr. at 217:7-16.  Li testified Plaintiffs did not work, and were not required to work, on their breaks during which Plaintiffs ate for 15 minutes and took off for 30 minutes.[23]

Again, Li's account is more credible and supported by Plaintiffs' testimony.  Wei corroborated Li's testimony that Plaintiffs were never told to stop eating to make a delivery,[24] and He admitted Plaintiffs always had enough time to eat.[25]  Plaintiffs also failed to dispute Li's testimony that (1) Li or his brother made deliveries when the delivery workers were eating at the

---

[19]     Tr. at 276:21-22; *see also* 293:16-22 ("I did not schedule them to do utensil packages at 10:30 to 11:00.  To me, it wouldn't make sense because I know for certain they have enough time during down time, which is in the afternoon, between 3:30 and 6:00 o'clock or even nighttime when they all come back together, all three of them, I know that they do do that at that time, they do spend time doing that. "); 276:19-20; 277:16-278:2; 292:22-293:24.

        While Li sometimes saw the third delivery worker before 11:00 a.m., that person was reading the paper or eating breakfast and never doing work.  *See* Tr. at 277:16-23; 293:2-3.

[20]     *See* Tr. at 87:8-11 (Wei); 276:23-277:1; 293:23.

[21]     *See* Tr. at 147:21-149:15 (Lin); 278:3-17.

[22]     *See* Pls. Decls. ¶ 6 ("I also packaged utensils whenever I was not making deliveries.").

[23]     *See* Tr. at 279:14-17; 280:17-19; 287:3-6 ("20 to 30 minutes" for lunch); 281:15-20 ("They generally took 15 minutes to eat [lunch], they eat rather fast, but I never told them, you only have 15 minutes, nor I would have only told them, you have half an hour.  There's times I see them eating for half an hour, but that's not all the time, but I never had a problem if they ate half an hour."); 286:13-14 ("half an hour, 20 minutes to 30 minutes, to eat their dinner").

[24]     *See* Tr. at 279:14-280:6; 280:17-23; 282:5-10; 403:12-16; 77:1-19 (Wei).

[25]     *See* Tr. at 280:1-6; 286:2-11; 217:12-19 (He).

same time, *see* Tr. at 281:23-282:14; (2) Li left to Plaintiffs' discretion the duration of their meal breaks, *see* Tr. at 286:5-11; 281:12-18; and (3) Plaintiffs were to free to, and did in fact, leave during meal breaks.  *See* Tr. at 281:4-11.

### He's Weekday Hours once Menu Distribution Ceased

It is undisputed that Home on 8th stopped distributing menus in April, 2009.[26]  After that, the parties dispute He's start time on weekdays, and whether He was off from 3:00 p.m. to 6:00 p.m.  He contends he started at 10:30 a.m. and worked every weekday afternoon, *see* He Decl. ¶ 6; whereas Li contends the start time rotated from 11:00 a.m. to 12:00 p.m., *see* Tr. at 294:23-295:16; and He was off from 3:00 p.m. to 6:00 p.m. when starting at 11:00 a.m.  *See* Tr. at 295:17-296:4.  Li's testimony is more credible, and He corroborated it:

> Q:   How did your schedule change when Home On 8th told you to stop distributing menus?
>
> A:   Two people would rotate and one would come in at 11:00, the other one would come in at 12:00 o'clock.
>
> *       *                              *
>
> Q:   And the person that came in at 11:00, between 3:30 and 6:00 they didn't work, correct?
>
> A:   Correct.[27]

He's claim also makes no sense:  It suggests (1) two delivery workers were needed a half-hour before orders were cooked at 11:00 a.m., and (2) work done by one person -- deliveries from 11:00 a.m. to 12:00 p.m. and from 3:30 p.m. to 6:00 p.m. -- was now performed by two workers.

### He's Hours After September 20, 2009

After September 20, 2009, He was paid by the hour based on what he reported.  *Compare* Stip. Exh. 6 ("Total Hours" column); *with* Stip. Exh. 4 (checks).  But He reported inflated hours:

- When He reported a break between 3:00 p.m. and 3:30 p.m. in the "Start Lunch" and "End Lunch" columns, He treated those breaks as hours worked in the "Total Hours" column, *see* Stip. Exh. 6 at 2 (D0793), 3 (D0792), 4 (D0791), 5 (D0790);

---

[26]         *See* Tr. at 225:13-14 (He); *cf*. Stip. Fact ¶ 45.

[27]         Tr. at 204:19-22; 205:5-7; *see also* 203:21-25; 222:17-25; 225:13-226:9.

- He had a lunch break every day, *see* Tr. at 217:4-6; Stip. Fact ¶ 33; but He failed to report all breaks in the "Total Hours," "Start Lunch," and "End Lunch" columns, *see* Stip. Exh. 6 at 1 (D0794), 2 (D0793), 4 (D0791);

- He admits having dinner when he worked in the evening, but He did not report that break or deduct it from the "Total Hours" column, *see* Stip. Exh. 6; and

- He made "computational" errors in the "Total Hours" column.[28]

He has no wage claim for this period:  He concedes being was paid by the hour, being paid spread of hours, and Home on 8th's entitlement to the tip credit.  He was overpaid on account of his inflated hours.  Accordingly, this time period will not be discussed further.

## The Days Plaintiffs Did Not Work

The parties dispute whether Plaintiffs missed any days while employed, and the dates of Lin's employment before his leave of absence in October, 2007.

Plaintiffs' claim of working every scheduled day during their employment[29] is contradicted by their testimony and their stipulation of missing work days.  Plaintiffs did not work six days per year because, as they stipulated, Home on 8th was closed for some holidays, and, as Lin admitted, one worker had a day off on other holidays.[30]  Plaintiffs' testimony also shows Lin and He missed, respectively, 13 and three days for sickness or personal reasons.[31]  All told, Lin, Wei, and He missed, respectively, 24, six, and 11 days.[32]

---

[28]   *E.g.*, Stip. Exh. 6 at 3 (D0792) (taking credit for starting work at 12:00 p.m. when "12:17" is recorded), 4 (D0791) (taking credit for starting work at 12:00 p.m. when "12:20" is recorded).

[29]   *See* Pls. Decls. ¶ 7.  This claim of never missing a day is consistent with Plaintiffs' Motion for a Default Judgment which seeks monies for every single day during Plaintiffs' claimed employment.  *See* Declaration of Yvonne Brown, filed July 14, 2011 [Docket No. 52] ("Brown Decl."), ¶¶ 32-62 & Exh. 9.

[30]   Home on 8th "was closed for certain holidays, including Christmas, Thanksgiving and July 4th," Stip. Fact ¶ 11, and sometimes for Memorial Day and Labor Day.  *See* Tr. at 269:10-270:2.  One of the three delivery workers was off on Martin Luther King Day, President's Day, Good Friday, Columbus Day, and New Year's Day, and on those Memorial and Labor Days when Home on 8th did not close.  *See* Tr. at 270:16-271:4; 172:13-173:3 (Lin).

[31]   Lin admitted missing four to eight days: one or two for sickness, one or two to see a doctor, one or two for emergencies, and one or two days to attend banquets.  *See* Tr. at 176:7-9; 176:10-15; 176:16-23; 177:5-20.  Plaintiff He confirmed Li's testimony that Lin missed two days each week in December, 2008 and one or two days in January, 2009.  *See* Tr. at 272:20-274:4; 274:18-25; 203:13-15 (He).  Plaintiff He admitted missing two to three days: one or two for sickness and one when a friend got married.  *See* Tr. at 202:12-22 (He); *see also* 275:16-276:4.

[32]   Lin missed 11 days from March 8, 2007 to February 16, 2009 on account of holidays (Lin was on a leave of absence during Thanksgiving in 2007), and another 13 days for sickness or personal reasons.  Wei missed six days on account of holidays from March 1, 2007 to March 20, 2008.  Plaintiff He missed eight days from February 8, 2008 to September 20, 2009 on account of holidays (He was on a leave of absence for Labor Day and Columbus Day in 2008) and another 3 days for sickness or personal reasons.

Lin's claim of starting work on March 1, 2007, *see* Lin Decl. ¶ 1; is refuted by Wei's testimony that Lin started later, *see* Tr. at 66:13-16; and Lin's concessions that he did not know when in March he started and agreed it could have been in the second week of March.  *See* Tr. at 171:24-172:6.  Lin's claim that his leave of absence began on October 22, 2007, s*ee* Lin Decl. ¶ 2; is refuted by Lin's admissions that he travelled to China on October 20, 2007 and that his last work day was six or seven days earlier.  *See* Tr. at 173:18-175:5.

**Calculation of Plaintiffs' Hourly Wage**

Plaintiffs' hourly wage should be computed based on the evidence that (1) Plaintiffs started at 11:00 a.m. on weekdays when not distributing menus; (2) He's start time rotated from 11:00 a.m. to 12:00 p.m. as of April 1, 2009, with He off from 3:00 p.m. to 6:00 p.m. when starting at 11:00 a.m.; (3) Plaintiffs had 30-minute non-compensable meal breaks; (4) Lin, Wei, and He missed, respectively 24, six, and 11 days, warranting a pro rata reduction in their hours;[33] (5) Plaintiffs' tips were $2,100 per month; (6) He began receiving $1,200 a month on March 16, 2009; and (7) Lin's first day was March 8, 2007 and his leave of absence began on October 14, 2007.

---

[33]     Plaintiffs worked 52.5 hours on weekdays when distributing menus (10:30 a.m. start time, two 30-minute meal breaks, and 10:00 p.m. end time) and 50 hours when not (11:00 a.m. start time, two 30-minute meal breaks, and 10:00 p.m. end time).  On weekends, Plaintiffs worked either 7 hours (Saturday and Sunday from 6:00 p.m. to 10:00 p.m. with one 30-minute meal break) or 9 hours (one Saturday or one Sunday from 12:00 p.m. to 10:00 p.m. with two 30-minute meal breaks).  Accordingly, Plaintiffs worked 59.5 or 61.5 hours per week when distributing menus, and 57 or 59 hours when not.

When menu distribution ceased on April 1, 2009, He worked 45 hours on weekdays when starting at 12:00 p.m. (12:00 p.m. start time, two 30-minute meal breaks, and 10:00 p.m. end time) and 37.5 hours when starting at 11:00 a.m. (11:00 a.m. start time, break from 3:00 p.m. to 6:00 p.m., one 30-minute meal break, and 10:00 p.m. end time).  Since He worked either 7 or 9 hours on weekends, He worked 52 or 54 hours per week when starting at 12:00 p.m., and 44.5 or 46.5 hours when starting at 11:00 a.m.

Lin's 24 missed days are 4.19% of his work days from March 8, 2007 to February 16, 2009 excluding his leave of absence from October 14, 2007 to November 25, 2007 (24 / 668  x 6/7).  Reducing his hours by 4.19%, Lin worked 54.6 (57 x .9581) or 58.9 (61.5 x .9581) hours per week before October 13, 2007, and 58.9 hours after November 26, 2007.  Wei's six missed days are 1.82% of his work days from March 1, 2007 to March 20, 2008 (6 / 385 x (6/7)).  Reducing his hours by 1.82%, Wei worked 56.0 (57 x .9818) or 60.4 hours per week (61.5 x .9818).  He's 11 missed days are 2.49% of his work days from February 6, 2008 to September 20, 2009 excluding his leave of absence from September 1, 2008 to November 16, 2008 (11 / 515 x (6/7)).  Reducing his hours by 2.49%, He worked 55.6 (57 x .9751) or 60.0 (61.5 x .9751) hours per week before March 31, 2009 and 43.4 (44.5 x .9751) or 52.7 (54 x .9751) hours after April 1, 2009.

|  | Period | Hours | Weekly Wages | Hourly Wage | Home on 8th Weekly Pay | Home on 8th Pay per Hour |
|---|---|---|---|---|---|---|
| Lin | 03.08.07 - 10.13.07 | 54.6 - 58.9 | 646.15 | 10.97 - 11.83 | 161.54 | 2.74 - 2.96 |
|  | 11.26.07 - 12.31.07 | 58.9 | 761.53 | 12.93 | 276.92 | 4.70 |
|  | 01.01.08 - 12.31.08 | 58.9 | 782.66 | 13.29 | 298.05 | 5.06 |
|  | 01.01.09 - 02.16.09 | 58.9 | 798.38 | 13.55 | 313.76 | 5.33 |
| Wei He | 03.01.07 - 03.20.08 | 56.0 - 60.4 | 646.15 | 10.70 - 11.54 | 161.54 | 2.67 - 2.88 |
|  | 02.06.08 - 03.31.08 | 55.6 - 60.0 | 662.73 | 11.04 - 11.92 | 178.12 | 2.97 - 3.20 |
|  | 04.01.08 - 12.31.08 | 55.6 - 60.0 | 674.27 | 11.24 - 12.13 | 189.65 | 3.16 - 3.41 |
|  | 01.01.09 - 03.15.09 | 55.6 - 60.0 | 711.80 | 11.86 - 12.80 | 227.19 | 3.79 - 4.09 |
|  | 03.16.09 - 04.31.09 | 43.4 - 52.7 | 815.65 | 15.48 - 18.79 | 331.03 | 6.28 - 7.63 |
|  | 05.01.09 - 09.20.09 | 43.4 - 52.7 | 769.49 | 14.60 - 17.73 | 284.88 | 5.41 - 6.56 |

**Plaintiffs' Bicycle Expenses**

The facts bearing on Plaintiffs' claim for bicycle expenses are not disputed:  Home on 8th expected Plaintiffs would use bicycles but never instructed, directed, or requested them to do so, and when hiring Plaintiffs did not even ask if they had bicycles.  *See* Stip. Fact ¶¶ 28-31.

The amount of expenses is disputed.  Simply put, Plaintiffs exaggerated.  Their collective claim of buying bicycles before starting at Home on 8th, *see* Pls. Decls. ¶ 11; is contradicted by Wei's testimony of buying his bicycle before even having a job offer, *see* Tr. at 68:6-11; 69:4-6; and Lin's admission of owning a different bicycle just days before starting at Home on 8th.  *See* Tr. at 168:14-169:6.  Lin's claim of spending $300 for each of three replacement bicycles, *see* Lin Decl. ¶ 11, is contradicted by his admitting only one cost $300, *see* Tr. at 169:23-170:16, and even that is suspect given Lin's concession that a $100 bicycle was adequate.  *See* Tr. at 98:12-14; 169:7-9.  Wei's claim for $40 to $50 a month for repairs is grossly inflated given Lin and He spent only $5 and $15 per month.  *See* Tr. at 98:7-11; Pls. Decls. ¶ 11.  Finally, Plaintiffs engage in double counting by seeking to recover all the monies they spent to buy bicycles, both before and during their employment, without taking into account that they owned bicycles when their employment ended, *e.g.*, Lin wants money for four bicycles, one bought before and three bought while working at Home on 8th, *see* Brown Decl. ¶ 71, despite his owning one when fired.

**Plaintiff Lai Li's Claims**

Li decided to miss trial because "his claims are not substantial."  Tr. at 26:11-12.  Li was listed as Defendant's trial witness, but Li waited until the morning of trial to say he would not appear, to the prejudice of Defendant who, in reliance on prior representations, did not issue a

trial subpoena.[34]  Li's "sandbagging" prevented Defendant from showing, with Li's own testimony, that Li was informed of the minimum wage laws and Home on 8th's intention to take the tip credit.  The Court reserved decision on Defendant's motion to dismiss Li's claims.  *See* Tr. at 25:15-16; 26:23-27:11; 228:20-229:3.

**Plaintiffs' Credibility**

Several disputes about Plaintiffs' hours turn on credibility.  As shown above, Plaintiffs' testimony was incredible on some issues.  Other examples of Plaintiffs' incredible testimony are:

- Lin's testimony that his tips averaged $60, *see* Lin Decl. ¶ 12, is not credible because Lin admitted, along with He and Wei, that their average tips were $70 to $80.[35]  Even this testimony is not credible because Lin and Wei admitted facts about Home on 8th's delivery business and the average tip percentage that establish average tips of $90, and Lin also admitted monthly tips of $2,100 or $81 a day.

- Plaintiffs' collective testimony that "[they] did not earn tips during the hours that [they] distributed menus," Pls. Decls. ¶ 6; is not credible because they admitted sharing the tips received by others making deliveries at the same time.

- Plaintiffs' collective testimony of spending four-plus hours a day preparing utensil packages[36] is not credible.  Lin and Wei refused to confirm this testimony,[37] but He contradicted it by saying one person could prepare a day's supply in two hours.  *See* Tr. at 184:7-11.  None of this testimony is credible as Plaintiffs admitted facts showing one person could prepare a day's supply of packages in 36 minutes.

- Wei's claim of making deliveries at 10:30 a.m. on weekdays, *see* Tr. at 86:14-18; 88:4-22; is not credible because Wei stipulated Home on 8th did not open for business until 11:00 a.m., *see* Stip. Fact ¶ 10; and Lin testified there was never a delivery before the kitchen began cooking at 11:00 a.m.  *See* Tr. at 147:21-149:15.

- Wei's claim that no papers were taped or affixed to the walls inside Home on 8th, *see* Tr. at 85:21-86:2; is not credible because every other witness -- Li, Lin, and He -- testified papers were affixed to the wall leading to the basement.

---

[34]      *See* Joint Pretrial Order entered on April 18, 2011, at 13 (Li listed as defendants' trial witness); Tr. at 23:17-23; 25:20-23 (notice of Li's decision given morning of trial); Letter dated June 6, 2012 to Hon. George B. Daniels from Gregg Kanter (reflecting representation that Li would testify at trial).

[35]      *See* Tr. at 80:18-20; 84:15 (Wei: tips averaged $70 to $80 a day); 121:9-10 (Lin: tips averaged $70 to $80 a day); 193:4-5; 209:4-5 (He: daily tips averaged "$70-plus" and "more than $70").

[36]      *See* Pls. Decls. ¶ 6 ("[A]lternate weeks, on weekdays from 10:30 a.m. and 12:00 p.m. and again from about 3:15 p.m. or 3:30 p.m. to 6:00 p.m., I distributed menus or I packaged utensils and napkins.  I also packaged utensils whenever I was not making deliveries.").

[37]      *See* Tr. at 90:3-20; 94:12-95:4; 150:4-24; 151:9-22; 153:8-11.

**Henry Li's Good Faith**

Henry Li attended one year of college, and his only experience as an employer before opening Home on 8th was having one employee for six weeks at his 200 square foot gift shop. *See* Tr. at 354:14-15; 237:24-238:17.  Li performed a multitude of functions at Home on 8th, including handling legal affairs.  *See* Tr. at 240:10-242:5; Stip. Fact ¶ 18.

Li knew in 2007 that the minimum wage was $7.15 and calculated that Plaintiffs earned more, with a $2,800 wage for "200-something hours" per month.  Tr. at 305:25-306:2; *see also* 306:14-307:24.  Li's calculation's reasonableness is supported by the chart above and Plaintiffs' concession (before withdrawn) that, with the tip credit, they earned the minimum wage.[38]

After Lin demanded $30,000 and reinstatement, Li modified Home on 8th's practices, *see* Stip. Fact ¶ 56; Tr. at 246:12-248:5; by, *inter alia*:

- having an accountant do payroll beginning with the pay period ending April 6, 2009; *see* Stip. Fact ¶ 56; Tr. at 317:2-319:19; 205:19-206:1 (He); Stip. Exh. 2;

- providing checks with withholding information beginning in May, 2009, *see* Tr. at 321:1-13; Stip. Exh. 4;

- requiring workers to record daily tips beginning in June, 2009, *see* Tr. at 322:3-25; Stip. Exh. 5; and

- beginning September 21, 2009, requiring delivery workers to record their hours, paying them by the hour, and documenting and paying spread of hours.[39]

## ARGUMENT

### I.

### HOME ON 8TH IS ENTITLED TO A TIP CREDIT

The FLSA and New York law allow an employer to count tips towards the minimum wage and pay an employee a lower direct wage.[40]

---

[38]     *See, e.g.,* Tr. at 10:25-11:3 ("we have stipulated to facts that establish that they did receive sufficient tips, assuming the tip credit applies, but we are arguing that the tip credit does not apply").

[39]     *See* Tr. at 323:12-324:22; 325:19-327:19; 328:14-329:3; Stip. Exh. 6; Stip. Fact ¶ 4.

[40]     *See* 29 U.S.C. § 203(m); N.Y. Labor Law §§ 651.7, 652.4 (2009); *Lin v. Benihana Nat'l Corp.*, 275 F.R.D. 165, 171 (S.D.N.Y. 2011).

A.      **The FLSA's Tip Credit**

The FLSA allows a tip credit if the "employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee." 29 U.S.C. § 203(m). "Inform" does not mean "explain,"[41] and an employer need not specifically say it is taking the tip credit.[42]

An employer "informs" an employee of the tip credit by telling the employee his wages are tips and payments from the employer. *See Vancamper v. Rental World, Inc.*, 10-cv-209, 2011 WL 1230805, at *6 (M.D. Fla. Mar. 31, 2011) (denying plaintiff's motion for summary judgment because employer's claim of telling plaintiff "that he would receive tips in connection with his shuttle bus transportation duties, which were in addition to his regular pay" created an issue of fact as to whether employer "notified [plaintiff] of its intent to 'treat [his] tips as satisfying part of [its] minimum wage obligations'") (second and third alterations in original); *Rudy v. Consolidated Rest. Cos.*, 08-CV-0904, 2010 WL 3565418, at *9 (N.D. Tex. Aug. 18, 2010) ("Explaining that an employee would make $2.15/hour plus tips and that they would participate in a tip pool has been determined to be sufficient notice under Section 203(m). Defendant complied with the notice requirements of Section 203(m).") (citation omitted); *Hardwick v. Complete Skycap Serv., Inc*., 04-cv-88, slip op. at 11 (D. Ariz. June 17, 2005) ("[I]t is undisputed that Complete Skycap explained to Plaintiffs that they would receive $2.13 per hour, the remainder of their pay would be in tips, and they would work under a tip-pooling program. This explanation is sufficient to satisfy the notice requirement of § 20[3](m), which

---

[41]         *See Chan v. Triple 8 Palace, Inc*., 03 Civ. 6048, 2006 WL 851749, at *19 (S.D.N.Y. Mar. 30, 2006) ("Employers do not have to 'explain' the tip credit to employees, however; it is enough to 'inform' them of it."); *Kilgore v. Outback Steakhouse*, 160 F.3d 294, 298 (6th Cir. 1998) ("'inform' requires less from an employer than the word 'explain'"). The DOL did not issue a regulation interpreting the term "informed" in § 203(m) before 2011, *compare* 29 C.F.R. § 531.59 (2010); *with* 29 C.F.R. § 531.59 (2011); and the 2011 regulation it is not retroactive. *See Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 684-85 (D. Md. 2012).

[42]         *See Garcia v. Palomino, Inc*., 738 F. Supp. 2d 1171, 1178 (D. Kan. 2010) (denying plaintiff's motion for summary judgment even though "Defendants did not affirmatively tell Plaintiffs that they intended to take advantage of the exemption set forth in § 203(m)"); *Thomas v. J.R. Eight, Inc*., 01-1067-CIV, slip. op. at 4 (S.D. Fla. Aug. 30, 2002) (granting employer's motion for summary judgment notwithstanding employee's "conten[tion] that at no time was he specifically informed of the FLSA's tip credit provisions").

merely requires employees to have 'been informed by the employer of the provisions of this subsection.'"), *aff'd*, 247 F. App'x 42 (9th Cir. 2007).

An employer also "informs" an employee of the tip credit by posting a minimum wage notice. *See Torres v. Cache Cache, Ltd.*, 12-cv-00150, 2013 WL 1685784, at *4 (D. Colo. Apr. 18, 2013) ("Defendants argue that they provided the requisite notice through posters displayed at Cache Cache including the Colorado Minimum Wage Order 29 Poster.  Plaintiff claims that this notice was insufficient because this poster 'merely provides a general explanation of an employer's minimum wage obligations' and does not provide 'an explanation to Plaintiff that Cache Cache intended to treat tips as satisfying a portion of its minimum wage obligations to Plaintiff.'  I disagree."); *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 822 (N.D. Ill. 2011) ("[T]he FLSA does not prescribe the form the notice must take . . . . An employer can also convey notice by way of a prominently displayed poster containing information about the tip credit provision."); *Pellon v. Business Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1310 (S.D. Fla. 2007) ("[A] prominently displayed poster using language approved by the Department of Labor to explain 29 U.S.C. § 203(m) is sufficient notice."), *aff'd*, 291 F. App'x 310 (11th Cir. 2008); *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 719 (N.D. Ind. 1998) ("[A]n employer can satisfactorily convey notice of the tip credit by way of a poster, if the content of the poster is otherwise sufficient and it is prominently displayed.").

Given that an employer satisfies § 203(m) by telling an employee his wages are tips and the employer's payments or by posting a minimum wage notice, an employer doing both satisfies § 203(m).  *See Garcia v. Palomino, Inc.*, 738 F. Supp. 2d at 1178 ("[Employer] did, according to Mr. Melgoza's deposition testimony and an affidavit he submitted, hang up a poster discussing the minimum wage laws in an area that Plaintiffs routinely frequented.  Furthermore, Defendants told Plaintiffs that they would make only $2.30/hr and Plaintiffs' pay stubs reflected this fact. Based on these facts, the Court finds that a reasonable jury could conclude that Defendants informed Plaintiffs of their intent to treat tips as satisfying part of their minimum wage obligations.") (citation omitted); *Thomas v. J.R. Eight, Inc.*, 01-1067-CIV, slip. op. at 6 ("[I]t is

13

undisputed that not only was Thomas told from the outset that he would be paid $2.13 per hour plus tips, but Defendant also prominently displayed a poster in the restaurant conveying notice of the tip credit to all employees.  Such constitutes adequate notice of the tip credit and thus summary judgment is appropriate on this issue.").[43]

Here, Home on 8th informed Plaintiffs of the tip credit by (1) telling then when hired that their wages would be $2,800 per month, with $700 from Home on 8th and $2,100 in tips; and (2) posting minimum wage notices.[44]  Li's testimony that minimum wage notices were posted before this lawsuit, and Li and He's testimony corroborating that papers were posted at the same location specified by Li, renders unreasonable an inference that no notices were posted because none were preserved.  Plaintiffs' inability to read English does not negate that the posted notices "informed" them of § 203(m).[45]

Plaintiffs' "alternative" argument -- the tip credit does not apply because more than 20% of their time was spent on the non-tipped duties of preparing utensil packages and distributing menus -- is contrary to both fact and law.  The facts are wrong because Plaintiffs earned tips while performing these duties as tips received by others were shared with Plaintiffs.  Moreover, these duties were related to Plaintiffs' tipped work and did not occupy more than 20% of their time during weeks they did not distribute menus.  The law is wrong because where an employee

---

[43]     Li is unaware of any decision binding on this Court that conflicts with the foregoing authorities about what constitutes "inform" for purposes of § 203(m).

[44]     Plaintiff He conceded, as he must, having notice of § 203(m) and Home on 8th's intention to take the tip credit when the Complaint was filed on June 19, 2009.  *See Lu v. Jing Fong Rest., Inc*., 503 F. Supp. 2d 706, 711 (S.D.N.Y. 2007) ("there are . . . even greater reasons to be skeptical of the claim that Jing Fong did not satisfactorily inform employees, many of whom were parties to the earlier action, of the tip credit").

[45]     This case is distinguishable from dictum providing that a minimum wage notice in English fails to "inform" employees who cannot read English.  *E.g.*, *Chan v. Sung Yue Tung Corp*., 03 Civ. 6048, 2007 WL 313483, at *18-19 (S.D.N.Y. Feb. 1, 2007) (holding that defendants are not entitled to tip credit because plaintiffs did not retain their tips and finding in alternative that defendants are ineligible for tip credit because, *inter alia*, "[t]he notice it did post is insufficient under the statute both because it is in English, a language that few of the plaintiffs can read, and because it is posted in a relatively inconspicuous area").  Unlike *Chan*, Plaintiffs here retained their tips, notices were prominently posted, Plaintiffs were told their wages are tips and plus payments from Home on 8th, and Plaintiffs never said they could not read English.  Moreover, *Chan's* dictum appears contrary to DOL regulations. *See* U.S. Department of Labor:  Frequently Asked Questions, Question:  Do I have to post the federal workplace posters in languages other than English?, available at http://webapps.dol.gov/dolfaq/go-dol-faq.asp?faqid=546&faqsub=General&faqtop=Posters&topicid=17 ("[T]he U.S. Department of Labor's regulations do not require notices in Spanish or other languages.").

in a tipped "occupation" spends more than 20% of his time doing related, non-tipped duties, the tip credit still applies to all tip-producing time.[46]

## B.     New York's Tip Allowance

An employer may take an allowance for tips if the employee retains his tips and the tips plus cash wage equal the minimum wage.[47]

## II.

## VIOLATION OF THE MINIMUM WAGE LAW

## A.     Plaintiffs' Hours and Wages

An employee has the initial burden of "produc[ing] sufficient evidence to show the amount and extent of [his] work as a matter of just and reasonable inference."[48]  The evidence need not be precise, but it must be credible.[49]  The employer then can offer "evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."[50]

Plaintiffs' testimony of working 65.5 and 67.5 hours per week is not credible.  Plaintiffs' other testimony establishes they worked between 43.4 and 60.4 hours per week: (1) Plaintiffs

---

[46]     The Department of Labor's regulations provide that where an employee works two jobs, with one being a tipped "occupation," the tip credit does not apply to the work in the non-tipped "occupation." *See* 29 C.F.R. § 531.56(e) (2010).  This regulation expressly distinguishes this situation from an employee in a tipped "occupation" who performs related duties that are not tip producing. *See id.*  The DOL's interpretation of this regulation, which is entitled to deference under *Auer v. Robbins*, 519 U.S. 452, 461 (1997), provides that where an employee in a tipped "occupation" spends more than 20% of his time on related duties that are not tip producing, the tip credit does not apply to the hours on the related duties. *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 875, 879-80 (7th Cir. 2011), *cert. denied*, 132 S. Ct. 1094 (2012).

    Here, the evidence shows that preparing utensil packages and delivering menus were related to Plaintiffs' tip-producing duty of delivering food because these duties were (a) part of the normal duties of a delivery worker; (b) assigned exclusively to delivery workers; and (c) necessary for, incidental to, and promoted Plaintiffs' tip producing work. *Cf. Pellon v. Business Representation Int'l, Inc.*, 528 F. Supp. 2d at 1313-15.

[47]     *See* N.Y. LABOR LAW §§ 651.7, 652.4 (2009); 12 NYCRR §§ 137-1.5 (2009).

    Unlike § 203(m), the allowance is not conditioned on informing the employee. *See Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *20 & n.24 ("Unlike 29 U.S.C. § 203(m), which renders employers ineligible for the tip credit if they fail to provide adequate notice, New York Law Labor § 198-d does not provide for any remedies or penalties against employers who violate its provisions."; "[E]ven if state law, like federal law, provided that employers who violate notice provisions are ineligible for the tip credit . . . .").

[48]     *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *see also Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 67 (2d Cir. 1997).

[49]     *See Vasquez v. Ranieri Cheese Corp.*, 07-CV-464, 2010 WL 1223606, at *7, 16 (E.D.N.Y. Mar. 26, 2010); *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 255 (S.D.N.Y. 2008); *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 331-32 (S.D.N.Y. 2005).

[50]     *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. at 687-88; *see also Reich v. Southern New England Telecomms. Corp.*, 121 F.3d at 67.

started at 11:00 a.m. when they did not distribute menus; (2) He started at 11:00 a.m. or 12:00 p.m. once menu distribution ceased and was off from 3:00 p.m. and 6:00 p.m. when starting at 11:00 a.m.; (3) Plaintiffs had two non-compensable 30-minute meal breaks;[51] and (4) Plaintiffs missed work on holidays when Home on 8th was closed or operated with a reduced staff, and they missed work for sickness or other reasons.

Withholdings paid are deemed wages.[52]

Bicycle expenses are not reimbursable where (1) the employee is not required, directed or instructed to use a bicycle; (2) the employee's wage exceeds the minimum wage plus the bicycle expenses;[53] or (3) the expenses are exaggerated or unsubstantiated.[54]

## B.   <u>The FLSA's Minimum Wage</u>

The federal minimum wage was $5.15 before July 24, 2007, $5.85 after July 24, 2007, $6.55 after July 24, 2008, and $7.25 after July 24, 2009, with overtime at, respectively, $7.73, $8.78, $9.83, and $10.88.[55]  With the tip credit, an employer's minimum payment was $2.13, with overtime at $2.13 plus one half the minimum wage, *i.e.*, $4.71, $5.06, $5.41, and $5.76.[56] The following chart compares Plaintiffs' wage with the FLSA's requirements.

---

[51]     Meal breaks are compensable only if employees perform duties "predominately for the benefit of the employer," but occasional work does not render a break compensable.  *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d at 65; *see also Mendez v. Radec Corp.*, 232 F.R.D. 78, 83 (W.D.N.Y. 2005) ("The question is not whether an employee did any work at all during his meal period, but whether that period itself is used primarily to perform activities for the employer's benefit. . . . Case law subsequent to *Reich* also makes clear that the relevant question is whether the break itself is predominantly spent on activities for the employer's benefit, not on whether the employee did anything at all for the employer's benefit."); 29 C.F.R. § 785.19 (2013).

[52]     *See* 29 C.F.R. § 531.38 (2010) ("Taxes which are assessed against the employee and which are collected by the employer and forwarded to the appropriate governmental agency may be included as 'wages.'"); 12 NYCRR § 137-2.5(a) (2009).

[53]     *See Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) ("Where an employer requires an employee to possess and utilize tools of the trade, such as bicycles, in the course of their employment, the 'employer[] can require [the] employee[] to bear to costs of acquiring and maintaining tools of the trade so long as those costs, when deducted from the employee[']s[] weekly wages do not reduce their wage below the required minimum wage.'") (citation omitted); 29 C.F.R. § 531.35 (2010) ("If it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by an employee cuts into the minimum or overtime wages required to be paid him under the Act.").

[54]     *See Cao v. Wu Liang Ye Lexington Rest.*, 08 Civ. 3725, 2010 WL 4159391, at *5 (S.D.N.Y. Sept. 30, 2010).

[55]     *See* 29 U.S.C. § 206(a)(1); *Maldonado v. La Nueva Rampa, Inc.*, 10 Civ. 8195, 2012 WL 1669341, at *5 n.4 (S.D.N.Y. May 14, 2012); *Lanzetta v. Florio's Enters., Inc.*, 763 F. Supp. 2d 625, 624 (S.D.N.Y. 2011); *but cf. Pereira v. J. Sisters Hair Care Prods., Inc.*, 08 Civ. 4537, 2010 WL 2194807, at *1 & n.1 (S.D.N.Y. June 1, 2010).

[56]     *See* 29 U.S.C. §§ 203(m), 206(a)(1); 29 C.F.R. § 531.60 (2010); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d at 874.

| | Period | Hours | Minimum Wage Plus Overtime | Plaintiffs' Wages | Minimum Employer Pay with Overtime | Plaintiffs' Home on 8th Pay |
|---|---|---|---|---|---|---|
| Lin | 03.08.07 - 07.23.07 | 54.6 - 58.9 | 318.38 - 352.10 | 646.15 | 153.97 - 174.22 | 161.54 |
| | 07.24.07 - 10.13.07 | 54.6 - 58.9 | 362.19 - 399.94 | 646.15 | 159.08 - 180.83 | 161.54 |
| | 11.26.07 - 12.31.07 | 58.9 | 399.94 | 761.53 | 180.83 | 276.92 |
| | 01.01.08 - 07.23.08 | 58.9 | 399.94 | 782.66 | 180.83 | 298.05 |
| | 07.24.08 - 12.31.08 | 58.9 | 447.79 | 782.66 | 187.45 | 298.05 |
| | 01.01.09 - 02.16.09 | 58.9 | 447.79 | 798.38 | 187.45 | 313.76 |
| Wei | 03.01.07 - 07.23.07 | 56.0 - 60.4 | 329.68 - 363.69 | 646.15 | 160.56 - 181.28 | 161.54 |
| | 07.24.07 - 03.20.08 | 56.0 - 60.4 | 374.48 - 413.12 | 646.15 | 166.16 - 188.42 | 161.54 |
| He | 02.06.08 - 03.31.08 | 55.6 - 60.0 | 370.97 - 409.60 | 662.73 | 164.14 - 186.40 | 178.12 |
| | 04.01.08 - 07.23.08 | 55.6 - 60.0 | 370.97 - 409.60 | 674.27 | 164.14 - 186.40 | 189.65 |
| | 07.24.08 - 12.31.08 | 55.6 - 60.0 | 415.35 - 458.60 | 674.27 | 169.60 - 193.40 | 189.65 |
| | 01.01.09 - 03.15.09 | 55.6 - 60.0 | 415.35 - 458.60 | 711.80 | 169.60 - 193.40 | 227.19 |
| | 03.16.09 - 03.31.09 | 55.6 - 60.0 | 415.35 - 458.60 | 815.65 | 169.60 - 193.40 | 331.03 |
| | 04.01.09 - 04.30.09 | 43.4 - 52.7 | 295.42 - 386.84 | 815.65 | 103.59 - 153.91 | 331.03 |
| | 05.01.09 - 07.23.09 | 43.4 - 52.7 | 295.42 - 386.84 | 769.49 | 103.59 - 153.91 | 284.88 |
| | 07.24.09 - 09.20.09 | 43.4 - 52.7 | 326.99 - 428.18 | 769.49 | 104.78 - 158.35 | 284.88 |

Plaintiffs always received wages in excess of the minimum wage plus overtime provided the tip credit applies. The pay from Home on 8th, however, did not always exceed the minimum pay for tipped employees. He was underpaid $37.50.[57] Depending on the statute of limitations, Wei was underpaid $581.42 or $732.63, and Lin was underpaid $127.00 or $193.27.[58]

**C.   New York's Minimum Wage**

The New York minimum wage was $7.15 before July 23, 2009 and $7.25 thereafter. *See* N.Y. LABOR LAW § 652.1 (2009). The "wage" includes allowances such as tips, but an employer

---

[57]   He worked 55.6, 57.6, 58.0, or 60.0 hours per week before April, 2009. *See* note 34, *supra*. In the 7.7 weeks from February 6, 2008 to March 31, 2008 (54 days / 7), He was underpaid one of four weeks by $8.28 (186.40 - 178.12) for a total of $15.94 (8.28 x 7.7 / 4). In the 23 weeks from July 24, 2008 to December 31, 2008 (161 days / 7), He was underpaid one of four weeks by $3.75 (193.40 - 189.65) for a total of $21.56 (3.75 x 23 / 4).

[58]   Wei worked 56.0, 57.9 (59 x .9818), 58.4 (59.5 x .9818) or 60.4 hours per week. *See* note 34, *supra*. The employer's minimum payment to a tipped employee for these hours was, respectively, $160.56, $169.51, $171.86, and $181.28 before July 24, 2007, and $166.16, $175.77, $178.30, and $188.42 after July 23, 2007. In the 20.7 weeks from March 1, 2007 to July 23, 2007 (145 days / 7), Wei was underpaid three of four weeks by an average of $12.68 (((169.51 + 171.86 + 181.28) / 3) - 161.54) for a total of $196.86 (20.7 x 12.68 x 3/4). In the 34.3 weeks from July 24, 2007 to March 20, 2008 (240 days / 7), Wei was underpaid with an average of $15.62 (((166.16 + 175.77 + 178.30 + 188.42) / 4) - 161.54) for a total of $535.77 (34.3 x 15.62). With a two-year statute of limitations, Wei loses $151.21 (15.9 x 12.68 x 3/4) for the 15.9 weeks from March 1, 2007 to June 19, 2007 (111 days / 7).

Lin worked 54.6, 56.5 (59 x .9581), 57 (59.5 x .9581) or 58.9 hours per week. *See* note 34, *supra*. The minimum payment to a tipped employee for these hours was, respectively, $153.97, $162.92, $165.27, and $174.22 before July 24, 2007, and $159.08, $168.69, $171.22, and $180.83 after July 23, 2007. In the 19.7 weeks from March 8, 2007 to July 23, 2007 (138 days / 7), Lin was underpaid three of four weeks by an average of $5.93 (((162.92 + 165.27 + 174.22) / 3) - 161.54) for a total of $87.62 (19.7 x 5.93 x 3/4). In the 11.7 weeks from July 24, 2007 to October 13, 2007 (82 days / 7), Lin was underpaid three of four weeks by an average of $12.04 (((168.69 + 171.22 + 180.83) / 3) - 161.54) for a total of $105.65 (11.7 x 12.04 x 3/4). With a two-year statute of limitations, Lin loses $66.27 (14.9 x 5.93 x 3/4) for the 14.9 weeks from March 8, 2007 to June 19, 2007 (104 days / 7).

was required to pay a cash wage to a "food service worker" of $4.60 before July 24, 2009 and $4.65 thereafter, with overtime at $8.18 before, and $8.28 after, July 24, 2009.[59] The following chart compares Plaintiffs' wage with New York's requirements.

| | Period | Hours | Minimum Wage Plus Overtime | Plaintiffs' Wages | Food Service Worker Pay with Overtime | Plaintiffs' Home on 8th Pay |
|---|---|---|---|---|---|---|
| Lin | 03.08.07 - 10.13.07 | 54.6 - 58.9 | 442.66 - 488.80 | 646.15 | 303.43 - 338.60 | 161.54 |
| | 11.26.07 - 12.31.07 | 58.9 | 488.80 | 761.53 | 338.60 | 276.92 |
| | 01.01.08 - 12.31.08 | 58.9 | 488.80 | 782.66 | 338.60 | 298.05 |
| | 01.01.09 - 02.16.09 | 58.9 | 488.80 | 798.38 | 338.60 | 313.76 |
| Wei | 03.01.07 - 03.20.08 | 56.0 - 60.4 | 447.68 - 504.89 | 646.15 | 314.88 - 350.87 | 161.54 |
| He | 02.06.08 - 03.31.08 | 55.6 - 60.0 | 453.39 - 500.60 | 662.73 | 311.61 - 347.60 | 178.12 |
| | 04.01.08 - 12.31.08 | 55.6 - 60.0 | 453.39 - 500.60 | 674.27 | 311.61 - 347.60 | 189.65 |
| | 01.01.09 - 03.15.09 | 55.6 - 60.0 | 453.39 - 500.60 | 711.80 | 311.61 - 347.60 | 227.19 |
| | 03.16.09 - 03.31.09 | 55.6 - 60.0 | 453.39 - 500.60 | 815.65 | 311.61 - 347.60 | 331.03 |
| | 04.01.09 - 04.30.09 | 43.4 - 52.7 | 322.48 - 422.27 | 815.65 | 211.81 - 287.89 | 331.03 |
| | 05.01.09 - 07.23.09 | 43.4 - 52.7 | 322.48 - 422.27 | 769.49 | 211.81 - 287.89 | 284.88 |
| | 07.24.09 - 09.20.09 | 43.4 - 52.7 | 329.99 - 428.18 | 769.49 | 214.15 - 291.16 | 284.88 |

Just like with the FLSA, Plaintiffs always received more than the minimum wage plus overtime, but Home on 8th paid less than the cash wage for food service workers:  Wei, Lin, and He were underpaid, respectively, $9,423.70, $8,027.87, and $7,795.76.[60]

---

[59]     *See* N.Y. LABOR LAW §§ 651.7, 652.4 (2009); 12 NYCRR §§ 137-1.3, 137.1-5(d)-(e), 137-3.5 (2009).

"Food service workers" are employees who are "primarily engaged in the serving of food or beverages to guests, patrons or customers in the hotel or restaurant industries, including, but not limited to, wait staff, bartenders, captions and bussing personnel; and who regularly receive tips from such guests, patrons or customers."  N.Y. LABOR LAW § 651.9; 12 NYCRR § 137-3.4(a) (2009).

A delivery worker may qualify as a "food service worker."  *Cf. Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d at 510 (denying plaintiff's motion for collective action because named plaintiff delivery worker earned more than minimum wage, whether or not he is deemed a "food service worker" or "service employee").

[60]     Wei worked 55 weeks from March 1, 2007 to March 20, 2008 (385 days / 7) and was underpaid an average of $171.34 per week (((314.88 + 350.87) / 2) - 161.54 for a total of $9,423.70 (171.34 x 55).

Lin worked 34.1 weeks from March 8, 2007 to October 13, 2007 (220 days / 7) and was underpaid an average of $159.48 per week (((303.43 + 338.60) / 2) - 161.54) for a total of $5,438.27 (159.48 x 34.1).  Lin worked 5.1 weeks from November 26, 2007 to December 31, 2007 (36 days / 7) and was underpaid $61.68 per week (338.60 - 276.92) for a total of $314.57 (61.68 x 5.1).  Lin worked 52 weeks from January 1, 2008 to December 31, 2008 and was underpaid $40.55 per week (338.60 - 298.05) for a total of $2,108.60 (40.55 x 52).  Lin worked 6.7 weeks from January 1, 2009 to February 16, 2009 (47 days / 7) and was underpaid $24.84 per week (338.60 - 313.76) for a total of $166.43 (24.84 x 6.7).

He worked 7.7 weeks from February 6, 2008 to March 31, 2008 (54 days / 7) and was underpaid an average of $151.49 per week (((311.61 + 347.60) / 2) - 178.12) for a total of $1166.47 (151.49 x 7.7).  He worked 39.3 weeks from April 1, 2008 to December 31, 2008 (275 days / 7) and was underpaid an average of $139.96 per week (((311.61 + 347.60) / 2) - 189.65) for a total of $5,500.43 (139.96 x 39.3).  He worked 10.6 weeks from January 1, 2009 to March 15, 2009 (74 days / 7) and was underpaid an average of $102.42 per week (((311.61 + 347.60) / 2) - 227.19) for a total of $1,085.65 (102.42 x 10.6).  He worked 2.3 weeks from March 16, 2009 to March 31, 2009 (16 days / 7) and was underpaid one in four weeks by $16.57 (347.60 - 331.03) for a total of $9.53 (16.57 x 2.3 / 4).  He worked 12 weeks from May 1, 2009 to July 23, 2009 (84 days / 7) and was underpaid one in four weeks by $3.01

## III.

## THE MINIMUM WAGE LAW VIOLATION WAS NOT WILLFUL

Where an employer willfully violates the minimum wage law, the FLSA's statute of limitations extends from two to three years,[61] and the employee is entitled to 25% liquidated damages under New York law.[62]  The burden resting with the employee[63] is met by showing the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 133 (1988). "Knew" means actual knowledge of the violation, and "reckless disregard" is either knowledge of the facts giving notice of the violation or the absence of any effort to ascertain compliance with FLSA.  *See Herman v. RSR Sec. Servs., Ltd*., 172 F.3d at 141-42.

Here, Henry Li kept himself informed of the amount of the minimum wage, calculated Plaintiffs' wage per hour based on their monthly wage and hours worked, and knew Plaintiffs' wage exceeded the minimum wage.  Home on 8th did not violate the FLSA on the basis that Plaintiffs received less than the minimum wage plus overtime.  Instead, the FLSA was violated because Home on 8th paid less than the minimum pay for tipped employees:  just under $1,000 less for all three Plaintiffs over a 34-month period.

In sum, Henry Li made a reasonable effort to comply with the FLSA, and Home on 8th's modest violation concerns only the minimum payment to tipped employees, which is obscure within the FLSA itself.  *See* 29 U.S.C. § 203(m)(1-2).  Just as important, no one took monies from Plaintiffs.  On this record, Plaintiffs have not carried their burden of showing a willful violation of the FLSA.

---

(287.89 - 284.88) for a total of $9.03 (3.01 x 12 / 4).  He worked 15.7 weeks from July 24, 2009 to September 20, 2009 and was underpaid one in four weeks by $6.28 (291.16 - 284.88) for a total of $24.65 (6.28 x 15.7 / 4).

[61]     *See* 29 U.S.C. § 255(a); *Herman v. RSR Sec. Servs. Ltd*., 172 F.3d 132, 141 (2d Cir. 1999); *Yang v. ACBL Corp*., 427 F. Supp. 2d at 337.

[62]     *See* N.Y. LABOR LAW §§ 198.1-a, 681.1; *Yang v. ACBL Corp*., 427 F. Supp. 2d at 340-41; *Ke v. Saigon Grill, Inc*., 595 F. Supp. 2d at 261.

[63]     *See Herman v. RSR Sec. Servs., Ltd*., 172 F.3d at 141.

Home on 8th's violation of New York law for failing to pay the minimum cash wage for "food service workers" is more substantial:  Plaintiffs were underpaid, in the aggregate, $25,243.33.  But Li nonetheless believed (incorrectly) that Home on 8th was complying with New York law because Plaintiffs earned in excess of the minimum wage plus overtime.

## IV.

### LI ACTED IN GOOD FAITH AND
### SHOULD NOT PAY LIQUIDATED DAMAGES

The FLSA provides for liquidated damages in an amount equal to the unpaid minimum wage, but courts "have discretion to deny an award of liquidated damages where the employer shows that . . . [it] acted in subjective 'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise to the failure did not violate FLSA."[64]  The burden falls on the employer and it "is a difficult one, with double damages being the norm and single damages the exception."  *Herman v. RSR Sec. Servs. Ltd*., 172 F.3d at 142.

Here, Henry Li took the affirmative steps of informing himself of the minimum wage and calculating that Plaintiffs' monthly wage on a per hour basis exceeded the minimum wage.  Li's belief that Plaintiffs were earning more than the minimum wage was objectively reasonable, especially since Plaintiffs conceded, at least for a time, that they did in fact receive sufficient wages if the tip credit applies.  Li also took the affirmative steps of informing Plaintiffs of the tip credit by (1) posting minimum wage notices and (2) telling Plaintiffs when hired that their wages would be $2,800 per month, with $700 from Home on 8th and $2,100 in tips.  Li's belief that Home on 8th qualified for the tip credit was objectively reasonable in light of the case law providing that these acts "inform" an employee of the tip credit.

Accordingly, Henry Li should not be liable for liquidated damages under the FLSA.

---

[64]     *Herman v. RSR Sec. Servs. Ltd*., 172 F.3d at 142 (citation omitted); *see also Barfield v. New York City Health & Hosps. Corp*., 537 F.3d 132, 150 (2d Cir. 2008); *Reich v. Southern New England Telecomms. Corp*., 121 F.3d at 70-71.

# V.

# FAILURE TO PAY SPREAD OF HOURS

Spread of hours pay is required where an employee's day "exceeds 10" hours and his pay does not exceed the minimum wage plus an additional hour's pay.[65]

Lin and Wei were underpaid spread of hours by $3,346.43 and $1,930.46, respectively,[66] and He was underpaid spread of hours by $1,516.69.[67]

# VI.

# PLAINTIFF LI'S CLAIMS SHOULD BE DISMISSED

A dismissal for failure to prosecute[68] is warranted where a plaintiff fails to appear at trial knowing it may lead to the dismissal of his action.[69]

---

[65]    12 NYCRR § 137-1.7 (2009); *see also Flores v. Anjost Corp.*, 284 F.R.D. 112, 118 (S.D.N.Y. 2012); *Almeida v. Aguinaga*, 500 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2007); *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *21; *Dong v. CCW Fashion Inc.*, 06 Civ. 4973, slip op. at 6 (S.D.N.Y. Feb. 19, 2009).

[66]    Lin and Wei worked five days exceeding 10 hours each week and did not receive a cash wage exceeding $4.60 per hour, so they were underpaid spread of hours of $35.75 for every week (5 x $7.15).  Lin was underpaid $3,346.43 for the 97.9 weeks he worked, reduced by 4.19% for his missed work days (35.75 x 97.9 x .9581), and Wei was underpaid $1,930.46 for 55 weeks reduced by 1.82% for his missed work days (35.75 x 55 x .9818).

[67]    Before March 16, 2009, He worked five days exceeding 10 hours each week and did not receive a cash wage exceeding $4.60 per hour, so he was underpaid spread of hours of $35.75 for the 41.3 weeks from February 6, 2008 to March 15, 2009 (289 days / 7), reduced by 2.49% for his missed work days, for a total of $1,439.71 (35.75 x 41.3 x .9751).  In the 2.3 weeks from March 16, 2009 to March 31, 2009 (16 days / 7), He's pay from Home on 8th did not equal the sum of the minimum cash wage plus spread of hours pay, so he is entitled to $76.98 (((((311.61 + 347.60) /2) + 35.75) - 331.03) x 2.3 x .9751).  He was not underpaid spread of hours from April 1, 2009 to April 30, 2009 because his cash wage exceeded the sum of the minimum cash wage and spread of hours pay.  Nor was He underpaid spread of hours after May 1, 2009 because He's cash wage exceeded the sum of the minimum cash wage and spread of hours pay during those weeks he started at 11:00 a.m., and during the other weeks when He started at 12:00 p.m. no work day exceeded 10 hours.

[68]    A dismissal for failure to prosecute must consider the following factors:

(1) the plaintiff's failure to prosecute caused a delay of significant duration; (2) plaintiff was given notice that further delay would result in dismissal; (3) defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion was carefully balanced against plaintiff's right to an opportunity for a day in court; and (5) the trial court adequately assessed the efficacy of lesser sanctions.  No one factor is dispositive.

*Raber v. Merck, Sharp & Dohme Corp.*, 11-cv-4783, 2013 WL 2321417, at *1 (S.D.N.Y. May 29, 2013) (quoting *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)).

[69]    *See id.* at *1 (dismissing action with prejudice where plaintiff expressed intention not to appear at trial); *Curtis v. Phillips, L.M.S.W.*, 05-CV-0698, 2009 WL 36856, at * 1-2 (W.D.N.Y. Jan. 6, 2009) (same); *cf. Reshetnikov v. Republic Nat'l Bank of N.Y.*, 233 F.R.D. 644 (S.D.N.Y. 2005) (dismissal without prejudice where plaintiff wants, but is not able, to appear at trial).

Here, Plaintiff Li knew his absence at trial put his claims at risk, but Li didn't care because, as his counsel explained, "his claims are not substantial" enough to justify Li's time. Accordingly, Li's claims should be dismissed.[70]

## CONCLUSION

For the reasons set forth above, Defendant Henry Li respectfully requests this Court to enter judgment in his favor and against Plaintiff Lai Li, and enter judgment against him and in favor of Plaintiff Lin in the amount of $11,374.30, Plaintiff He in the amount of $9,312.45, and Plaintiff Wei in the amount of $11,354.16.[71]

Dated: October 31, 2013          Gregg H. Kanter Law Office LLC
       Philadelphia, PA


                                 By:  ____/s/ Gregg Kanter_____
                                       Gregg H. Kanter
                                 2222 Pine Street
                                 Philadelphia, PA 19103
                                 (917) 494-5317
                                 greggkanter@yahoo.com
                                 Attorney for defendant Henry Li

---

[70]     Alternatively, Plaintiff Li's claims should be dismissed because he has failed to carry his initial burden of showing that he did work.  *Cf. Anderson v. Mt. Clemens Pottery Co*., 328 U.S. at 687-88 ("an employee has carried his burden of proving that he has in fact performed work for which he was improperly compensated if he produces evidence to show the amount and extent of that work").

[71]     Plaintiffs' damages exclude the violation of the FLSA because Plaintiffs cannot recover under the FLSA and New York law where both offer the same relief.  *See Lanzetta v. Florio's Enters, Inc*., 763 F. Supp. 2d at 624.