```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JIAN F. HE et al.,                              :
                                                :
                   Plaintiffs,                  :      09 CIV 5630 (GBD)
                                                :
           v.                                   :
                                                :
HOME ON 8TH, et al.,                            :
                                                :
                   Defendants.                  :
------------------------------------------------------x
```

## DEFENDANT HENRY LI'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' POSTTRIAL MEMORANDUM

Gregg H. Kanter
Gregg H. Kanter Law Office LLC
2222 Pine Street
Philadelphia, PA 19103
(917) 494-5317
greggkanter@yahoo.com
Attorney for defendant Henry Li

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| TABLE OF AUTHORITIES | | | ii |
| PRELIMINARY STATEMENT | | | 1 |
| ARGUMENT | | | 1 |
| I. | The Tip Credit | | 1 |
| | A. | The Facts on the Tip Credit | 1 |
| | B. | The Law on the Tip Credit | 3 |
| | | 1. Telling an Employee his Wage Will Be Tips and the Employer's Payments | 3 |
| | | 2. Posting a Minimum Wage Notice | 6 |
| | C. | Plaintiffs' Miscellaneous Arguments About the FLSA's Tip Credit and New York's Tip Allowance | 8 |
| | | 1. Retroactive Tip Credit Is Not Sought | 8 |
| | | 2. English Language Notices Are Sufficient | 8 |
| | | 3. Home on 8th's Intent To Take the Tip Credit | 8 |
| | | 4. Making Calculations or Paying by the Hour Are Not Requirements for the Tip Credit | 8 |
| | | 5. The Failure To Pay the Minimum Tipped Wage Does Not Preclude the Tip Credit | 9 |
| | | 6. Plaintiffs' "Alternative" Argument About Non-Tipped Duties | 9 |
| | | 7. Wage Statements Are Not Required for the Tip Allowance | 10 |
| II. | Plaintiffs' Hours | | 11 |
| III. | Calculating Plaintiffs' Damages | | 14 |
| | 1. | FLSA Minimum Wage Damages Are Calculated Based on the Federal Minimum Wage | 14 |
| | 2. | Plaintiffs Were "Food Service Workers" Under New York Law | 15 |
| | 3. | Liquidated Damages | 15 |
| CONCLUSION | | | 16 |

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946)............................................................................................. 12

*Chan v. Sung Yue Tung Corp.*,
   03 Civ. 6048, 2007 WL 313483 (S.D.N.Y. Feb.1, 2007)......................................... 15

*Chao v. Yang*,
   No. 05-2563, 2007 WL 7209596 (W.D. Tenn. Aug. 13, 2007),
   *aff'd sub nom.*, *Solis v. Yang*, 345 F. App'x 35 (6th Cir. 2009) ................................ 3, 4

*Copantitla v. Fiskardo Estiatorio, Inc.*,
   788 F. Supp. 2d 253 (S.D.N.Y. 2011)...................................................................... in passim

*Dominguez v. Quigley's Irish Pub, Inc.*,
   790 F. Supp. 2d 803 (N.D. Ill. 2011) ........................................................................ 9

*Fu v. Pop Art Int'l Inc.*,
   10 Civ. 8562, 2011 WL 4552436 (S.D.N.Y. Sept. 19, 2011)................................... 15

*Giuffre v. Mary Lake Lodge, LLC*,
   12-cv-00377, 2012 WL 4478806 (D. Colo. Sept. 28, 2012) .................................... 3

*Jin v. Pacific Buffet House, Inc.*,
   06-CV-579, 2009 WL 2601995 (E.D.N.Y. Aug. 24, 2009) ..................................... 15

*Kilgore v. Outback Steakhouse of Florida, Inc.*,
   160 F.3d 294 (6th Cir. 1998) ................................................................................... 4

*Koellhoffer v. Plotke-Giordani*,
   858 F. Supp. 2d 1181 (D. Colo. 2012)..................................................................... 3

*Lu v. Jing Fong Rest., Inc.*,
   503 F. Supp. 2d 706 (S.D.N.Y. 2007)...................................................................... 10

*Martin v. Tango's Rest., Inc.*,
   969 F.2d 1319 (1st Cir. 1992).................................................................................. 4-5, 7

*Myracle v. General Elec. Co.*,
   No. 92-6716, 1994 WL 456769 (6th Cir. Aug. 23, 1994) ........................................ 12

*Pellon v. Business Representation Int'l, Inc.*,
   528 F. Supp. 2d 1306 (S.D. Fla. 2007),
   *aff'd*, 291 F. App'x 310 (11th Cir. 2008).................................................................. 8

*Pereira v. J. Sisters Hair Care Prods., Inc.*,
   08-cv-4537, slip op. (S.D.N.Y. Apr. 4, 2010),
   *adopted by*, 2010 WL 2194807 (S.D.N.Y. June 1, 2010) ......................................... 14

*Perez v. Palermo Seafood, Inc.*,
   548 F. Supp. 2d 1340 (S.D. Fla. 2008),
   *aff'd*, 302 F. App'x 905 (11th Cir. 2008)................................................................. 9

## **TABLE OF AUTHORITIES CONTINUED**

*Pineda-Herrera v. Da-Ar-Da, Inc.*,
 09-CV-5140, 2011 WL 2133825 (E.D.N.Y. May 26, 2011) ...................................... 14, 15

*Reich v. Chez Robert, Inc.*,
 28 F.3d 401 (3d Cir. 1994)......................................................................................... 5, 7

*Solis v. Yang*,
 345 F. App'x 35 (6th Cir. 2009)................................................................................. 3-4

*Yin v. Kim,*
 07 CV 1236, 2008 WL 906736 (E.D.N.Y. Apr. 1, 2008)............................................ 15

### **Statutes and Regulations**

29 U.S.C. § 203(m) ................................................................................................... 1, 7

29 U.S.C. § 218(a) .................................................................................................... 14

N.Y. LABOR LAW 196-d (2009) ................................................................................ 10

N.Y. LABOR LAW § 651.7 (2009).............................................................................. 10

N.Y. LABOR LAW § 651.9 (2009).............................................................................. 15

N.Y. LABOR LAW § 652.1 (2009).............................................................................. 14

N.Y. LABOR LAW § 652.4 (2009).............................................................................. 10

12 NYCRR § 137-3.4(a) (2009) ................................................................................ 15

12 NYCRR §§ 137-1 to 137-3 (2009) ....................................................................... 11

### **Other Authorities**

N.Y. D.O.L. Opinion Letter RO-09-0063 (Sept. 22, 2009).............................................. 10

N.Y. D.O.L. Opinion Letter RO-07-0104 (Oct. 26, 2007) .............................................. 15

1 LES A. SCHNEIDER & J. LARRY STINE, WAGE & HOUR
 LAW: COMPLIANCE & PRACTICE § 8.27 (Thomson Reuters 2013) ............................ 6

**PRELIMINARY STATEMENT**

The big money in this case turns on the tip credit. Section 203(m) of the FLSA permits a tip credit where the "employee has been informed by the employer of the provisions of this subsection." 29 U.S.C. § 203(m). If Home on 8th informed Plaintiffs of § 203(m), Plaintiffs' FLSA damages could be under $1,000 depending on how fact issues on the hours worked are resolved. If not, Plaintiffs' FLSA damages could run into the hundreds of thousands of dollars. Given these stakes, the parties should identify persuasive authority and analysis supporting their respective positions on whether, given this record, Home on 8th informed Plaintiffs of § 203(m). Henry Li did that by citing eight decisions supporting his propositions of law that an employee is "informed" of § 203(m) where his employer (1) tells him when hired that his wage will be tips and the employer's payments or (2) posts a governmental minimum wage notice. Plaintiffs, in contrast, devote two scant paragraphs to this critical issue. One of the two cases they cite, *Solis v. Yang*, 345 F. App'x 35 (6th Cir. 2009), is inapposite. The other authority, *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011), should not be followed because it (a) creates new law; (b) is not directly supported by any authority to which it cites; (c) acknowledges it conflicts with other authorities; and (d) produces results contrary to the FLSA's express language.

The small money in this case involves factual issues about Plaintiffs' hours. These turn on credibility. Plaintiffs' direct testimony on these issues should not be accepted because Plaintiffs recanted and/or contradicted that testimony on cross.

**ARGUMENT**

**I.**

**THE TIP CREDIT**

**A.     The Facts on the Tip Credit**

Henry Li identified evidence supporting the findings that (1) Plaintiffs were told when hired their wage would be tips and payments from Home on 8th; and (2) minimum wage notices were posted on the wall leading to the basement through mid-2009. *See* Def. Mem. at 2-3.

Plaintiffs dispute the first fact[1] but cite no evidence contradicting Plaintiff Lin's testimony that he was told when hired his monthly wage would be a minimum of $2,100 in tips and $700 from Home on 8th for a total of $2,800, or Plaintiff He's testimony that he was told when hired his monthly wage would be tips and $700 a month from Home on 8th.[2]

Plaintiffs dispute the second fact that minimum wage notices were posted, despite acknowledging that (1) Henry Li testified minimum wage notices were "posted at the restaurant throughout Plaintiffs' employment"; and (2) Plaintiffs admitted they "did observe some English-language only notices on the wall at the top of the stairs going to the basement," Pls. Mem. at 9, which corroborates the location identified by Henry Li.  The question presented is whether any of the notices Plaintiffs admit observing were minimum wage notices.  Plaintiffs say they do not know what the notices were.  Henry Li testified at least one notice was a minimum wage notice.  Because that is all the evidence in this record, it compels the finding that Home on 8th posted a governmental minimum wage notice.  Plaintiffs appear to argue that Henry Li's testimony should be ignored because Home on 8th did not preserve and produce the out-of-date notice that was posted before this lawsuit.  *See* Pls. Mem. 9-10.  It is not reasonable to infer, based on this failure to preserve, that Henry Li lied under oath.  Unlike Plaintiffs, Henry Li was credible and forthright, as illustrated by his conceding many facts against his interests.[3]  Consequently, Li's uncontroverted testimony about the posted notices, the location of which was corroborated by Plaintiffs, should be accepted as fact.

---

[1]     *See* Pls. Mem. at 18 ("Even if Defendant had separately informed Plaintiffs that they would earn tips -- which he did not --- . . . .").

[2]     *See* Def. Mem. at 2 n.2.

Plaintiffs quote Henry Li's deposition testimony stating he does not recall his specific conversations with Wei or Lin about their wages when they were hired, *see* Pls. Mem. at 11, but Li said the same thing at trial.  *See* Tr. at 299:5-8, 299:16-20.  Even though Henry Li did not recall these specific conversations, Li testified he believed Lin, Wei, and He were informed of their wages when hired because it was Li's practice to meet each delivery worker when hired and make sure they knew their wage.  *See* Tr. at 299:21-301:7.  Li further testified that although he did not recall these specific conversations, he knows he told Plaintiffs their monthly wage would be a minimum of $2,100 in tips and $700 from Home on 8th.  *See* Tr. at 301:12-302:10.

[3]     For example, Henry Li conceded (1) not recalling the dates Plaintiffs started work, *see* Tr. at 298;6-19; (2) not recalling his specific conversations with Plaintiffs Lin, He, and Wei when they were hired, s*ee* Tr. at 299:5-20; (3) not telling Plaintiffs specifically that Home on 8th was taking a tip credit, *see* Tr. at 308:11-15; and (4) not being aware of New York's spread of hours law before this lawsuit.  *See* Tr. at 325:3-5.

In contrast, Plaintiffs' testimony was not credible on a host of issues.  *See* Def. Mem. at 5-10.

### B. <u>The Law on the Tip Credit</u>

Henry Li's posttrial memorandum cites eight district court decisions, two affirmed by circuit courts, supporting his legal propositions that an employer "informs" an employee of § 203(m) by (1) telling the employee when hired his wage will be tips and the employer's payments or (2) posting a minimum wage notice.[4]

Plaintiffs dispute Li's legal propositions and cite *Solis v. Yang*, 345 F. App'x 35 (6th Cir. 2009); and *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011). *See* Pls. Mem. at 17-18. But those two cases do not provide persuasive reasons for rejecting Li's legal propositions and the authorities directly supporting them.

#### 1. Telling an Employee his Wage Will Be Tips and the Employer's Payments

Plaintiffs claim both *Solis v. Yang* and *Copantitla* provide that § 203(m)'s "inform" element is not met by telling an employee his wage will be tips and the employer's payments.

*Solis v. Yang* is inapposite because, unlike here, the employees were told they would not receive any pay from the employer. In that action, the district court found "[t]he undisputed evidence is that Defendants told the employees that they would be working for 'tips only.'" *Chao v. Yang*, No. 05-2563, 2007 WL 7209596, at *3 (W.D. Tenn. Aug. 13, 2007), *aff'd sub nom.*, *Solis v. Yang*, 345 F. App'x 35 (6th Cir. 2009). The court also noted the employees were paid $200 a few times when they did not earn the tips promised. *See id*. On those facts, the district court concluded § 203(m)'s "inform" element was not met. *See id*.

---

[4] *See* Def. Mem. at 12-14. These eight decisions are not the universe of cases supporting these propositions. *See, e.g., Giuffre v. Mary Lake Lodge, LLC*, 12-cv-00377, 2012 WL 4478806, at *5 (D. Colo. Sept. 28, 2012) ("MLL contends that, since 2007, it has displayed posters at the Wait Station of the restaurant issued by the Colorado Department of Labor and Employment indicating the applicable minimum wage, including that for 'tipped employees' subject to a tip credit. . . . Although plaintiff contends that he was not specifically told that he would be paid a lower hourly wage than the applicable minimum wage in light of his receipt of tips, the poster outlines the minimum wage for tipped employees. Plaintiff does not dispute that this poster was displayed at the Wait Station . . . . Plaintiff avoids the question of whether, via the poster, MLL supplied him with adequate information regarding the tip credit. However, his failure to dispute the facts regarding the display of the poster do not allow him to survive summary judgment.") (citation omitted); *Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1191 (D. Colo. 2012) (granting employer's motion for summary judgment on entitlement to tip credit; "In this case, while Plaintiff asserts that Defendants did not directly notify him of their intent to take the tip credit against his minimum wages, he does not dispute the evidence that he knew of the policy by virtue of his own preparation of tip-pooling paperwork. In addition, he does not dispute the fact that Defendants complied with the requirement of the State of Colorado of posting of certain information in the form of 'Minimum Wage Order Posters', and that these posters at the workplace contained the information about the tip credit.").

Plaintiffs do not mention the district court decision affirmed by *Solis v. Yang* because it shows the facts in that action are distinguishable from both this action and the line of cases cited by Li. Instead, Plaintiffs quote the following passage from the circuit court:

> Although in this case Tasty Buffet informed its employees that their pay would consist almost exclusively of tips, it did not discuss its minimum wage obligation or explain that it was applying a tip credit against that obligation. As a result, Tasty Buffet failed to meet the statutory notice requirement for receiving tip credit, and the district court did not err in disallowing an offset on this basis.

Pls. Mem. at 17-18 (quoting *Solis v. Yang*, 345 F. App'x at 38). The quoted passage misstates the district court's finding that the "undisputed evidence" is the employees were told "they would be working for 'tips only.'" *Chao v. Yang*, 2007 WL 7209596, at *3. The quoted passage then comments on what the employer did not do, but those comments do not provide that an employer satisfies §203(m)'s "inform" element only if it "discuss[es] the minimum wage obligation or explain[s] that it was applying a tip credit against that obligation." Nor is it reasonable to infer that because doing so contradicts the two cases cited in the circuit court's discussion of the tip credit: *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998); and *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319 (1st Cir. 1992).

*Kilgore* nowhere provides that an employer must discuss or explain the tip credit. To the contrary, *Kilgore* explicitly states an employer "need not necessarily 'explain' the tip credit," *Kilgore*, 160 F.3d at 298; and it implies that an employer need not "discuss" anything with the employee, because *Kilgore* affirmed summary judgment granted to an employer based on evidence that the employee was provided with "new employee materials" containing a piece of paper stating the employer's tip policy which quotes § 203(m) and provides "tips will be used as a credit against the minimum wage." *Id.*, 160 F.3d at 299.

Similarly, *Tango's Rest., Inc.* nowhere provides that an employer must discuss or explain the tip credit. *Tango's Rest., Inc.* held the district court committed reversible error by inferring the employer qualified for the tip credit from the fact the employees were willing to work for $2.95 an hour. *See Tango's Rest., Inc.*, 969 F.2d at 1323. There was no evidence about what, if

4

anything, the employer communicated to the employees. *See id.*, 969 F.2d at 1322-23. The only evidence on this issue was the employees' testimony that they were not told "about either the minimum wage or Tango's intention to treat tips as wages." *Id.*, 969 F.2d at 1322. As such, *Tango's Rest.* merely provides that an employer cannot qualify for the tip credit without evidence of its compliance with § 203(m).

Accordingly, *Solis v. Yang*, along with *Kilgore* and *Tango's Rest., Inc.*, do not conflict with Li's authorities providing that an employer informs an employee of § 203(m) by telling the employee his wage will be tips and the employer's payments.

*     *     *

*Copantitla* found that telling an employee his wage would be "part hourly wage, part tips" does not satisfy § 203(m)'s "inform" element because it does not notify the employee of the employer's intention to take a tip credit. *Copantitla*, 788 F. Supp. 2d at 288. *Copantitla*, however, should not be followed because it is not good law.

*Copantitla* cites five authorities as purported support for its proposition of law, *see id.*, but not one provides that an employer fails to qualify for the tip credit by telling an employee his wage will be tips and the employer's payments. *Copantitla* cites *Solis v. Yang*, *Kilgore*, and *Tango's Rest., Inc.*, but those cases, as shown above, do not provide that telling an employee his wage will be tips and the employer's payments fails to "inform" the employee of § 203(m). *Copantitla* also cites *Reich v. Chez Robert, Inc.*, 28 F.3d 401 (3d Cir. 1994), but that case reversed the district court for reducing a minimum wage award to account for tip income, notwithstanding that the tip credit did not apply. *See Reich v. Chez Robert, Inc.*, 28 F.3d at 403-04. *Chez Robert* did not discuss why the district court found that the tip credit inapplicable, and it nowhere provides that an employer does not qualify for the tip credit by telling an employee his wage will be tips and the employer's payments. Finally, *Copantitla* cites "1 Wage and Hour Law § 8:27," but the parenthetical *Copantitla* attributes to that authority is inapposite for it addresses an employee's knowledge rather than what must be communicated by an employer. Moreover, § 8.27 of that authority, entitled "Tip Credit -- Inform employees of tip credit,"

nowhere provides that telling an employee his wage will be tips and the employer's payments is insufficient.  *See* 1 LES A. SCHNEIDER & J. LARRY STINE, WAGE & HOUR LAW:  COMPLIANCE & PRACTICE § 8.27, at 8-75 to 8-76 (Thomson Reuters 2013).

Although no authority cited by *Copantitla* states or implies that an employer fails to qualify for the tip credit where it tells an employee his wage will be tips and the employer's payments, *Copantitla* acknowledges a decision rejecting its statement of law:  *Rudy v. Consolidated Rest. Cos*., 08-CV-0904, 2010 WL 3565418 (N.D. Tex. Aug. 18, 2010).  *See id*., 788 F. Supp. 2d at 288.  *Copantitla* attacks *Rudy*'s legitimacy by observing that it purports to rely exclusively on *Kilgore* as support for its statement of law.  *See id*. 788 F. Supp. 2d at 288 n.14.  *Copantitla* correctly observes that *Kilgore* "did not hold that explaining that an employee would make $2.15/hour plus tips and that the employee would participate in a tip pool was sufficient notice."  *Id*.  But the converse is equally true, making *Copantitla* susceptible to same attack:  *Copantitla* cites *Kilgore* and other sources for its proposition of law, but not one holds, provides or implies that telling an employee his wage will be tips and the employer's payments is insufficient to qualify for the tip credit.

In sum, *Copantitla* creates new law that finds no basis in any authority to which it cites.  The better rule of decision lies with the multiple authorities conflicting with *Copantitla*.[5]  Where an employee is told his wage will be tips and the employer's payments, the employee is informed his employer is treating tips as part of his wage.  That notice is as explicit as, and more informative than, § 203(m) itself or an employer's statement that "it is taking a tip credit."  Section § 203(m)'s express language contemplates more than handing § 203(m) to an employee or posting § 203(m):   It contemplates the situation presented by this record where an employee is told his wage will be tips and the employer's payments.

### 2. Posting a Minimum Wage Notice

Plaintiffs cite only *Copantitla* to support their argument that § 203(m)'s "inform" element is not met by a posted minimum wage notice.  *See* Pls. Mem. at 17-18.  *Copantitla* is not

---

[5]     *See* Def. Mem. at 12-13.

persuasive authority because (1) it cites no authority standing for its proposition, (2) it conflicts with other decisions, and (3) its reasoning conflicts with the FLSA's express language.

*Copantitla* makes the sweeping pronouncement that an employer's posting of governmental minimum wage notice can never, standing alone, satisfy the "inform" element of the tip credit. *See Copantitla*, 288 F. Supp. 2d at 289. *Copantitla* cites no authority for this pronouncement, but it acknowledges two decisions rejecting it: *Pellon v. Business Representation Int'l, Inc.*, 528 F. Supp. 2d 1306 (S.D. Fla. 2007), *aff'd*, 291 F. App'x 310 (11th Cir. 2008); and *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707 (N.D. Ind. 1998). *See id.*, 788 F. Supp. 2d at 289. *Copantitla* makes minimal effort to distinguish these decisions; it simply says it "is not persuaded by the reasoning" in *Pellon*. *Id.*, 788 F. Supp. 2d at 289 n.15.

Section § 203(m)'s express language provides that an employer qualifies for the tip credit where the "employee has been informed by the employer of the provisions of this subsection." 29 U.S.C. § 203(m). Some courts state in dictum that this statutory languages means the employer must inform the employee of its intention to take the tip credit. *E.g.*, *Reich v. Chez Robert, Inc.*, 28 F.3d at 403-04; *Tango's Rest., Inc.*, 969 F.2d at 1322. *Copantitla* relies on this dictum (and not the statutory language) to find that a governmental minimum wage notice prominently posted can never convey an employer's intention to take the tip credit. This reasoning is faulty because its logical conclusion is that posting § 203(m) itself, or handing § 203(m) to an employee, are likewise insufficient. These results are directly at odds with § 203(m)'s express language. Just as an employer "informs" an employee of the provisions of § 203(m) by handing § 203(m) to an employee or posting § 203(m),[6] the employer similarly "informs" the employee by posting a governmental minimum wage notice, which contains information more accessible than § 203(m) itself.

---

[6]   *See* Pls. Mem. at 17 ("An employer bears the burden of showing that he has satisfied the notice requirement of the tip credit provision by, 'for example, providing employees with a copy of § 203(m) . . . .'") (quoting *Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048, 2007 WL 313483, at *18 (S.D.N.Y. Feb. 1, 2007)).

7

In sum, Plaintiffs' argument that an employer fails to qualify for the tip credit where it posts a governmental minimum wage notice rests on one case -- *Copantitla* -- that creates new law conflicting with the FLSA's express language and other court decisions.[7]

### C.     Plaintiffs' Miscellaneous Arguments About the FLSA's Tip Credit and New York's Tip Allowance

**1.     Retroactive Tip Credit Is Not Sought**.  Plaintiffs' argument that Home on 8th is not entitled to a retroactive tip credit, *see* Pls. Mem. at 16; is simply a straw man set up to be knocked down.  Henry Li has not argued that the tip credit applies retroactively.  Li does not have to, since Home on 8th (1) told Plaintiffs when hired their wage will be tips and payments from Home on 8th, and (2) posted minimum wage notices at all times.  *See* Def. Mem. at 2-3.

**2.     English Language Notices Are Sufficient**.  Plaintiffs point to one case's dictum to argue that the English minimum wage notices posted by Home on 8th are insufficient, *see* Pls. Mem. at 17, but Henry Li has already distinguished that dictum.  *See* Def. Mem. at 14 n.45.  The dictum conflicts with § 203(m) because the tip credit turns on what the employer conveys and not on what, if anything, the employee understands.[8]

**3.     Home on 8th's Intent To Take the Tip Credit**.  Plaintiffs' argument that Home on 8th cannot claim the tip credit because it did not "inform[] itself" about, or "form[] an intent to take[,] the tip credit," *see* Pls. Mem. at 18; is contrary to fact and law.  It is contrary to fact because there is no evidence negating Home on 8th's knowledge or intent to take the tip credit. Tellingly, Plaintiffs neglect to cite anything.  Plaintiffs' argument is contrary to law because § 203(m) specifies two requisites for the tip credit, *see* Pls. Mem. at 16; and neither focuses on the employer's state of mind.  Plaintiffs cite no authority for their made up proposition.

**4.     Making Calculations or Paying by the Hour Are Not Requirements for the Tip Credit**.  Plaintiffs' argument that Home on 8th cannot claim the tip credit because Li "made

---

[7]     *See* Def. Mem. at 13; note 4, *supra*.

[8]     *See Pellon v. Business Representation Int'l, Inc*., 528 F. Supp. 2d 1306, 1312 (S.D. Fla. 2007) ("Contrary to Plaintiffs' argument, the FLSA does not require a rigorous explanation to employees about how the tip credit works.  In fact, such an explanation would serve no logical purpose. . . . [T]hey do not need to understand how the statutory mechanism applies to their employer.  In fact, 'employee understanding' would be an untenable legal standard in cases such as this one."), *aff'd*, 291 F. App'x 310 (11th Cir. 2008).

8

no attempt to calculate or pay an hourly wage," Pls. Mem. at 16, is contrary to fact and law. It is contrary to fact because Li testified he calculated Plaintiffs' hourly wage and determined it exceeded the minimum wage. *See* Tr. at 305:25-306:2; 306:14-307:24. Plaintiffs cite nothing to the contrary. Plaintiffs' argument is contrary to law because § 203(m) specifies two requisites for the tip credit, *see* Pls. Mem. at 16; and neither is that an employer perform calculations or pay by the hour. Plaintiffs cite no authority for their propositions.

**5. The Failure To Pay the Minimum Tipped Wage Does Not Preclude the Tip Credit**. Plaintiffs claim Home on 8th's failure to pay the minimum tipped wage is "incompatible" with satisfying § 203(m). Pls. Mem. at 16. This unsupported argument is contrary to law: Section 203(m) itself does not provide that paying the minimum tipped wage is a condition precedent to the tip credit, and courts have found an employer is entitled to the tip credit even where pays less than the minimum tipped wage.[9]

**6. Plaintiffs' "Alternative" Argument About Non-Tipped Duties**. Plaintiffs' "alternative" argument that the tip credit does not apply for the hours when Plaintiffs distributed menus and packed utensils, *see* Pls. Mem. at 19-20; fails for the reasons set forth in Henry Li's posttrial memorandum. *See* Def. Mem. at 14-15. Simply put, Plaintiffs admitted they earned tips while distributing menus,[10] which contradicts their Memorandum's unsupported claim to the contrary.[11] Plaintiffs' argument is also contrary to law because it confuses an employee in a tipped "occupation" performing related non-tipped duties, with an employee having two "occupations," one of which is tipped. *See* Def. Mem. at 15 n.46.

---

[9] *See Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 819 (N.D. Ill. 2011) ("Section 216(b) limits damages against an employer who violates § 206 or § 207 of the Act by failing to pay the appropriate minimum wage or overtime to 'the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages.' Neither § 216(b) nor any other section of the Act prescribes loss of an otherwise valid tip credit as the consequence of or a remedy for a § 206 or § 207 violation. The plaintiffs' contention that such a violation results of its own force in what is effectively a forfeiture of the tip credit cannot be given credence unless we are to ignore basic principles of statutory construction."); *Perez v. Palermo Seafood, Inc.*, 548 F. Supp. 2d 1340, 1348 (S.D. Fla. 2008) ("The Court finds that the defendants are entitled to the tip credit. . . . The Court does find that the defendants violated the minimum wage and overtime requirements of the FLSA."), *aff'd*, 302 F. App'x 905 (11th Cir. 2008).

[10] *See* Tr. at 93:2-7; 95:14-20 (Wei); 146:10-20 (Lin).

[11] *See* Pls. Mem. at 4 ("Therefore, they did not earn tips during those 4 hours.").

9

7.      **Wage Statements Are Not Required for the Tip Allowance**.  Plaintiffs' claim that New York's tip allowance is unavailable because they were not given statements of allowances as required by 12 NYCRR § 137-2.2, *see* Pls. Mem. at 18, asks this Court to extend bad law from *Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706 (S.D.N.Y. 2007); and *Copantitla*.

*Lu* does not mention a statement of allowances or § 137-2.2.  *Lu* held an employer was not entitled to summary judgment on a § 196-d claim where there was evidence the employer took money from the tip pool to pay some employees' salaries.  *See Lu*, 503 F. Supp. 2d at 710-11.  Immediately thereafter, *Lu* stated "this separate violation of § 196-d would render [the employer] ineligible to receive a tip credit under New York law." *Id.*, at 711.  *Lu* cites no authority for this statement.

*Copantitla* held on summary judgment that an employer was not entitled to a tip allowance where the employer (1) did not comply with §§ 137-2.1 and 2.2, and (2) violated Labor Law § 196-d.  *See Copantitla*, 788 F. Supp. 2d at 290-91.  *Copantitla* cites no authority for the first ground and only *Lu* for the second ground.

*Lu* and *Copantitla*'s unsupported interpretations of New York law conflict with the Labor Law's express provisions and the regulations thereunder during the relevant period.  Labor Law § 651.7 provides that an employee's wage may include allowances for gratuities, and Labor Law § 652.4 specifies the minimum cash wage for "food service workers."  N.Y. LABOR LAW §§ 651.7, 652.4 (2009).  Neither statute conditions the tip allowance on the compliance with any other statute or regulation.  Labor Law § 196-d provides that an employer may not accept or receive any gratuity given to an employee, but it states that its violation does not affect an employer's right to take an allowance for tips,[12] which is confirmed by a Department of Labor opinion letter.[13]  Just like the Labor Law, the relevant Restaurant Industry regulations did not

---

[12]     *See* N.Y. LABOR LAW 196-d (2009) ("Nothing in this subdivision shall be construed as affecting the allowances from the minimum wage for gratuities . . .").

[13]     *See* N.Y. D.O.L. Opinion Letter RO-09-0063 (Sept. 22, 2009) ("[A] violation of Section 196-d does not prevent an employer from paying a restaurant server the food service worker minimum wage.").

10

condition the tip allowance on compliance with anything therein. *See* 12 NYCRR §§ 137-1 to 137-3 (2009).

In sum, Plaintiffs and the two authorities they cite do not point to any statute or regulation providing that noncompliance with § 137-2.2 precludes the tip allowance.

## II.

## PLAINTIFFS' HOURS

Plaintiffs assert the Court should accept what they say about their hours since Home on 8th failed to maintain time records. *See* Pls. Mem. at 13. This misstates the law, for an employee's testimony can be accepted only if it is credible and not rebutted.[14] Here, Plaintiffs' direct testimony is not credible because it is contradicted by Plaintiffs' testimony on cross-examination and other evidence. *See* Def. Mem. at 5-10.

**Start Time on Weekdays**. Plaintiffs rely exclusively on their testimony to argue they began work at 10:30 a.m. on the weekdays they did not distribute menus. *See* Pls. Mem. at 3, 5.[15] Henry Li has shown this testimony is not credible because Wei admitted no one told him to report before 11:00 a.m. and there was no work to do before 11:00 a.m., *i.e.*, there was no need for deliveries before the kitchen started cooking at 11:00 a.m., and there was no need to prepare utensil packages as all three workers had ample time throughout the day for this 12-minute per worker per day task. *See* Def. Mem. at 5 & nn. 19-22.[16]

**Meal Breaks**. Plaintiffs claim they "were expected to be available for deliveries, if needed," during their meal breaks, Pls. Mem. at 5-6; but they fail to cite any evidence bearing on

---

[14] *See* Def. Mem. at 15 & nn. 48-50.

[15] Plaintiffs incorrectly state that Li "does not genuinely dispute that Plaintiffs reported at 10:30 a.m." Pls. Mem. at 5. Li did dispute Plaintiffs' claim of starting work at 10:30 a.m. in the transcript lines cited by Plaintiffs and those that immediately follow. *See* Tr. 293:3 ("Did we instruct them to work [at 10:30]? No."); 293:16 ("I did not schedule them to do utensil packages at 10:30 to 11:00."). To the extent Plaintiffs refer Li's statement that he saw a worker "show up at 10:30 a.m. on occasions," Tr. 293:2-3, that does not show that Plaintiffs were instructed to report at 10:30 a.m. or that they actually did any work on the occasions when they arrived early: "Mostly what I see them do, is they come in and they either read the newspaper or they eat breakfast, which is fine, I don't have a problem with that, because they're not scheduled to work at that time." Tr. at 277:20-23.

[16] Plaintiffs' reference to work "suffered or permitted" cuts against them because, as Plaintiffs acknowledge, this doctrine applies only where the employer knows work was being performed. *See* Pls. Mem. at 14. Here, the evidence establishes that Home on 8th believed Plaintiffs did no work before 11:00 a.m. *See* note 15 and text accompanying note 16, *supra*.

11

Home on 8th's expectations.[17] The evidence on what Home on 8th expected is Henry Li's testimony that (1) Plaintiffs were not required to work during their meal breaks, *see* Tr. at 279:14-17; 280:17-19; and (2) he never told Plaintiffs to stop a meal break to make a delivery, which was corroborated by Wei.[18]

The foregoing evidence showing that Home on 8th did not "expect" Plaintiffs to work during meal breaks, along with the following evidence, renders incredible Plaintiffs' direct testimony that they "remained available to make deliveries" during meal breaks:

- Plaintiff He admitted he always had enough time to eat;[19]

- Lin and Wei corroborated Li's testimony that when the three delivery workers were all eating while orders were ready, Li or his brother reminded Plaintiffs they should rotate eating so at least one of them could make deliveries without interrupting the meal break;[20] and

- Li testified that he or his brother made deliveries themselves when all three delivery workers were eating at the same time. *See* Tr. at 281:23-282:14.

As for the duration of their meal breaks, Plaintiffs say nothing: Their memorandum says they "generally took about 15 about minutes to eat," Pls. Mem. at 6; but it does not say how long they took for their breaks. Consequently, Li's testimony that Plaintiffs took 30 minutes for the breaks is uncontroverted. *See* Def. Mem. at 5-6 & n.23.

In sum, the evidence shows Home on 8th did not expect Plaintiffs to work during their 30-minute meal breaks. Accordingly, Plaintiffs did not carry their burden[21] of showing they spent their meals breaks primarily for the benefit of Home on 8th.[22]

---

[17]  Plaintiffs cite to Stip. Fact ¶ 32 and Pls. Decls. ¶10, but neither talks about Home on 8th's expectations: The former says Home on 8th provided Plaintiffs with two meals a day, and the latter says "I ate my meals in the basement, where I remained available to make deliveries" and "[s]ometimes my meal was interrupted when I had to make a delivery."

[18]  *See* Tr. at 279:14-280:6; 280:17-23; 282:5-10; 403:12-16; 77:1-19 (Wei).

[19]  *See* Tr. at 280:1-6; 286:2-11; 217:12-19 (He).

[20]  *See* Stip. Fact ¶ 16; Tr. at 281:23-282:14; 297:4-13; 402:19-403:11; 79:21-24 (Wei); 127:6-12 (Lin).

[21]  *See Myracle v. General Elec. Co*., No. 92-6716, 1994 WL 456769, at *4 (6th Cir. Aug. 23, 1994) ("[I]t is the employee who bears the burden of proving that he or she performs substantial duties and spends his or her meal time predominantly for the employer's benefit."); *cf. Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946) ("employee . . . has the burden of proving that he performed work for which he was not properly compensated.").

[22]  *See* Def. Mem. at 16 n.51; *see also Myracle v. General Elec. Co*., 1994 WL 456769, at *6-7 (affirming conclusion of law that 20-minute meal breaks are non-compensable).

**He's Hours After Menu Distribution Ceased**.  Plaintiffs rely exclusively on He's direct testimony to argue that from April, 2009 to September 20, 2009, He stated at 10:30 a.m. and worked from 3:00 p.m. to 6:00 p.m. every weekday.  *See* Pls. Mem. at 3, 5, 7-8.  Henry Li has shown this direct testimony is not credible because He testified on cross that menu distribution ceased in April, 2009, which caused his hours to change:

> Q:    How did your schedule change when Home On 8th told you to stop distributing menus?
>
> A:    Two people would rotate and one would come in at 11:00, the other one would come in at 12:00 o'clock.
>
>        *    *    *
>
> Q:    And the person that came in at 11:00, between 3:30 and 6:00 they didn't work, correct?
>
> A:    Correct.[23]

**He's Hours After September 20, 2009**.  Plaintiffs erroneously claim "[t]he hours Plaintiff He worked during his last three months of employment are set forth in Stipulations [sic] ¶ 44."  Pls. Mem. at 8.  The cited paragraph, however, merely provides that it reflects the hours He reported to Home on 8th.  *See* Stip. Fact ¶ 44.  Henry Li has shown that the hours He reported are inaccurate and inflated.  *See* Def. Mem. at 6-7.

**Lin's Dates of Employment Before his Leave of Absence**.  Plaintiffs rely exclusively on Lin's direct testimony to argue he started on March 1, 2007 and began a leave of absence on October 22, 2007.  *See* Pls. Mem. at 4.  Henry Li has shown this testimony is not credible because it was contradicted by Wei and Lin on cross.  *See* Def. Mem. at 8.

**Plaintiff Li's Hours**.  Plaintiffs rely exclusively on Plaintiff He's testimony to claim Plaintiff Li worked from September 1, 2008 to November 16, 2008.  *See* Pls. Mem. at 4, 7.  Plaintiff He, however, was in China during this period, *see* He Decl. ¶ 2; so his testimony is not competent to meet the initial burden under the *Mt. Clemens* burden shifting rules.

---

[23]    *See* Def. Mem. at 6.

# III.

# CALCULATING PLAINTIFFS' DAMAGES

**1. FLSA Minimum Wage Damages Are Calculated Based on the Federal Minimum Wage**

Plaintiffs erroneously claim "the FLSA requires employers to pay employees at the greater of the federal or state minimum wage." Pls. Mem. at 11 n.6. Plaintiffs cite § 218(a), but that merely provides the FLSA does not preempt state law, with the consequence that the FLSA does not excuse noncompliance with state law.[24] This consistent with Plaintiffs' parenthetical quotation: "The Federal minimum wage was intended to be a floor, not a ceiling." Pls. Mem. at 11 n.6 (citing *Cao v. Wa Liang Ye Rest. Inc.*, 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010)).

Consequently, Plaintiffs' FLSA minimum wage claim is calculated using the federal minimum wage,[25] and Plaintiffs' New York minimum wage claim is calculated using the state minimum wage, which New York law specifies as the greater of the state minimum wage or the federal minimum wage. *See* N.Y. LABOR LAW § 652.1 (2009). Plaintiffs may take advantage of the statute offering the greater recovery, but they many not recover under both where they offer the same relief. *See* Def. Mem. at 22 n.71.

---

[24] *See* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . . No provision in this chapter shall justify any employer in reducing the wage paid by which is in excess of the applicable minimum wage under this chapter.").

[25] *See* Def. Mem. at 16 n.55 (collecting cases using federal minimum wage and not higher New York minimum wage to calculate FLSA damages). Some courts, however, have interpreted § 207 to find that the "regular rate" for overtime hours is the greater of the federal minimum wage or the state minimum wage. *See Pereira v. J. Sisters Hair Care Prods., Inc.*, 08-cv-4537, slip op. at 4 (S.D.N.Y. Apr. 4, 2010) ("The FLSA requires a minimum wage of $5.85 per hour during a plaintiff's employment, 29 U.S.C. § 206 (2008), and overtime compensation 'at a rate not less than one-half the regular rate' for each hours in excess of 40 hours per week. 29 U.S.C. § 207(a)(1) (2008). However, if the state minimum wage is higher than the federal minimum wage, the federal overtime rate is calculated at 1.5 times the state minimum wage. 29 C.F.R. § 778.5 (2010)."), *adopted by*, 2010 WL 2194807 (S.D.N.Y. June 1, 2010); *Pineda-Herrera v. Da-Ar-Da, Inc*., 09-CV-5140, 2011 WL 2133825, at *3-4 (E.D.N.Y. May 26, 2011) ("The FLSA requires, for each hour worked in excess of 40 per week, compensation 'at a rate not less than one and one-half times the regular rate at which [she was] employed.' 29 U.S.C. § 207(a)(1). . . . Federal regulations . . . clarify that 'the words "regular rate at which he is employed" as used in section 7 [i.e., 29 U.S.C. § 207] must be construed to mean the regular rate at which he is lawfully employed.' 29 C.F.R. § 778.5. . . . Accordingly, for each hour worked in excess of 40 per week, each plaintiff is due overtime compensation under the FLSA in the amount of one and one-half times $7.15, the lawful regular rate applicable under state law during the relevant period.") (citation omitted).

### 2. Plaintiffs Were "Food Service Workers" Under New York Law

Plaintiffs argue they were not "food service workers" under New York law, *see* Pls. Mem. at 15 n.15; but they neglect to discuss that term's definition, which is:

> "Food service worker" means any employee primarily engaged in the serving of food or beverages to guests, patrons or customers in the hotel or restaurant industries, including, but not limited to, wait staff, bartenders, captions and bussing personnel; and who regularly receive tips from such guests, patrons or customers.

N.Y. LABOR LAW § 651.9 (2009); 12 NYCRR § 137-3.4(a) (2009). Here, Plaintiffs were employed in the restaurant industry and regularly received tips from the restaurant's customers. The only issue for the Court is whether delivering food is a subset of "serving" food. This is an issue of first impression that no state or federal court has answered. Judge Marrero came close in finding that a delivery worker could be classified as either a "food service worker" or "service employee." *See* Def. Mem. at 18 n.59. This issue is not resolved by the Department of Labor opinion letter cited by Plaintiffs because that (a) concerns the delivery of "prepared food"; (b) is limited to the facts presented which are not fully disclosed, and (c) merely represents the Department of Labor's interpretation. *See* N.Y. D.O.L. Opinion Letter RO-07-0104, at 1-2 (Oct. 26, 2007).

### 3. Liquidated Damages

Henry Li has shown that Plaintiffs are not entitled to liquidated damages under the FLSA or New York law because the minimum wage violations were not willful and Li acted in good faith. *See* Def. Mem. at 19-20.

Plaintiffs' claim that they are entitled to recover liquidated damages under both the FLSA and New York law, *see* Pls. Mem. at 22, is contrary to substantial authority within this Circuit.[26]

---

[26] *See Fu v. Pop Art Int'l Inc.*, 10 Civ. 8562, 2011 WL 4552436, at *5 (S.D.N.Y. Sept. 19, 2011); *Pineda-Herrera v. Da-Ar-Da, Inc.*, 2011 WL 2133825, at *5; *Yin v. Kim*, 07 CV 1236, 2008 WL 906736, at *7 (E.D.N.Y. Apr. 1, 2008); *Jin v. Pacific Buffet House, Inc.*, 06-CV-579, 2009 WL 2601995, at *9 (E.D.N.Y. Aug. 24, 2009); *Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048, 2007 WL 313483, at *28-29 (S.D.N.Y. Feb.1, 2007).

## **CONCLUSION**

For the reasons set forth above and in his posttrial memorandum, Defendant Henry Li respectfully requests this Court to enter judgment in his favor and against Plaintiff Lai Li, and enter judgment against him and in favor of Plaintiff Lin in the amount of $11,374.30, Plaintiff He in the amount of $9,312.45, and Plaintiff Wei in the amount of $11,354.16.

Dated:  December 6, 2013  　　　　　　　　Gregg H. Kanter Law Office LLC
　　　　 Philadelphia, PA

　　　　　　　　　　　　　　　　　　　　By: ____/s/ Gregg Kanter_____
　　　　　　　　　　　　　　　　　　　　　　 Gregg H. Kanter
　　　　　　　　　　　　　　　　　　　　2222 Pine Street
　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　　(917) 494-5317
　　　　　　　　　　　　　　　　　　　　greggkanter@yahoo.com
　　　　　　　　　　　　　　　　　　　　Attorney for defendant Henry Li