**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JIAN F. HE, LAI LEE, YONG D. LIN, LIN H. WEI,

                      Plaintiffs,

          -against-                    Case No. 09-CV-5630 (GBD)

HOME ON 8th CORP. (d/b/a Home on 8th), HENRY LI, JOHN DOE (A/K/A MANAGER LI),

                      Defendants.

---

## PLAINTIFFS' POST-TRIAL REPLY MEMORANDUM OF LAW

Gillian Costello (GC 0151)
SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, NY 10019
Tel: (212) 765-2100
Fax: (212) 541-5429

*Attorneys for Plaintiffs*

December 6, 2013

## TABLE OF CONTENTS

Pages

**PRELIMINARY STATEMENT** ...................................................................................................1

**ARGUMENT** ................................................................................................................................1

I.   Defendant Is Not Entitled to Retroactive Application of the Tip Credit ......................1

II.  Defendant Cannot Retroactively Deduct Hours Worked By Plaintiffs........................5

      A.  Schedule ................................................................................................................5

      B.  Meal Periods..........................................................................................................6

      C.  Time Off................................................................................................................6

III. Even If Defendant Met the Notice Requirement, He Is Not Entitled to the Tip Credit Because He Assigned Plaintiffs Non-Tipped Duties .............................................7

IV.  Defendant Owes Plaintiffs for Their Bicycle Expenses. ................................................8

V.   Defendant Owes Plaintiffs Spread of Hours Pay. ..........................................................8

VI.  Plaintiff Lai Li Is Entitled to Damages............................................................................9

VII. Defendant Owes Plaintiffs Substantial Overtime Pay...................................................9

VIII. Defendant's Actions Were Willful ..................................................................................9

**CONCLUSION** ...........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Pages**

Cao v. Wu Liang Ye Lexington Rest. Inc.,
   2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010)......................................................................3, 8

Chan v. Triple 8 Palace, Inc.,
   2006 WL 851749 (S.D.N.Y. Mar. 30, 2006)..........................................................................2 n.3

Chan v. Sung Yue Tung Corp.,
   2007 WL 313483 (S.D.N.Y. Feb. 1, 2007)....................................................................................3

Copantitla v. Fiskardo Estiatorio Inc.,
   788 F. Supp.2d 253 (S.D.N.Y. 2011)............................................................................................2

Dong v. CCW Fashion,
   2009 WL 884680 (S.D.N.Y. Feb. 19, 2009),
   Report and Recommendation Adopted, 2009 WL 884668 (Apr. 1, 2009)..............................3

Driver v. Apple Illinois, LLC,
   917 F. Supp.2d 793 (N.D. Ill. Jan. 8, 2013).................................................................................2

Garcia v. Palomino, Inc.,
   738 F. Supp.2d 1171 (D. Kan. 2010)............................................................................................3

Herman v. RSR Sec. Servs., Ltd.,
   172 F.3d 132 (2d Cir. 1999).........................................................................................................10

Mendez v. Radec Corp.,
   232 F.R.D. 78 (W.D.N.Y. 2005)....................................................................................................6

Minnette v. Time Warner,
   997 F.2d 1023 (2d Cir.1993).........................................................................................................9

Myers v. Copper Cellar Corp.,
   192 F.3d 546 (6th Cir.1999)..........................................................................................................7

Nat'l Restaurant Ass'n v. Solis,
   870 F. Supp.2d 42 (D. D.C. 2012), appeal dismissed,
   2012 WL 3244056 (D.C. Cir. Aug. 1, 2012)........................................................................ 2-3 n.4

Pellon v. Bus. Representation Int'l,
   528 F. Supp.2d 1306 (S.D. Fla. 2007),
   aff'd, 291 Fed. Appx. 310 (11th Cir. 2008).................................................................................2, 3

Case 1:09-cv-05630-GBD-MHD Document 78 Filed 12/06/13 Page 4 of 16

Reich v. S. New Eng. Telecommc'ns Corp.,
    121 F.3d 58 (2d Cir. 1997)......................................................................................................6

Thomas v. J.R. Eight, Inc.,
    01-1067, CIV, slip. op. (S.D. Fla. Aug. 30, 2002)..................................................................3

**Regulations**

29 C.F.R. § 531.51 ...........................................................................................................................7

29 C.F.R. § 531.56(e).......................................................................................................................7

29 C.F.R. § 531.59 ...........................................................................................................................7

29 C.F.R. § 531.59(b) .............................................................................................................2 & n.4

29 C.F.R. § 778.104 .........................................................................................................................7

29 C.F.R. § 778.107 .........................................................................................................................9

29 C.F.R. § 778.109 .........................................................................................................................9

29 C.F.R. § 785.11 ...........................................................................................................................5

29 C.F.R. § 785.19 ...........................................................................................................................6

12 N.Y.C.R.R. § 137-1.4 .................................................................................................................3

12 N.Y.C.R.R. § 137-3.3 .............................................................................................................3 n.5

12 N.Y.C.R.R. § 137-3.3(c)........................................................................................................8 n.11

12 N.Y.C.R.R. § 137-3.4 .............................................................................................................3 n.5

**Statutes**

29 U.S.C. § 203(m)................................................................................................................. *passim*

29 U.S.C. § 218(a) ...........................................................................................................................3

**Other Sources**

N.Y. State Dep't of Labor Opinion Letter
    RO-07-0104 (Oct. 26, 2007),
        http://www.labor.ny.gov/legal/counsel/pdf/minimum
        %20wage-generally/ro-07-0104%20-%20tip%20allowance.pdf ................................... 3 n.5

U.S. Dep't of Labor, Field Operations Handbook, Chapter 30,
    ¶ 30d00(e) (Dec. 9, 1988),
        http://www.dol.gov/whd/foh/FOH_Ch30.pdf ....................................................................... 7

## PRELIMINARY STATEMENT

Defendant Henry Li acknowledges that he is liable to Plaintiffs for unpaid minimum wage, overtime, and spread of hours pay. (See Defendant Henry Li's Posttrial Memorandum ("Def.'s Mem.") at 17, 18 & n.60, 21, 22.) His post-trial submission is largely an attempt to minimize his damages by seeking retroactive application of the tip credit on the grounds that Plaintiffs had constructive notice of the provisions of FLSA § 203(m) and by disputing Plaintiffs' compensable hours. Defendant's argument that he took affirmative steps to satisfy the notice requirement and to calculate that Plaintiffs were earning more than the minimum wage rests on revisionist history and misstatements of law.[1]

## ARGUMENT

I.   Defendant Is Not Entitled to Retroactive Application of the Tip Credit.

Defendant claims he is entitled to retroactive application of the "tip credit." (Def.'s Mem. at 11-15.) Under the FLSA, the tip credit "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [§ 203(m)]." 29 U.S.C. § 203(m) (emphasis added). Plaintiffs contend that Defendant did not satisfy this requirement because he never told them he "was taking or would take a tip credit against the minimum wage because [they were] earning or would earn tips." (He Decl. ¶ 4; Wei Decl. ¶ 4; Lin Decl. ¶ 4.) Defendant does not deny these facts. He claims, however, that he posted minimum wage notices and told Plaintiffs when they were hired that their wages were tips and

---

[1] Citations to the trial transcript are designated herein by "Tr.," followed by the applicable page and line numbers. Citations to the Stipulations of Fact are designated by "Stips.," followed by the applicable paragraph numbers. Citations to the transcript of the deposition of Henry Li, excerpts of which were introduced at trial, are designated herein as "Li Depo. Tr.," followed by the applicable page and line numbers. At trial, Plaintiffs testified on direct by declaration, with the exception of Lai Li, who did not testify. Citations to Plaintiffs' declarations are designated herein by "[Plaintiff's name] Decl."

1

payments from Home on 8th.[2] (Def.'s Mem. at 14.) He then revises history to support his claim that Plaintiffs had constructive notice within the meaning of § 203(m). Defendant extracts such theory from a handful of district court cases from other jurisdictions finding that an employer established notice of his reliance on § 203(m) where he distributed or posted notices and informed employees that their pay would consist of tips and wages. (See Def.'s Mem. at 12-14.)

This Court should not adopt the reasoning of the cases cited by Defendant, whose interpretation of the word "inform" renders the notice requirement meaningless.[3] See Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp.2d 253, 288 & n.15 (S.D.N.Y. 2011) (holding that the employer did not satisfy § 203(m) by informing employees they would receive an hourly rate plus tips and posting a minimum wage notice, and expressly rejecting the reasoning of Pellon v. Bus. Representation Int'l, 528 F. Supp.2d 1306, 1310 (S.D. Fla. 2007), aff'd, 291 Fed. Appx. 310 (11th Cir. 2008)—upon which Defendant relies in this case); see also Driver v. Apple Illinois, LLC, 917 F. Supp.2d 793, 802-03 (N.D. Ill. Jan. 8, 2013); 29 C.F.R. § 531.59(b).[4]

---

[2] As noted in Plaintiffs' October 31, 2013 Postrial Memorandum of Law ("Pls.' Mem."), Defendant stated in his deposition that he "most likely" told the workers how much he was going to pay them, but he did not remember. (Pls.' Mem. at 11.) And, when asked if he recalled telling them "anything with regard to wages," he stated "I think the only time there were discussions is when I gave them a raise, if there was, but just not much conversation involved." (Li Depo. Tr. 138:21-139:21.)

[3] Defendant cites Chan v. Triple 8 Palace, Inc., 2006 WL 851749 (S.D.N.Y. Mar. 30, 2006) for the proposition that "inform" does not mean "explain." (Def.'s Mem. at 12 n.41.) However, the Court in Chan also said, "[e]mployers may satisfy [Section 203(m)'s] requirement if they give employees a copy of § 203(m) and inform them that their tips will be used as a credit against the minimum wage as permitted by law." 2006 WL 851749, at *19. Here, Defendant neither provided a copy of § 203(m) nor informed Plaintiffs that their tips would be used as a credit against the minimum wage.

[4] In issuing 29 C.F.R. § 531.59(b), the DOL commented: "The Department has concluded that notice of the specific provisions of [§ 203(m)] is required to adequately inform the employee of the requirements of the tip credit. To the extent that the Sixth Circuit and other courts have reached different results, the Department notes that those courts generally failed to consider the important legislative developments underlying the FLSA's tip credit provisions . . ." 76 Fed. Reg. at 18844. Whether the regulation is retroactive or not—as Defendant contends (Def.'s Mem. at 12 n.41)—is immaterial. It makes clear the DOL's disagreement with the case law cited by Defendant. Moreover, the regulation "closely tracks the statute" and "the final rule does not require employers to do anything other than what they were already obligated to do under section 3(m), which

The cases cited also do not help Defendant because, whereas he paid a monthly wage, the employers in those cases paid an hourly wage, and one that conformed with the statutory minimum for tipped employees in their jurisdictions. See, e.g., Pellon, 528 F. Supp.2d at 1311 (plaintiffs were "informed that their salary would be $2.15 (or more) plus tips and their paychecks informed them of their salary twice a month"); Garcia v. Palomino, Inc., 738 F. Supp.2d 1171, 1178 (D. Kan. 2010) ("Defendants told Plaintiffs that they would make only $2.30/hr"); Thomas v. J.R. Eight, Inc., 01-1067, CIV, slip. op., at *6 (S.D. Fla. Aug. 30, 2002) (plaintiff was "told at the outset he would be paid $2.13 per hour plus tips").

In this jurisdiction, the minimum tipped wage was not $2.13, as claimed by Defendant. (See Def.'s Mem. at 16.) It was $4.85 per hour until July 23, 2009 and $4.90 per hour thereafter. 12 N.Y.C.R.R. § 137-1.4 (as of January 1, 2011, Minimum Wage Orders for the restaurant industry (formerly 12 N.Y.C.R.R. Part 137) were replaced by 12 N.Y.C.R.R. Part 146).[5] Defendant is correct that $2.13 was the minimum tipped wage under the FLSA. However, the FLSA requires employers to pay the greater of the federal or state minimum wage. 29 U.S.C. § 218(a); Cao v. Wu Liang Ye Lexington Rest. Inc., 2010 WL 4159391, at *2 n.2 (S.D.N.Y. Sept. 30, 2010); Chan v. Sung Yue Tung Corp., 2007 WL 313483, at *25 (S.D.N.Y. Feb. 1, 2007); Dong v. CCW Fashion, 2009 WL 884680, at *4 (S.D.N.Y. Feb. 19, 2009), Report and Recommendation Adopted, 2009 WL 884668 (Apr. 1, 2009). Therefore, even if the tip credit applies, Defendant was required to pay no less than $4.85 and $4.90 per hour. He concedes that

---

is 'inform employees of the provisions of [§ 203(m)].'" Nat'l Restaurant Ass'n v. Solis, 870 F. Supp.2d 42, 56 & n.10 (D. D.C. 2012), appeal dismissed, 2012 WL 3244056 (D.C. Cir. Aug. 1, 2012).

[5] This was the minimum wage applicable to "service employees." The New York regulations distinguish between "service employees," who customarily receive tips and "food service workers," who are defined as any employee who is "primarily engaged in the serving of food or beverages to guests, patrons or customers in the hotel or restaurant industries." 12 N.Y.C.R.R. §§ 137-3.3, 137-3.4. Delivery workers are not classified as "food service workers." N.Y. State Dep't of Labor Opinion Letter RO-07-0104 (Oct. 26, 2007), http://www.labor.ny.gov/legal/counsel/pdf/minimum%20wage-generally/ro-07-0104%20-%20tip%20allowance.pdf.

he paid much less—a starting wage of between $2.67 and $2.97 per hour. (See Def.'s Mem. at 9.)[6] Thus, to the extent he told Plaintiffs what their wage rates would be, he did nothing more than inform them of his intent not to comply with the FLSA.[7] Given these facts, Defendant is not entitled to retroactive application of the tip credit under any theory.

Contrary to Defendant's assertions, the case law he cites does not stand for the broad proposition that it is sufficient under § 203(m) to post a standard minimum wage notice and then inform employees that they will receive a wage plus tips. Rather, each case is fact specific. In this case, Defendant admits he did not tell Plaintiffs what the minimum tipped wage was. Nor did he pay the minimum tipped wage. He claims he posted minimum wage notices (Def.'s Mem. at 2), but proved only that he posted generic New York minimum wage notices after the Complaint was filed (see Pls.' Mem. at 9-10; Def.'s Trial Exh. 3).[8] Such notice informed employees of the full minimum wage and that "a specified allowance may be credited toward the minimum wage for tips earned." (Def.'s Trial Exh. 3.) It did not inform Plaintiffs what the minimum tipped hourly wage was or that Defendant intended to pay or was paying such wage.

---

[6] While at once conceding that he paid wage rates that were below the minimum tipped wage required in New York, Defendant also asserts that Plaintiffs received wages that were well above the minimum wage. To make this claim, Defendant includes customer tips. (Def.'s Mem. at 4, 8-9.) However, regardless of the amount an employee earns in customer tips, an employer may not pay less than the minimum tipped wage, assuming the tip credit applies.

[7] Defendant's chart purporting to compare Plaintiffs' wages with the FLSA's requirements both overstates the wage paid to Plaintiffs and understates the FLSA's requirements. (Def.'s Mem. at 17.) Defendant thus relies on an inapplicable, lesser federal minimum wage and overtime rate in asserting that he owes only nominal damages under the FLSA. (See id.)

[8] Defendant was aware of Plaintiffs' claims when he allegedly removed a prior notice, yet he failed preserve it or offer it in evidence. (Tr. 391:2-20.) His attack on Plaintiffs for their illiteracy, their inability to read English, and their failure to ask for translation does not cure this evidentiary deficiency. Although Plaintiffs acknowledged that they saw official-looking notices posted before the Complaint was filed, the contents of those notices remains a mystery. After insisting that photographs of the notices included a minimum wage poster, Defendant admitted that the notice he was referring to pertained to unemployment insurance. (See Tr. 265:20-25, 266:8-9; see Def.'s Trial Exh. 1 at 2.)

4

Defendant's posting of the New York minimum wage notice, sometime after July 2009, might have marked the beginning of Defendant's good faith effort to comply with the minimum wage and overtime laws. By that time, only Plaintiff He worked at the restaurant, and Defendant did not reduce Plaintiff He's hours, ask him to record his hours or pay him a wage rate approximating the statutory minimum until September 21, 2009. (Stips. ¶ 66 & Exh.6.)

II.     Defendant Cannot Retroactively Deduct Hours Worked By Plaintiffs.

As a second means of reducing his damages, Defendant disputes the compensability of hours worked by Plaintiffs. Plaintiffs aver that they worked either a 65.5-hour week or a 67-hour week through September 21, 2009, when Plaintiff He's hours were reduced. (Pls.' Mem. at 5.) Defendant claims that Plaintiffs worked variable hours never exceeding 61.5 per week. (Def.'s Mem. at 8 n.33.) The difference lies primarily in the parties' dispute over Plaintiffs' regular schedule, the compensability of their meal periods, and the method of calculating back pay.

A.     Schedule     Plaintiffs testified that no matter what assignment they had, they reported each day at 10:30 a.m. (Wei Decl. ¶¶ 6-7; Lin Decl. ¶¶ 6-7; He Decl. ¶¶ 6-7.) Defendant agrees that the two delivery workers who were assigned to distribute menus reported at 10:30 a.m., but claims that the third, who was assigned to package utensils and make deliveries, was scheduled for 11:00 a.m. (See Def.'s Mem. at 4-5.) Whether he was or not is irrelevant. What matters for purposes of the FLSA is whether Defendant suffered or permitted such Plaintiff to work from 10:30 a.m. to 11:00 a.m. See 29 C.F.R. § 785.11. He did. [9]

Defendant also contends that after Plaintiff He stopped distributing menus in April 2009, he stopped working a full schedule of hours. (Def.'s Mem. at 6.) However, Plaintiff He testified

---

[9] Li admitted that the third delivery worker "shows up at 10:30." (Tr. 276:20-21.) When asked if he directed such employee to show up at 10:30, he testified "I don't believe so . . . but I cannot tell you for certain." (Id. at 276:23-25.) And, he said, if they showed up he didn't "restrict" them . . . "Did I ever see them do [packaging utensils]? Maybe, maybe not . . . I wasn't really concerned about what they were doing because I really wasn't micromanaging them." (Id. at 293:2-13.)

5

that (with the exception of April 2009), his schedule was consistent from the time he started until September 2009. (He Decl. ¶ 7.) In March 2009, Defendant understood that he had a labor dispute. (Stips. ¶ 56.) Plaintiffs stipulated that thereafter, "on or before May 1, 2009, Henry Li advised plaintiff He that he did not have to distribute menus." (Stips. ¶ 45.) Plaintiffs did not stipulate that Plaintiff He's hours changed at that time. Rather, He testified that his monthly wages and hours were not reduced until September 21, 2009, when Defendant required him to sign in and out. (He Decl. ¶¶ 7-8; Stips. Exhs. 4, 6.)

    B.  <u>Meal Periods</u>  Defendant assumes that because he provided Plaintiffs with meals, a presumption of 30 minutes' non-work time applies. (Def.'s Mem. at 5-6, 8.) At the same time, he admits that meal breaks were between 15 and 30 minutes.[10] <u>Compare</u> 29 C.F.R. § 785.19 ("Ordinarily <u>30 minutes or more</u> is long enough for a bona fide meal period.") (emphasis added). In fact, the record reflects that Plaintiffs stopped working only to eat meals and they remained available to, and did, make deliveries. (Li Depo. Tr. 152; Wei Decl. ¶ 10; Lin Decl. ¶ 10; He Decl. ¶ 10.) Both <u>Reich v. S. New Eng. Telecommc'ns Corp.</u>, 121 F.3d 58, 65 (2d Cir. 1997) and <u>Mendez v. Radec Corp.</u>, 232 F.R.D. 78, 83 (W.D.N.Y. 2005), cited by Defendant (Def.'s Mem. at 16 n.51), involved "bona fide meal periods" of thirty minutes, <u>see</u> 29 C.F.R. § 785.19, which had been occasionally interrupted. Again, each case is fact specific. In <u>Mendez</u>, the court denied summary judgment. In <u>Reich</u>, meal periods were compensable. 121 F.3d at 63.

    C.  <u>Time Off</u>  Defendant argues that Plaintiffs took time off for personal reasons and sickness, and uses his estimates of such time to arrive at a "pro rata reduction of their hours." (Def.'s Mem. at 8 & n.33.) There is no evidence that Defendant deducted holidays or sick days from Plaintiffs' wages, and the Court should not now convert paid time off to unpaid time off.

---

[10] Defendant's assertion that "Plaintiffs ate for 15 minutes and took off for 30 minutes," is contradicted by his own testimony, in which he estimated 15 to 30 minutes to eat. (<u>See</u> Def.'s Mem. at 5 & n.23.)

6

To the extent Plaintiffs took unpaid time off, such time should only be deducted from the relevant week. See 29 C.F.R. § 778.104 ("Each workweek stands alone").

III.   Even If Defendant Met the Notice Requirement, He Is Not Entitled to the Tip Credit Because He Assigned Plaintiffs Non-Tipped Duties.

Assuming *arguendo* that Defendant is entitled to the tip credit, Plaintiffs should nonetheless be paid the full minimum wage because each week two employees distributed menus and a third packaged utensils for four hours per day (Monday through Friday). Defendant claims such work was "tipped work" because the two who distributed menus passively earned tips—by pooling tips daily—with the third who made occasional deliveries. (See Def.'s Mem. at 14-15.)

The DOL has made clear that the tip credit applies only to the time an employee spends earning tips. 29 C.F.R. §§ 531.51, 531.56(e), 531.59. The DOL distinguishes between tipped and non-tipped occupations and also between tip-producing and non-tip-producing related duties. 29 C.F.R. § 531.56(e)  Even if solely employed in a tipped occupation, employees must be paid the full minimum wage if they spend more than 20% of their time performing non-tip-producing related duties, e.g., cleaning and setting tables. Id.; U.S. Dep't of Labor, Field Operations Handbook, Chapter 30, ¶ 30d00(e) (Dec. 9, 1988), http://www.dol.gov/whd/foh/FOH_Ch30.pdf. The DOL focuses on whether the work generates tips, not whether the employee participates in a tip pool. In fact, such participation (by an employee who is not earning tips) jeopardizes the validity of the tip pool and Defendant's taking of the tip credit. See, e.g., Myers v. Copper Cellar Corp., 192 F.3d 546, 549-50 (6th Cir.1999).

Here, when Plaintiffs distributed menus for four hours daily, they were engaged in a non-tipped occupation. When they packaged utensils for the same four hours, they were engaged

primarily in non-tipped related duties which exceeded 20% of their daily work time.[11]

IV.     <u>Defendant Owes Plaintiffs for Their Bicycle Expenses</u>.

Defendant lists circumstances under which bicycle expenses are purportedly not reimbursable, but he fails to establish any of them. (<u>See</u> Def.'s Mem. at 16.) Indeed, in <u>Cao v. Wu Liang Ye Lexington Rest., Inc.</u>, 2010 WL 4159391, cited by Defendant for the proposition that "bicycle expenses are not reimbursable" where "the expenses are exaggerated or unsubstantiated" (Def.'s Mem. at 16 & n. 54), the court in fact found that the plaintiff delivery workers were entitled to damages for bicycle acquisition and maintenance. 2010 WL 4159391, at *4. In the absence of records, the Court found that some of the plaintiffs' estimates of over $1000 per year in bicycle expenses were high, and thus awarded plaintiffs "$500 per year to cover the cost of one bicycle and maintenance and repairs for one year." <u>Id.</u> at *5.

V.      <u>Defendant Owes Plaintiffs Spread of Hours Pay</u>.

Defendant acknowledges that he owes spread of hours pay. (Def.'s Mem. at 21.) The parties' differences in calculations for such pay appear to be attributable to Defendant's attempt to now deduct for days that Defendant claims Plaintiffs missed work. (<u>Compare</u> Def.'s Mem. at 21 & nn.66, 67 <u>with</u> Docket Entry # 52, Exh. 8.) Defendant kept no records of employees' hours until September 2009 (Li Depo. Tr. 78:6-22, 172:19-25), but he now seeks a credit for days of work that he estimates Plaintiffs missed. For the reasons set forth above and in Plaintiffs' October 31, 2013 Memorandum, such deduction is improper. (Pls.' Mem. at 20.)

---

[11] In New York, the tip credit only applies to "service employees." The regulations stated: "Classification as a service employee or as a nonservice employee shall be on a weekly basis except that an employee may not be classified as a service employee on any day in such week in which he has been assigned to work in an occupation in which tips are not customarily received." 12 N.Y.C.R.R. 137-3.3(c).

8

VI.     Plaintiff Lai Li is Entitled to Damages.

Defendant seeks dismissal of Plaintiff Lai Li's claim for "failure to prosecute."[12] (Def.'s Mem. at 21.) Neither the FLSA nor the New York Labor Law requires an employee to testify on his own behalf in order to recover damages. Nor does any statute or rule dictate the means by which a plaintiff may establish his claim. Dismissal for failure to prosecute is a "harsh remedy to be utilized only in extreme situations." Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir.1993) (citation and internal quotation marks omitted). None of the failure-to-prosecute factors set forth in the case cited by Defendant are applicable here. (See Def.'s Mem. at 21 n.68.) Such factors address primarily the effects of delay occasioned by a plaintiff's alleged failure to prosecute. (See id.) No delay can be or is claimed here as a result of Plaintiff Li's absence from the trial. Indeed, Plaintiff Li was Plaintiff He's replacement while He was on leave; other Plaintiffs testified to Mr. Li's dates of employment and rates of pay; and, it is clear that his claims are substantially similar to that of the other Plaintiffs.[13] (See He Decl. ¶ 9; Lin Decl. ¶ 9.) This is not an "extreme situation" warranting the harsh remedy of dismissal.

VII.    Defendant Owes Plaintiffs Substantial Overtime Pay.

Defendant admits that Plaintiffs worked well over 40 hours every week. By his calculations, he sometimes paid Plaintiffs wage rates that were higher than the minimum tipped wage. (See Def.'s Mem. at 9.) If so, such wage rates must be used to calculate the overtime owed to Plaintiffs. 29 C.F.R. §§ 778.107, 778.109 (defining "regular rate of pay").

VIII.   Defendant's Actions Were Willful.

Assuming *arguendo* that Defendant's current misstatement of the law is made in good faith, his arguments should not be confused with his conduct when he employed Plaintiffs.

---

[12] Plaintiff Lai Li sued as "Lai Lee," but the correct spelling of his last name is "Li." (Stips. ¶ 40.)

[13] Plaintiffs are not proceeding on the bicycle cause of action on behalf of Plaintiff Li. (Tr. 229:14-15.)

Defendant paid Plaintiffs a monthly wage irrespective of the hours that they worked. (Stips. ¶¶ 37, 42, 47, 48, 54). He did not record Plaintiffs wages or hours. He did not post minimum wage notices or inform Plaintiffs of the minimum wage. He did not inform himself of or pay the minimum tipped wage. He claims to have calculated wages, but he included tips. He did not calculate or pay overtime. All of these inconvenient truths preclude a finding that Defendant calculated Plaintiffs' wages and in good faith concluded that Plaintiffs received the minimum wage. See Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999).[14]

## CONCLUSION

For the reasons set forth herein and in Plaintiffs' Post-Trial Memorandum, Plaintiffs respectfully request that judgment be entered in their favor, entitling Plaintiffs to damages, including costs and attorneys' fees, and to such other relief as the Court deems just and proper.

Dated: New York, NY
December 6, 2013

Respectfully submitted,
/s/
Gillian Costello (GC 0151)
SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, NY 10019
Tel: (212) 765-2100
*Attorneys for Plaintiffs*

---

[14] Before Defendant testified at trial, he testified as follows:
  Q    Before March 31st of 2009, what efforts, if any, did you make to comply with the minimum wage and overtime laws?
  A    I don't know. I don't know if there is any methods I used to address that, because I didn't, there were never any complaints and we thought that everything that we were doing was fine since there were no complaints. (Li Depo. Tr. 203:18-204:2.)
  * * *
  Q    Did you advise employees about the minimum wage and overtime laws?
  A    I never told them the minimum wage is this, nor have I ever told them anything. I mean, I didn't know I had to tell them. I don't what information I wasn't instructed to tell them, because most of this information was never, it didn't seem like I was told, okay this is information that all employees must know before you hire them. (Li Depo. Tr. 204: 4-14.)

10

## CERTIFICATE OF SERVICE

      I hereby certify that on December 6, 2013, I caused to be served a true copy via the Court's ECF filing system of Plaintiffs' Post-Trial Reply Memorandum of Law to the following:

> Gregg H. Kanter, Esq.
> Gregg H. Kanter Law Office LLC
> 2222 Pine Street
> Philadelphia, PA 19103
> (917) 494-5317
> greggkanter@yahoo.com

Dated: December 6, 2013
      New York, NY

                                                 /s/
                                        Gillian Costello